UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA WILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>      v.<br><br>PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Lisa Wiley ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Paysafe Limited ("Paysafe" or the "Company") f/k/a Foley Trasimene Acquisition Corp. II ("FTAC") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Paysafe; and (c) review of other publicly available information concerning Paysafe.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Paysafe securities between December 7, 2020 and November 10, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Paysafe provides digital commerce solutions. Paysafe claims that its solutions extend well beyond the card-based payments functionality of traditional payment vendors by providing the advanced capabilities of digital wallets, alternative payment methods ("APMs") and digital currency transactions.

3.      FTAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

4.      On December 7, 2020, FTAC announced that it and Paysafe Group Holdings Limited ("Legacy Paysafe") entered into a definitive agreement and plan of merger, and that upon

closing of the transaction the newly combined company will operate as Paysafe with its shares list on the New York Stock Exchange ("NYSE") under the symbol PSFE.

5.     March 30, 2021, Paysafe announced that it had completed the merger and that Paysafe was the surviving, public entity.

6.     On November 11, 2021, before the market opened, Paysafe announced that it was revising its revenue guidance for the full year 2021 downward from a range of $1,530 – $1,550 to a range of $1,470 – $1,480. Paysafe attributed the revision to "[g]ambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment" and "[t]he modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements."

7.     On this news, the Company's share price fell $3.03 per share, or more than 40%, to close at $4.24 per share on November 11, 2021, on unusually heavy trading volume.

8.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Paysafe was being negatively impacted by gambling regulations in key European markets; (2) that Paysafe was encountering performance challenges in its Digital Wallet segment; (3) that new eCommerce customer agreements were being pushed back; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Lisa Wiley, as set forth in the accompanying certification, incorporated by reference herein, purchased Paysafe securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Paysafe is incorporated under the laws of Bermuda with its principal executive offices located in Bermuda. Paysafe's common shares trades on the New York Stock Exchange ("NYSE") under the symbol "PSFE." Prior to the merger, FTAC's common shares traded on the NYSE under the symbol "BFT."

16.     Defendant Richard N. Massey ("Massey") was the Chief Executive Officer ("CEO") of FTAC prior to the merger.

17.     Defendant Bryan D. Coy ("Coy") was the Company's Financial Officer ("CFO") of FTAC prior to the merger.

18.     Defendant Philip McHugh ("McHugh") was the CEO of Paysafe Following the merger and the CEO of Legacy Paysafe prior to the merger.

19.     Defendant Ismail (Izzy) Dawood ("Dawood") was the CFO of Paysafe following the merger, and the CFO of Legacy Paysafe prior to the merger.

20.     Defendants Massy, Coy, McHugh, and Dawood (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Paysafe provides digital commerce solutions. Paysafe claims that its solutions extend well beyond the card-based payments functionality of traditional payment vendors by

providing the advanced capabilities of digital wallets, alternative payment methods ("APMs") and digital currency transactions.

22.     FTAC was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.

23.     On December 7, 2020, FTAC announced that it and Paysafe Group Holdings Limited ("Legacy Paysafe") entered into a definitive agreement and plan of merger, and that upon closing of the transaction the newly combined company will operate as Paysafe with its shares list on the New York Stock Exchange ("NYSE") under the symbol PSFE.

24.     March 30, 2021, Paysafe announced that it had completed the merger and that Paysafe was the surviving, public entity.

**Materially False and Misleading**
**Statements Issued During the Class Period**

25.     The Class Period begins on December 7, 2020. On that day, FTAC issued a press release titled "Foley Trasimene Acquisition Corp. II and Paysafe, A Leading Global Payments Provider Focused on Digital Commerce and iGaming, Announce Merger." Therein, the Company, in relevant part, stated:

> Foley Trasimene Acquisition Corp. II (NYSE: BFT, BFT WS) ("Foley Trasimene"), a special purpose acquisition company, and Paysafe Group Holdings Limited ("Paysafe"), a leading integrated payments platform, today announced that they have entered into a definitive agreement and plan of merger. Upon closing of the transaction, the newly combined company (the "Company") will operate as Paysafe and plans to list on the New York Stock Exchange (NYSE) under the symbol PSFE. The transaction reflects an implied pro-forma enterprise value for Paysafe of approximately $9 billion.

> Paysafe is a leading integrated payments platform, with a two-sided consumer and merchant network, whose core purpose is to enable businesses and consumers around the world to connect and transact seamlessly through payment processing, digital wallet, and online cash solutions.

5

\*      \*      \*

**Paysafe Investment Highlights:**

- Leading integrated payments platform processing nearly $100 billion of payment volume.

- Significant exposure to eCommerce with more than 75% of revenue from online and integrated services.

- Highly differentiated B2B and B2C global network with a powerful suite of digital wallet, eCash and integrated processing solutions.

- Significant growth opportunities in a massive addressable market, with expertise in highest value verticals.

- Long history as the global market leader in iGaming payments, and well-positioned to capitalize on the expanding US iGaming market.

- Proprietary and scalable platform in technology and risk management driving a proven M&A playbook.

- Attractive, asset-light financial profile with over 30% EBITDA margins, 80% cash conversions1 and double-digit revenue growth across diversified geographies and verticals.

- Clear strategy for growth and transformation in partnership and leadership of Bill Foley.

- Highly experienced management team led by Philip McHugh, CEO of Paysafe, who will continue leading the newly combined company.

26.     On May 11, 2021, Paysafe issued a press release announcing its first quarter 2021

results, stating in relevant part:

**First Quarter 2021 Financial Highlights**
(metrics compared to first quarter of 2020)

- Revenue of $377.4 million, increased 5%

- Net loss attributable to the Company of $49.1 million, compared to net loss of $51.1 million

- Total Payment Volume of $27.7 billion, increased 8%

- Adjusted EBITDA of $113.2 million, approximately flat

- Reaffirmed 2021 full year outlook

Philip McHugh, CEO of Paysafe, stated, "As we embark on our next chapter as a public company, we are pleased to deliver solid financial results in the first quarter, including continued strength from online and e-commerce volumes. Alongside this, we made excellent progress on our strategic initiatives across North American iGaming and emerging eCommerce verticals, while achieving milestones to further scale our platform and unlock value. Looking ahead, with our great market positions and unique, two-sided network, we believe that Paysafe remains well positioned to deliver consistent double-digit growth and drive operating leverage."

\*       \*       \*

**Financial Guidance**

| ($ in millions) | Q2 2021 | Full Year 2021 |
|---|---|---|
| Revenue | $365 – $385 | $1,530 – $1,550 (prior: $1,520 – $1,550) |
| Gross Profit (excluding depreciation and amortization) | $225 – $235 | $930 – $970 |
| Adjusted EBITDA | $110 – $120 | $480 – $495 |

27.     On August 16, 2021, Paysafe issued a press release announcing its second quarter 2021 financial results, stating in relevant part:

**Second Quarter 2021 Financial Highlights**
(metrics compared to second quarter of 2020)

- Total Payment Volume of $32.3 billion, increased 41%

- Revenue of $384.3 million, increased 13%

- Net income attributable to the Company of $6.6 million, compared to net loss of $15.9 million

7

- Adjusted EBITDA of $118.8 million, increased 8%

- Reaffirmed 2021 full year outlook

Philip McHugh, CEO of Paysafe, stated, "We are pleased with the continued momentum Paysafe exhibited over the second quarter with impressive growth and several key wins across iGaming and other attractive digital commerce verticals, including crypto. Paysafe also continues to drive value across the other pillars of our strategy, including strong execution on our cost program and our recently announced acquisitions in Latin America, creating the largest open banking solution in the region. In total, we remain confident in our 2021 outlook and the years ahead as we continue to see the combination of our eCommerce gateway, digital wallets, online banking, and eCash solutions as a true differentiator in the market."

*          *          *

**Financial Guidance**

| ($ in millions) | Q3 2021 | Full Year 2021 |
|---|---|---|
| Revenue | $360 – $375 | $1,530 – $1,550 |
| Gross Profit (excluding depreciation and amortization) | $210 – $220 | $930 – $970 |
| Adjusted EBITDA | $95– $110 | $480 – $495 |

28.    The above statements identified in ¶¶ 25-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Paysafe was being negatively impacted by gambling regulations in key European markets; (2) that Paysafe was encountering performance challenges in its Digital Wallet segment; (3) that new eCommerce customer agreements were being pushed back; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

29.     On November 11, 2021, before the market opened, Paysafe issued a press release titled "Paysafe Reports Third Quarter 2021 Results." Therein, Paysafe revised its 2021 guidance due to "[g]ambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment" and "[t]he modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements." In greater part, the Company stated:

**Third Quarter 2021 Financial Highlights**
(Metrics compared to third quarter of 2020)

- Total Payment Volume of $31.1 billion, increased 19%

- Revenue of $353.6 million, decreased 1%

- Net loss attributable to the Company of $147.2 million, compared to net loss of $38.1 million, and inclusive of a non-cash impairment charge of $322.2 million

- Adjusted EBITDA of $106.4 million, decreased 1%

- Revised outlook for full year 2021

Philip McHugh, CEO of Paysafe, stated, "In the third quarter we reported Adjusted EBITDA in line with our expectations, despite softer than expected revenue, reflecting both market and performance challenges within the digital wallet business. While the recent trend will drive an adjusted financial outlook, we continue to see strong momentum across the business. Our position to win in high growth and disruptive markets including online sports betting and crypto continues to accelerate, coupled with strong delivery against our cost and technology platform targets."

                        *        *        *

**Financial Guidance**

For full year 2021, Paysafe is now anticipating revenue, gross profit and Adjusted EBITDA to be in the ranges provided below. These revised expectations primarily reflect the impact of the following developments:

- Gambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment

- The modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements

As described in more detail in the supplemental presentation to this press release, Paysafe is taking actions to address these challenges and to deliver on its growth opportunities, but the Company expects these headwinds to impact the Company's growth and profitability in 2021.

| ($ in millions) | Q4 2021 | Full Year 2021 - prior | Full Year 2021 - updated |
|---|---|---|---|
| Revenue | $355 – $365 | $1,530 – $1,550 | $1,470 – $1,480 |
| Gross Profit (excluding depreciation and amortization) | $205 – $215 | $930 – $970 | $870 – $880 |
| Adjusted EBITDA | $90 – $100 | $480 – $495 | $425 – $435 |

30.    On this news, the Company's share price fell $3.03 per share, or more than 40%, to close at $4.24 per share on November 11, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Paysafe securities between December 7, 2020 and November 10, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Paysafe's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Paysafe shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Paysafe or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Paysafe; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Paysafe's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Paysafe's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Paysafe's securities relying upon the integrity of the market price of the Company's securities and market information relating to Paysafe, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Paysafe's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Paysafe's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Paysafe's financial well-being and prospects.  These material misstatements

and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Paysafe's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Paysafe, their control over, and/or receipt and/or modification of Paysafe's allegedly materially misleading misstatements and/or

their associations with the Company which made them privy to confidential proprietary information concerning Paysafe, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Paysafe's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Paysafe's securities traded at artificially inflated prices during the Class Period.  On January 21, 2021, the Company's share price closed at a Class Period high of $19.24 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Paysafe's securities and market information relating to Paysafe, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Paysafe's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Paysafe's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Paysafe and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Paysafe's securities was an efficient market for the following reasons, among others:

(a)     Paysafe shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Paysafe filed periodic public reports with the SEC and/or the NYSE;

(c)     Paysafe regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Paysafe was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Paysafe's securities promptly digested current information regarding Paysafe from all publicly available sources and reflected such information in Paysafe's share price. Under these circumstances, all purchasers of Paysafe's securities during the Class Period suffered similar injury through their purchase of Paysafe's securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

48.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Paysafe who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

49.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Paysafe's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Paysafe's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Paysafe's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Paysafe's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Paysafe and its business operations and future prospects in light

of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

55.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Paysafe's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Paysafe's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Paysafe's securities during the Class Period at artificially high prices and were damaged thereby.

57.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Paysafe was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Paysafe securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Paysafe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Paysafe and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

21

DATED:  December 10, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Plaintiff Lisa Wiley*

## SWORN CERTIFICATION OF PLAINTIFF

Paysafe Limited, SECURITIES LITIGATION

I,     Lisa Wiley                              , certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Paysafe Limited, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Paysafe Limited, during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ☐ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _____

12/2/2021

DocuSigned by:

*Lisa Wiley*

8FB70A2CD108494...

Lisa Wiley

**Lisa Wiley's Transactions in Paysafe Limited (PSFE)**

**Account 1**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---:|---|
| 2/1/2021 | Bought | 50 | $16.8800 |
| 2/3/2021 | Bought | 1,000 | $17.9000 |
| 2/3/2021 | Bought | 1,000 | $17.9700 |
| 2/3/2021 | Bought | 1,000 | $17.9300 |
| 2/3/2021 | Bought | 1,000 | $17.9889 |
| 2/3/2021 | Bought | 50 | $17.7360 |
| 2/4/2021 | Bought | 852 | $18.5800 |
| 2/4/2021 | Bought | 200 | $17.9400 |
| 2/4/2021 | Bought | 500 | $17.9500 |
| 2/5/2021 | Bought | 14 | $17.7200 |
| 2/5/2021 | Bought | 5 | $17.7318 |
| 2/8/2021 | Bought | 1 | $17.9301 |
| 2/8/2021 | Bought | 137 | $17.7900 |
| 2/9/2021 | Bought | 90 | $17.0000 |
| 2/10/2021 | Bought | 10 | $16.6400 |
| 2/10/2021 | Bought | 10 | $16.7000 |
| 2/10/2021 | Bought | 1 | $16.4778 |
| 2/11/2021 | Bought | 17 | $16.0400 |
| 2/11/2021 | Bought | 10 | $16.0800 |
| 2/11/2021 | Bought | 20 | $16.1000 |
| 2/11/2021 | Bought | 10 | $16.1589 |
| 2/11/2021 | Bought | 20 | $16.1200 |
| 2/12/2021 | Bought | 3 | $17.0367 |
| 2/12/2021 | Bought | 1,000 | $16.8999 |
| 2/16/2021 | Bought | 42 | $16.9399 |
| 2/16/2021 | Bought | 5,100 | $17.4800 |
| 2/18/2021 | Bought | 10 | $16.7878 |
| 3/15/2021 | Bought | 10 | $16.5700 |
| 3/15/2021 | Bought | 10 | $16.5800 |
| 5/4/2021 | Bought | 1 | $13.0999 |
| 5/4/2021 | Bought | 10 | $13.2450 |
| 5/6/2021 | Bought | 5 | $12.8200 |
| 5/6/2021 | Bought | 12 | $12.8693 |
| 5/26/2021 | Bought | 7 | $11.5450 |
| 5/27/2021 | Bought | 1 | $11.2950 |
| 5/27/2021 | Bought | 12 | $11.3950 |
| 6/1/2021 | Bought | 2 | $11.7862 |
| 6/1/2021 | Bought | 23 | $11.6499 |
| 6/11/2021 | Bought | 10 | $11.9500 |

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 6/15/2021 | Bought | 2 | $11.3043 |
| 6/18/2021 | Bought | 20 | $11.4899 |
| 6/22/2021 | Bought | 10 | $11.1499 |
| 6/22/2021 | Bought | 13 | $11.1800 |
| 6/23/2021 | Bought | 10 | $11.2500 |
| 6/25/2021 | Bought | 1 | $12.3250 |
| 6/25/2021 | Bought | 10 | $12.3300 |
| 6/25/2021 | Bought | 10 | $12.2700 |
| 6/28/2021 | Bought | 20 | $12.5900 |
| 6/30/2021 | Bought | 29 | $12.0697 |
| 7/1/2021 | Bought | 10 | $11.8680 |

**Account 2**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 2/3/2021 | Bought | 7 | $18.2400 |
| 2/3/2021 | Bought | 1 | $18.2100 |
| 2/4/2021 | Bought | 104 | $18.5600 |
| 2/23/2021 | Bought | 10 | $16.6900 |
| 2/25/2021 | Bought | 870 | $15.9100 |
| 2/25/2021 | Bought | 145 | $15.9099 |
| 2/25/2021 | Bought | 700 | $15.9000 |
| 2/25/2021 | Bought | 285 | $15.8950 |
| 2/25/2021 | Bought | 3 | $15.9600 |
| 2/25/2021 | Bought | 2 | $15.5500 |
| 2/26/2021 | Bought | 100 | $15.3700 |
| 2/26/2021 | Bought | 400 | $15.4500 |
| 2/26/2021 | Bought | 504 | $15.4500 |
| 2/26/2021 | Bought | 422 | $15.5700 |
| 3/1/2021 | Bought | 1 | $15.8800 |
| 3/3/2021 | Bought | 5 | $15.4700 |
| 3/3/2021 | Bought | 10 | $14.7699 |
| 3/3/2021 | Bought | 1 | $14.9000 |
| 3/5/2021 | Bought | 10 | $12.9655 |
| 4/20/2021 | Bought | 10 | $12.4889 |
| 5/11/2021 | Bought | 19 | $12.0491 |
| 7/21/2021 | Bought | 1 | $10.5799 |