**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

LISA WILEY, Individually and On Behalf of :   Civil Action No. 1:21-cv-10611-AJN-KHP
All Others Similarly Situated,          :

                          :   CLASS ACTION
              Plaintiff,    :

     vs.                       :

PAYSAFE LIMITED f/k/a FOLEY     :
TRASIMENE ACQUISITION CORP. II,   :
RICHARD N. MASSEY, BRYAN D. COY,   :
PHILIP MCHUGH, and ISMAIL (IZZY)   :
DAWOOD,                      :

             Defendants.   :

———————————————————————— x

JOHN PAUL O'BRIEN, Individually and On :   Civil Action No. 1:22-cv-00567-AJN-KHP
Behalf of All Others Similarly Situated,     :

                          :   CLASS ACTION
              Plaintiff,    :

     vs.                       :

PAYSAFE LIMITED f/k/a FOLEY     :
TRASIMENE ACQUISITION CORP. II,   :
WILLIAM P. FOLEY, II, RICHARD N.   :
MASSEY, BRYAN D. COY, PHILIP    :
MCHUGH, and ISMAIL DAWOOD,    :

             Defendants.   :

———————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT**
**ADAM BERRY'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD**
**PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. SUMMARY OF PLAINTIFFS' COMPLAINTS.......................................................... 2

III. ARGUMENT ................................................................................................................. 4

    A. The Related Actions Should Be Consolidated...................................................... 4

    B. Berry Should Be Appointed Lead Plaintiff........................................................... 5

        1. Berry's Motion is Timely................................................................................ 5

        2. Berry Possesses the Largest Financial Interest ............................................. 6

        3. Berry Otherwise Satisfies Rule 23 ................................................................. 6

    C. Berry's Selection of Counsel Should Be Approved ............................................. 8

IV. CONCLUSION............................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................ 7

*Kasilingam v. Tilray, Inc.*,
   No. 1:20-cv-03459-PAC,
   2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020) ...................................................................... 7

*Richman v. Goldman Sachs Grp, Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ........................................................................................ 4

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(ii) .................................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................................. 2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ....................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................... 2, 8

Fed. R. Civ. P. 23(a)(3)-(4) ...................................................................................................... 6

Fed. R. Civ. P. 42(a) ............................................................................................................ 1, 4, 9

Movant Adam Berry ("Berry") respectfully submits this memorandum of law in support of his motion for consolidation, appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, and for approval of his selection of Johnson Fistel, LLP ("Johnson Fistel") as lead counsel for the proposed class (the "Motion").

## I.    INTRODUCTION

The above-captioned actions pending before this Court are federal securities class actions brought on behalf of all persons and entities who purchased or otherwise acquired Paysafe Limited ("Paysafe" or the "Company") and/or Foley Trasimene Acquisition Corp. II ("FTAC") securities between December 7, 2020 and November 10, 2021, inclusive (the "Class Period").   The complaints charge Paysafe, FTAC, their Chairman, and certain of their executive officers with violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.  As such, the actions are governed by the PSLRA.

Pursuant to the PSLRA, the Court must decide whether to consolidate the two related actions before selecting a movant to lead this litigation on behalf of the putative class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  As discussed below, consolidation is appropriate here under Rule 42(a) because the two actions involve identical questions of law and fact.

Once the consolidation issue is resolved, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). The Court is to appoint the movant making a timely motion under the PSLRA's sixty-day deadline, who asserts the largest financial interest in the litigation, and who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii).  Accordingly, here, Berry should be appointed lead plaintiff because he: (1) timely filed this Motion; (2) has the largest financial interest in the outcome of this litigation; and (3) is typical and will adequately represent the class's interests.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The PSLRA also vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Because Johnson Fistel is a leading securities class action law firm and has earned a reputation for excellence in shareholder rights litigation, the Court should approve Berry's choice of the firm to serve as lead counsel.

## II.    SUMMARY OF PLAINTIFFS' COMPLAINTS

Paysafe provides digital commerce solutions.  The Company claims that its solutions extend well beyond the card-based payments functionality of traditional payment vendors by providing the advanced capabilities of digital wallets, alternative payment methods, and digital currency transactions.

FTAC was a special purpose acquisition company (*i.e.*, a "SPAC") formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses.  FTAC's common stock was listed on the New York Stock Exchange under the ticker symbol "BFT."

On December 7, 2020, FTAC announced that it and Paysafe Group Holdings Limited (Paysafe's predecessor company) entered into a definitive agreement and plan of merger, and that upon closing of the transaction the newly combined company would operate as Paysafe with its shares list on the New York Stock Exchange under the symbol "PSFE."  On March 30, 2021, Paysafe announced that it had completed the merger.

The Class Period begins on December 7, 2020 when FTAC issued a press release entitled "Foley Trasimene Acquisition Corp. II and Paysafe, A Leading Global Payments Provider Focused

on Digital Commerce and iGaming, Announce Merger." In the December 7, 2020 release and throughout the Class Period, Defendants repeatedly assured investors that Paysafe was executing well against its strategy and/or was positioned for strong growth throughout 2021.

This was untrue. Investors began to learn the truth about Paysafe's prospects on August 16, 2021, when the Company announced its financial results for the second quarter of 2021 and provided disappointing guidance for the third quarter of 2021. Defendants projected third quarter revenue of between $360 million and $375 million—well below analysts' estimate of $389 million. Defendants attributed this weak guidance to challenges in the Company's Digital Wallet segment, including "some softness in the . . . online gambling space" in European markets. On this news, the price of Paysafe common stock declined $1.58 per share, or more than 15%, from a close of $10.20 per share on August 13, 2021 to close at $8.62 per share on August 16, 2021.

Nonetheless, Defendants assured investors that the Company would rebound in the fourth quarter of 2021, stating that "Q4 is . . . where [you] start seeing the double-digit growth in Digital Wallet's revenue," and reiterating that despite a weak third quarter, the Company still expected full-year 2021 revenue of between $1.53 billion and $1.55 billion due to strong fourth quarter expected results.

Defendants' reassurances proved to be false. On November 11, 2021, Paysafe announced its third quarter 2021 financial results—including below-guidance quarterly revenue of $353.6 million—and lowered its full-year 2021 guidance for revenue and other financial metrics. Defendants revealed that, due to "[g]ambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment," as well as "modified scope and timing of new eCommerce customer agreements relative to the Company's original expectations for these agreements," they now expected full-year 2021 revenue of between $1.47

- 3 -

billion and $1.48 billion.  Additionally, Defendants provided disappointing guidance for the fourth

quarter of 2021, projecting quarterly revenue of between $355 million and $365 million.  On this

news, the price of Paysafe common stock plummeted $3.03 per share, or more than 41%, from a

close of $7.27 per share on November 10, 2021 to close at $4.24 per share on November 11, 2021.

The complaints allege that, throughout the Class Period, Defendants made materially false

and/or misleading statements, as well as failed to disclose material adverse facts, including: (1)

that Paysafe was being negatively impacted by gambling regulations in key European markets; (2)

that Paysafe was encountering performance challenges in its Digital Wallet segment; (3) that new

eCommerce customer agreements were being pushed back; and (4) as a result, Defendants'

statements about the Company's business, operations, and prospects lacked a reasonable basis

when made.  Because Defendants allegedly knowingly or recklessly made these false and

materially misleading public statements, the complaints charge them with violations of §§ 10(b)

and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The Court may consolidate related actions if they "involve a common question of law or

fact."  Fed. R. Civ. P. 42(a).  Here, the two related actions assert the same claims against the same

Defendants on behalf of the same putative class of investors.[1]  Accordingly, the actions should be

consolidated.  *See Richman v. Goldman Sachs Grp, Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011)

("There is no doubt that these actions, which make nearly identical allegations, involve common

---

[1] The *O'Brien* complaint includes one additional defendant, William P. Foley, II, who is not named as a defendant in the *Wiley* action.

questions of law and fact, should be consolidated pursuant to Federal Rule of Civil Procedure 42(a)(2).").

**B.      Berry Should Be Appointed Lead Plaintiff**

The PSLRA establishes the procedure for the appointment of a lead plaintiff.  First, "[n]ot later than twenty (20) days" after the initial complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "no later than sixty (60) days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Here, Berry meets each of these requirements and should be appointed lead plaintiff and permitted to select lead counsel for the class, subject to Court approval.

**1.      Berry's Motion is Timely**

The statutory notice published on December 10, 2021, advised class members of the pendency of the initial action, the claims asserted therein, the proposed class period, and the right to move the Court to be appointed as lead plaintiff within sixty days, or by February 8, 2022. *See* Declaration of Ralph M. Stone in Support of Movant Adam Berry's Motion for Appointment as

- 5 -

Lead Plaintiff and Approval of Selection of Counsel ("Stone Decl."), filed herewith, Exh. A (PSLRA Press Release).

Because this Motion is being filed on February 8, 2022, it is timely, and Berry is entitled to be considered for appointment as lead plaintiff.

### 2.    Berry Possesses the Largest Financial Interest

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Berry suffered $526,406 in estimated PSLRA losses as a result of purchasing 781,841 Paysafe shares during the Class Period.  *See* Stone Decl., Exh. B (PSLRA Certification) and Exh. C (Financial Interest Calculation).  Accordingly, Berry has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of the federal securities laws.  To the best of his counsel's knowledge, there are no other plaintiffs or movants with larger financial interests during the Class Period.  Therefore, Berry satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3.    Berry Otherwise Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C.  § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)–(4).  At the lead plaintiff stage, movants are only required to make a *prima facie* showing of typicality

and adequacy.  *Kasilingam v. Tilray, Inc.*, No. 1:20-cv-03459-PAC, 2020 WL 4530357, at *2 (S.D.N.Y. Aug. 6, 2020).

In determining whether a movant satisfies the "typicality" requirement, courts consider whether its claims arise from the same conduct and same legal theory for the defendants' alleged liability. *Id.* at *3.  The typicality requirement is satisfied here because Berry seeks the same relief and advances the same legal theories as other class members.  Indeed, like other class members: (i) Berry purchased Paysafe shares during the Class Period; (ii) his purchases were at prices artificially inflated by Defendants' false and misleading public statements; and (iii) he was damaged thereby.  Berry's claims therefore arise from the same course of events and his legal arguments to prove Defendants' liability are identical to the balance of the class.

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Thus, in evaluating whether Berry satisfies the adequacy requirement, the Court should consider whether he "has selected counsel 'qualified, experienced, and generally able to conduct the litigation,' he has no conflict with the other class members, and his financial interest is sufficient to ensure 'vigorous advocacy.'" *Kasilingam*, 2020 WL 4530357, at *3 (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).

Here, Berry has retained counsel experienced in prosecuting securities class actions under the PSLRA.  *See* section III(C), below.  Additionally, no antagonism exists between his interests and those of the absent class members.  Their interests are squarely aligned.  Moreover, Berry has amply demonstrated his adequacy by signing the sworn PSLRA certification and declaration submitted herewith evidencing his willingness to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.  *See* Stone Decl., <u>Exh. B</u> (PSLRA

Certification) & Exh. D (Declaration of Adam Berry).  Finally, Berry's significant losses in connection with his investments in Paysafe shares ensure that he has the incentive to vigorously pursue the claims against Defendants.

Because Berry has the largest financial interest in the action and has made *a prima facie* showing of typicality and adequacy, he should be appointed lead plaintiff.

### C.  Berry's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Berry has selected Johnson Fistel to serve as lead counsel for the proposed class.

Johnson Fistel, with offices in New York, Georgia, and California, is a leading shareholder rights law firm and has earned a reputation for excellence and innovation in shareholder and complex litigation.  The firm and its attorneys have been appointed as lead or co-lead counsel in shareholder litigation in both federal and state courts throughout the country and have successfully litigated numerous such cases on behalf of injured investors.  *See* Stone Decl., Exh. E (Johnson Fistel Firm Resume).  In fact, courts and clients alike have praised Johnson Fistel and its attorneys for their capabilities in complex cases such as the present case.  *Id*.  There can be little doubt that as lead counsel, Johnson Fistel's extensive experience and track record of success in complex shareholder litigation like the present case, combined with its client-driven track record, will serve lead plaintiff and the class well.

Thus, the Court can be assured that by approving Berry's choice of Johnson Fistel as lead counsel, the putative class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

The two related actions are nearly identical and should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.  Once the actions are consolidated, Berry, who meets all of the PSLRA's lead plaintiff requirements, respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Johnson Fistel as Lead Counsel.

DATED:  February 8, 2022

**JOHNSON FISTEL, LLP**

*/s/ Ralph M. Stone*

Ralph M. Stone (RS-4488)
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: (212) 292-5690
Facsimile: (212) 292-5680
RalphS@johnsonfistel.com

**JOHNSON FISTEL, LLP**
Michael I. Fistel, Jr.
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
MichaelF@johnsonfistel.com

***Counsel for Movant Adam Berry***