UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA WILEY, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-10611-AJN-KHP |
| Plaintiff, | |
| v. | |
| PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD, | |
| Defendants. | |
| JOHN PAUL O'BRIEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-00567-AJN-KHP |
| Plaintiff, | |
| v. | |
| PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ROBERT J. VIANI AND ERIC C. PRICE, AS TRUSTEE FOR THE ERIC C. PRICE & KRISTEN B. HENNIG-PRICE REV. LIVING TRUST UA 05/27/2015, FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT.................................................................................................4

    A.   The Related Actions Should Be Consolidated...........................................4

    B.   Mr. Viani and Mr. Price Should Be Appointed Lead Plaintiff ...............4

        1.   Mr. Viani and Mr. Price Have the Largest Financial Interest.....................4

        2.   Mr. Viani and Mr. Price Satisfy the Relevant Requirements of Rule 23 ....................................................................................6

    C.   Mr. Viani and Mr. Price's Selection of Counsel Should Be Approved...................7

    D.   The Competing Motions Should Be Denied...........................................8

        1.   None of the Other Movants Claim a Larger Financial Interest than Mr. Viani and Mr. Price...........................................8

        2.   Campbell Is Subject to Unique Defenses...................................8

            a.   It Is Unclear if Each and Every One of Campbell's 101 Assignors Intended to Convey an Irrevocable Assignment............................ 9

            b.   Campbell Cannot Correct Its Standing Later in the Litigation..... 11

III.  CONCLUSION.............................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)..................................................................................................9, 10

*Batter v. Hecla Mining Co.*,
Nos. 19-cv-4883 (ALC), *et al.*,
2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) .........................................................................10

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203(PAE),
2012 WL 2025850 (S.D.N.Y. May 31, 2012) .......................................................................2, 4

*In re Cavanaugh v. U.S. Dist. Court for the N. Dist. of Cal.*,
306 F.3d 726 (9th Cir. 2002) ....................................................................................................8

*In re Cohen v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ...............................................................................................3, 7

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) .............................................................................................12

*Lundy v. Ideanomics, Inc.*,
No. 20 Civ. 4944 (GBD),
2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ...................................................................12, 13

*Omdahl v. Farfetch Ltd.*,
No. 19-cv-8657 (AJN),
2020 WL 3072291 (S.D.N.Y. June 10, 2020) ................................................................ *passim*

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
No. 21 Civ. 4390 (VM),
2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021)..............................................................9, 11, 12

*Schaffer v. Horizon Pharma Plc*,
No. 16-CV-1763 (JMF),
2016 WL 3566238 (S.D.N.Y. June 27, 2016) ........................................................................10

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ......................................................................................11, 12

*In re Snap Inc. Sec. Litig.*,
No. 2:17-cv-03679-SVW-AGR,
2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ..........................................................................11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008)......................................................................................................9, 10

*Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
    Nos. 11-6247 (JBS/KMW), *et al.*,
    2012 WL 3638629 (D.N.J. Aug. 22, 2012) ................................................. 8-9, 10, 11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008).......................................................................................8, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a) ................................................................................................... *passim*

Robert J. Viani and Eric C. Price, as trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05/27/2015, respectfully submit this Memorandum of Law in further support of their Motion for consolidation of related actions, appointment as Lead Plaintiff, and approval of selection of counsel (ECF No. 19), and in opposition to the competing motions.[1]

## I.    INTRODUCTION

Mr. Viani and Mr. Price's losses of more than $3.8 million are the largest of any movant before the Court, and they are the only movant meeting all of the criteria for appointment as lead plaintiff under the analysis required by the PSLRA.

In addition to Mr. Viani and Mr. Price's Motion, motions seeking appointment as Lead Plaintiff were also filed by: (1) Campbell Capital Management Inc. ("Campbell") (ECF No. 36); (2) Dr. Ranga Thalluri (ECF No. 26); (3) Donald Jon Lawrence (ECF No. 16); (4) Samih Ajami, Alexander Soo, and Richard Cavalier (ECF No. 30); (5) Ryan Schick and Nechuma Terebelo (ECF No. 37); (6) Adam Berry (ECF No. 23); and (7) Kudzanai Muringi (ECF No. 21).  Donald Jon Lawrence, Ryan Schick and Nechuma Terebelo, Adam Berry, and Kudzanai Muringi have subsequently filed notices of non-opposition and have not challenged Mr. Viani and Mr. Price's appointment as Lead Plaintiff.  *See* ECF Nos. 48, 47, 44, & 45.

A straightforward application of the PSLRA provides that the "most adequate plaintiff"— the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that also makes a *prima facie* showing of typicality and adequacy.  *See* 15 U.S.C. § 78u-

---

[1]    Unless otherwise indicated, all references to "ECF No. __" are to docket entries in the first-filed *Wiley* action, all capitalized terms are defined in Mr. Viani and Mr. Price's Motion and accompanying Memorandum of Law, *see* ECF Nos. 19 & 20, all emphasis is added, and all internal citations and quotation marks are omitted.

4(a)(3)(B)(iii)(I).  Here, Mr. Viani and Mr. Price are the presumptive Lead Plaintiff under the analysis required by the PSLRA.

*First*, as detailed below, Mr. Viani and Mr. Price suffered the largest losses under the preferred LIFO methodology in connection with their Class Period transactions:[2]

| Movant | Claimed LIFO Losses |
|---|---|
| **Mr. Viani and Mr. Price** | **$3,819,459** |
| Campbell | $2,902,048 |
| Dr. Ranga Thalluri | $2,074,451 |
| ~~Donald Jon Lawrence~~ | ~~$1,304,139~~ |
| Samih Ajami, Alexander Soo, and Richard Cavalier | $677,559 |
| ~~Ryan Schick and Nechuma Terebelo~~ | ~~$534,746~~ |
| ~~Adam Berry~~ | ~~$526,407~~ |
| ~~Kudzanai Muringi~~ | ~~$256,581~~ |

Accordingly, Mr. Viani and Mr. Price possess the "largest financial interest" in this litigation.  *See Omdahl v. Farfetch Ltd.*, No. 19-cv-8657 (AJN), 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020) (Nathan, J.) (appointing group with the largest LIFO losses).

*Second*, in addition to asserting the dominant financial interest, Mr. Viani and Mr. Price readily satisfy the typicality and adequacy requirements of Rule 23 and are perfectly situated to

---

[2]    LIFO is the preferred and most-widely-accepted methodology for calculating movants' losses.  *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO").  The movants' LIFO losses are taken from their respective filings.

represent all class members.  Indeed, as set forth in the Joint Declaration of Robert J. Viani and Eric C. Price, Mr. Viani and Mr. Price fully understand the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and communicating regularly with counsel, including reviewing and authorizing the filing of important litigation documents.  *See* ECF No. 22-3, ¶¶ 2-3, 8-9.  Mr. Viani and Mr. Price are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation.  *See id.*

*Third*, because there is no "proof" to rebut Mr. Viani and Mr. Price's presumptive status as the most adequate plaintiff under the PSLRA, Mr. Viani and Mr. Price are entitled to appointment as Lead Plaintiff and the competing motions must be denied.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Farfetch*, 2020 WL 3072291, at *2 ("This presumption may only be rebutted by proof that the purportedly most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.").

*Fourth*, Mr. Viani and Mr. Price have selected Kessler Topaz as Lead Counsel.  Kessler Topaz is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for injured shareholders.  Thus, Kessler Topaz is highly qualified to prosecute this case and should be appointed Lead Counsel for the class.  *See In re Cohen v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009) ("The statute expressly provides that lead plaintiff has the power to select lead counsel . . . .").

Accordingly, Mr. Viani and Mr. Price respectfully request that the Court grant their Motion in its entirety and deny the competing motions.

## II.     ARGUMENT

### A.     The Related Actions Should Be Consolidated

All movants agree that consolidation of the above-captioned actions is appropriate. Accordingly, the above-captioned Related Actions, which present nearly identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of Paysafe and/or FTAC securities during identical class periods, at artificially inflated prices, should be consolidated pursuant to Rule 42(a).  *See Farfetch*, 2020 WL 3072291, at *1 ("courts in this District frequently consolidate putative securities class actions that overlap").

### B.     Mr. Viani and Mr. Price Should Be Appointed Lead Plaintiff

Under the PSLRA, the "person or group of persons that . . . has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23" is the presumptively most adequate plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The process is sequential and the Court must appoint the presumptively "most adequate plaintiff" unless a competing movant can provide "***proof***" that the movant will not fairly and adequately represent the class or is subject to unique defenses.  *Id*. § 78u-4(a)(3)(B)(iii)(II); *see also Farfetch*, 2020 WL 3072291, at *2 (stating that the presumption "may only be rebutted by proof").  Because Mr. Viani and Mr. Price are the presumptively most adequate plaintiff to represent the class and no "proof" exists that could rebut that presumption, Mr. Viani and Mr. Price are entitled to appointment as Lead Plaintiff.

#### 1.     Mr. Viani and Mr. Price Have the Largest Financial Interest

For years, courts in the Second Circuit and across the country have primarily looked to movants' asserted losses, as calculated under the LIFO methodology, when assessing financial interest under the PSLRA.  *See, e.g.*, *Kinross Gold*, 2012 WL 2025850, at *3 ("[T]he overwhelming trend . . . nationwide has been to use LIFO to calculate such losses."); *Farfetch*,

4

2020 WL 3072291, at *3 (appointing movant with the largest LIFO losses). Consistent with the prevailing view, each of the movants acknowledge that courts in this Circuit typically "judge 'largest financial interest' [by] the amount of loss," ECF No. 39 at 7, or have equated loss with "financial interest."[3]

Based on the movants' respective submissions to the Court, it is clear that Mr. Viani and Mr. Price suffered the largest losses in connection with their Class Period transactions in Paysafe and FTAC securities, and thus, possess the largest financial interest of any movant before the Court:



_____

[3]    _See, e.g._, ECF No. 41-3 (labeling loss chart a "Financial Interest Analysis"); ECF No. 25 at 6 (equating LIFO losses with "financial interest"); ECF No. 29 at 7 (same); ECF No. 18 at 6 (same); ECF No. 33 at 6 (same); ECF No. 27 at 9 (same).

### 2. Mr. Viani and Mr. Price Satisfy the Relevant Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, Mr. Viani and Mr. Price also satisfy the applicable requirements of Rule 23—adequacy and typicality. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Farfetch*, 2020 WL 3072291, at *3.

As demonstrated in their opening brief, Mr. Viani and Mr. Price's claims are typical of the class's claims. *See generally* ECF No. 20. Like all other class members, Mr. Viani and Mr. Price: (1) purchased Paysafe and/or FTAC securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *See, e.g.*, *Farfetch*, 2020 WL 3072291, at *3 ("The typicality requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"). Mr. Viani and Mr. Price also satisfy Rule 23's adequacy requirement because they are capable of "fairly and adequately protect[ing] the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Mr. Viani and Mr. Price, by asserting the largest losses of any movant before the Court, have more than a sufficient interest in this case to ensure the vigorous prosecution of this litigation. Further, the previously submitted Joint Declaration of Robert J. Viani and Eric C. Price, ECF No. 22-3, establishes Mr. Viani and Mr. Price's commitment to prosecuting this action efficiently and in the class' best interest. Thus, Mr. Viani and Mr. Price are clearly aligned with other class members and there is no evidence of any conflicts. *See Farfetch*, 2020 WL 3072291, at *3 (stating that in evaluating movants' adequacy, courts consider whether: "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between [them] and the members of the class; and (3) . . . [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy" (brackets in original)).

6

Moreover, no "proof" exists to rebut Mr. Viani and Mr. Price's presumptive status as the most adequate plaintiff under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Farfetch*, 2020 WL 3072291, at *2 (explaining that the presumption of most adequate plaintiff "may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class'").

Because they possess the largest financial interest in the relief sought by the class and otherwise satisfy the relevant requirements of Rule 23, Mr. Viani and Mr. Price should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Farfetch*, 2020 WL 3072291, at *3 (appointing group with largest LIFO losses).

### C.    Mr. Viani and Mr. Price's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen*, 586 F.3d at 712 ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."). Accordingly, Mr. Viani and Mr. Price's selection of Kessler Topaz—a firm with significant experience prosecuting complex securities class actions—as Lead Counsel should be approved. *See Farfetch*, 2020 WL 3072291, at *3 (recognizing that "Kessler Topaz ha[s] litigated numerous large-scale securities class actions in this District to resolution, often obtaining large settlements for represented parties").

### D.      The Competing Motions Should Be Denied

#### 1.      None of the Other Movants Claim a Larger Financial Interest than Mr. Viani and Mr. Price

As demonstrated above, each competing movant's claimed losses are significantly lower than Mr. Viani and Mr. Price's losses, and there is no "proof" to rebut Mr. Viani and Mr. Price's presumptive status.  This, without more, is sufficient to deny the competing movants' motions under the PSLRA's "straightforward" lead plaintiff selection process.  *In re Cavanaugh v. U.S. Dist. Court for the N. Dist. of Cal.*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status[.]").

#### 2.      Campbell Is Subject to Unique Defenses

In addition to failing to assert the largest financial interest, Campbell—the movant with the second-largest losses—is also subject to unique defenses and cannot meet the PSLRA's criteria for appointment even if it claimed the largest loss.  Here, Campbell did not directly purchase any Paysafe securities and is subject to unique defenses surrounding its standing to assert claims in connection with the investments of 101 of its clients' accounts.  *See* ECF No. 41-2.  As the Second Circuit explained in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), an asset manager—like Campbell—that did not personally suffer an "injury-in-fact" (because the relevant investments and claims belong to its clients) can satisfy the standing requirements of Article III of the U.S. Constitution *if* the asset manager receives a *valid* assignment from its clients.  *Id.* at 107-08.  However, Campbell's reliance upon more than 100 ambiguous and boilerplate "assignments" from its clients to establish its standing presents a host of issues that "prejudice the class members by subjecting them to the time and expense of litigating these unique defenses."  *Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, Nos. 11-6247

8

(JBS/KMW), *et al*., 2012 WL 3638629, at *14 (D.N.J. Aug. 22, 2012) (disqualifying movant due questions surrounding movant's standing). Here, none of Campbell's 101 assignments state that they are irrevocable. Given the absence of an irrevocability clause, Defendants are likely to challenge whether Campbell's purported assignments validly confer standing. At the very least, Campbell's ambiguous assignments will allow Defendants to delve into each purported assignor's intent concerning revocability. These unique issues and defenses undermine any claim Campbell may make about its ability to meet Rule 23's requirements. *See Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc*., No. 21 Civ. 4390 (VM), 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021) (rejecting movant with questionable assignment where "there is a non-speculative risk that [movant's] standing could be successfully challenged").

### a.   It Is Unclear if Each and Every One of Campbell's 101 Assignors Intended to Convey an Irrevocable Assignment

In *Huff*, the Second Circuit made clear that assignments do not confer standing if they, like power-of-attorney agreements, do not fully transfer legal title or ownership of the underlying claims. 549 F.3d at 108. In doing so, *Huff* noted the Second Circuit's earlier analysis in *Advanced Magnetics*, in which it held that a purported assignment of claims was insufficient to confer standing under Article III because the assignment "***permitted the assignor to retain the right to terminate the plaintiff-assignee's authority to pursue the assigned claims***." *Id.* (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997). As explained by the *Huff* court, the Supreme Court's ruling in *Sprint* was entirely consistent with the Second Circuit's rejection of the purported assignment in *Advanced Magnetics. Id.* (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008)). Indeed, the assignment analyzed in *Sprint* specifically noted that the assignment "may not be revoked without the written consent

9

of the [assignee]." *Sprint*, 554 U.S. at 272. Thus, revocable assignments do not confer standing under *Sprint* or *Huff*.

Despite the clarity in *Sprint* and *Huff*, Campbell's assignments do not specifically state that they are irrevocable by the assignors. *Compare* ECF No. 41-2 at 17-109 (boilerplate assignments omitting any reference to irrevocability), *with Sprint*, 554 U.S. at 272 (noting irrevocability clause). Indeed, these assignments are entirely silent as to whether Campbell's clients may revoke the assignment (either directly or by terminating their investment relationship with Campbell) or whether, like in *Sprint*, only Campbell can assign back the claims to its clients. The absence of language demonstrating an irrevocable legal transfer of ownership of the claims exposes Campbell's "assignments" to an argument that they may be nothing more than the type of agreement found insufficient by the Second Circuit in *Advanced Magnetics*. 106 F.3d at 18 (rejecting assignment in which the assignor retained the right to terminate the assignment).

Whether or not this unique defense is ultimately successful is irrelevant to the question of whether to disqualify Campbell, as Campbell's mere susceptibility to this unique defense renders it inadequate for selection as Lead Plaintiff. *See, e.g.*, *Batter v. Hecla Mining Co.*, Nos. 19-cv-4883 (ALC), *et al.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on ***potential*** risks."); *Cent. Eur. Distrib.*, 2012 WL 3638629, at *13 (noting that the standing question "would require substantial attention at litigation, thus detracting from the class' best interests").

Indeed, beyond the threshold question of standing, the fact that Campbell's financial interest is predicated on the amalgamation of more than 100 clients' individual losses—with many suffering only $2,000 or $3,000 in losses—presents a number of logistical issues. First, if the assignments are revocable, Campbell's financial interest could dwindle if any of its clients chose to revoke the assignments at any time during the litigation. Second, given the boilerplate nature of the assignments and the fact that they were all executed during a five-day period immediately before the lead plaintiff deadline, Campbell likely sent assignments to a multitude of clients and simply moved for appointment as lead plaintiff on the basis of any assignments that happened to be returned in time. Under these circumstances, Defendants might reasonably argue that some or all of Campbell's clients did not fully understand the effects of their assignments, and might seek to challenge these assignments or even depose these clients. Answering this question would require discovery from all of Campbell's 101 assignors. The class should not be saddled with these costs and distractions. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("[C]ourts should not appoint a lead plaintiff whose appointment would pose a 'danger that absent class members will suffer if [the lead plaintiff] is preoccupied with defenses unique to it.'") (second alteration in original). Regardless of the outcome, Campbell's standing issue is "unique to [Campbell], is not shared with class members, and therefore constitutes a non-frivolous unique defense that would prejudice the class." *Cent. Eur. Distrib.*, 2012 WL 3638629, at *14; *see also Array*, 2021 WL 5051649, at *2.

### b.    Campbell Cannot Correct Its Standing Later in the Litigation

Critically, Campbell cannot cure its lack of standing, either now or at some future point in the litigation, by providing corrected assignments from its 101 clients. The analysis in *In re SLM Corp. Securities Litigation*, 258 F.R.D. 112 (S.D.N.Y. 2009), is instructive. There, the court considered whether, subsequent to the Second Circuit's ruling in *Huff*, an investment advisor it

11

had previously appointed as lead plaintiff actually lacked standing, given that the advisor did not have valid assignments from its clients at the time it was appointed lead plaintiff. While the advisor subsequently provided assignments in an attempt to establish its standing, the court held that the advisor "did not have Article III standing at the time this Court appointed it lead plaintiff," and could not now cure its defective standing. *Id.* at 116. Moreover, the court explained that the investment advisor "faces unique legal issues that other class members do not," because "[e]ven if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise." *Id*. As a result, the *SLM* court disqualified the investment advisor and was forced to appoint a new lead plaintiff more than a year into the litigation. *See id.* at 116-17.

Here, Campbell's appointment would similarly undermine the prosecution of the entire class's claims because Campbell's boilerplate assignments (even if corrected before its appointment), could be deemed insufficient at a later stage of litigation—requiring the Court to reopen the lead plaintiff selection process and potentially exposing absent class members to statute of limitations and statute of repose concerns. *See, e.g.*, *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"); *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) ("[I]f Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns.").

"There is no need to subject the class to these potential issues where there is another appropriate movant readily available," like Mr. Viani and Mr. Price, that asserts a larger financial

interest, is adequate and typical in all respects, and is not subject to any unique defenses. *Ideanomics*, 2020 WL 7389027, at *3.

Accordingly, the Court should appoint Mr. Viani and Mr. Price as Lead Plaintiff and deny the competing motions.

## III.    CONCLUSION

For the reasons set forth above, Mr. Viani and Mr. Price respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint Mr. Viani and Mr. Price as Lead Plaintiff; (3) approve their selection of Kessler Topaz as Lead Counsel for the class; and (4) deny the competing motions.

Dated:  February 22, 2022

Respectfully submitted,

**KESSLER TOPAZ MELTZER
 & CHECK, LLP**

*S/ Naumon A. Amjed*
Naumon A. Amjed
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Robert J. Viani and Eric C. Price, as trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05/27/2015, and Proposed Lead Counsel for the Class*

13