**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA WILEY, Individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 1:21-cv-10611-AJN-KHP |
| PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD, | Hon. Alison J. Nathan Magistrate Judge Katherine H. Parker |
| Defendants. | |
| JOHN PAUL O'BRIEN, Individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No.: 1:22-cv-00567-AJN-KHP |
| PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD, | Hon. Alison J. Nathan Magistrate Judge Katherine H. Parker |
| Defendants. | |

**DR. RANGA THALLURI'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     ARGUMENT ......................................................................................................... 3

    A.      The PSLRA Procedure.................................................................................. 3

    B.      Dr. Thalluri Should Be Appointed Lead Plaintiff............................................ 4

    C.      The Viani/Price Group Will Not Adequately Protect the Interests of the Class and Should Be Disqualified as "Lawyer-Driven" under *Varghese.* ................................................. 6

    D.      Clay Campbell Does Not Have the Largest Financial Interest in the Litigation and Would Expose the Class to Numerous Unique Defenses. ...................................................... 12

    E.      No Proof Exists to Rebut the Statutory Presumption in Favor of Dr. Thalluri.............. 16

III.    CONCLUSION.................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
No. 06-cv-13761-CM-NKF, 2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. July 31, 2007) ......... 16

*Chauhan v. Intercept Pharm.*,
No. 21-cv-00036 (LJL), 2021 U.S. Dist. LEXIS 13369 (S.D.N.Y. Jan. 25, 2021) ............ 7, 11

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
No. 20-cv-9132 (AJN), 2021 U.S. Dist. LEXIS 21607 (S.D.N.Y. Feb. 4, 2021) ..................... 8

*Cohen v. Luckin Coffee Inc.*,
1:20-cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647 (S.D.N.Y. June 12, 2020) ............. 10, 11

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................................. 8

*In re Evolus Inc. Sec. Litig.*,
2021 U.S. Dist. LEXIS 177575 (S.D.N.Y. Sep. 17, 2021) ....................................................... 8

*In re Facebook, Inc.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................................... 4

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y 2008) ............................................................................................. 4

*Giles v. Sun Bank, N.A.*,
450 So. 2d 258 (Fla. 5th DCA 1984) ...................................................................................... 14

*Glauser v. EVCI Career Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ............................................................................................ 6

*In re Hebron Tech. Co. Sec. Litig.*,
2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sep. 16, 2020) ..................................................... 16

*Hogan v. Supreme Camp of Am. Woodmen*,
146 Fla. 413 (Fla. 1941) ......................................................................................................... 14

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*,
No. 15-cv-3599-KMW, 2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015) ......... 3, 12

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
No. 14-cv-10020-RMB, 2015 U.S. Dist. LEXIS 38635 (S.D.N.Y. Mar. 19, 2015) .............. 16

*Jakobsen v. Aphria, Inc.*,
No. 18-cv-11376, 2019 U.S. Dist. LEXIS 64440 (S.D.N.Y. Mar. 27, 2019) ........................ 11

*Justinian Capital SPC v. WestLB AG,*
    28 N.Y.3d 160, 43 N.Y.S.3d 218, 65 N.E.3d 1253, 1254 (N.Y. 2016) .................................. 14

*Khunt v. Alibaba Grp. Holding Ltd.,*
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................................. 1, 8

*In re Kingate Mgmt. Ltd. Litig.,*
    No. 09-CV-5386 (DAB), 2016 U.S. Dist. LEXIS 129882 (S.D.N.Y. Sep. 21, 2016) ............ 13

*Kniffin v. Micron Tech., Inc.,*
    379 F. Supp. 3d 259 (S.D.N.Y. 2019) ................................................................................... 10

*Lee v. iQIYI, Inc.,*
    20-CV-1830 (LDH) (JO), 2020 U.S. Dist. LEXIS 194582 (E.D.N.Y. Oct. 20, 2020) ............. 8

*Maliarov v. Eros Int'l PLC,*
    Nos, 15-CV-8956 (AJN), 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y.
    Apr. 5, 2016) ............................................................................................................................ 9

*McDermid v. Inovio Pharm., Inc.,*
    Civil Action No. 20-01402, 2020 U.S. Dist. LEXIS 106766 (E.D. Pa. June 18, 2020) ......... 11

*PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC,*
    No. 1:18-CIV-20818-GAYLES, 2018 U.S. Dist. LEXIS 189801 (S.D. Fla. Nov. 5, 2018) .. 14

*PEAK6 Capital Mgmt., LLC v. BP P.L.C.,*
    No. MDL No. 4:10-md-2185, 2016 U.S. Dist. LEXIS 417 (S.D. Tex. Jan. 4, 2016) ............. 15

*In re Petrobras Sec. Litig.,*
    104 F. Supp. 3d 618 (S.D.N.Y. 2015) ............................................................................... 6, 11

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
    275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................................... 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,*
    229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................... 17

*Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.,*
    2021 U.S. Dist. LEXIS 180029 (S.D.N.Y. Sep. 21, 2021) ..................................................... 15

*Porzio v. Overseas Shipholding Grp.,*
    Nos. 12 Civ. 7948, 12 Civ. 8547, 12 Civ. 9363, 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y.
    Feb. 1, 2013) ............................................................................................................................. 9

*Pycsa Pan., S.A. v. Tensar Earth Techs., Inc.,*
    625 F. Supp. 2d 1198 (S.D. Fla. 2008) .................................................................................. 14

*Rodriguez v. Draftkings Inc.,*
   2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ....................................................... 8

*Sallustro v. CannaVest Corp.,*
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)..................................................................................... 4

*Sprint Communications Co., L.P. v. APCC Services, Inc.*,
   554 U.S. 269 (2008)........................................................................................................ 3, 15

*In re Stitch Fix, Inc. Sec. Litig.,*
   393 F. Supp. 3d 833 (N.D. Cal. 2019) ................................................................................ 11

*Tensar Earth*,
   625 F. Supp. 2d at 1246, *aff'd*, 329 Fed. Appx. 257 (11th Cir. 2009) ................................... 13

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. 07-cv-2204, 2008 U.S. Dist. LEXIS 118562  (D. Ariz. Apr. 7, 2008) ............................. 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................... passim

*In re Veeco Instruments, Inc.,*
   233 F.R.D. 330 (S.D.N.Y. 2005) ........................................................................................ 9

*Williams v. Block.One*,
   No. 20-cv-2809 (LAK), 2020 U.S. Dist. LEXIS 138798 (S.D.N.Y. Aug. 4, 2020)................. 7

*In re XM Satellite Radio Holdings Sec. Litig.,*
   237 F.R.D. 13 (D.D.C. 2006)............................................................................................ 12

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................... *passim*

N.Y. Jud. Law § 489(1) ...................................................................................................... 13

## I.    PRELIMINARY STATEMENT

Dr. Ranga Thalluri ("Dr. Thalluri") should be appointed lead plaintiff in these actions. The Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. Under that directive, Dr. Thalluri should serve as lead plaintiff. Without any evidence from the other competing movants showing that Dr. Thalluri is somehow atypical or inadequate to serve as lead plaintiff, the Court should grant his motion, approving him and his chosen counsel as lead plaintiff and lead counsel, respectively.

The PSLRA instructs the Court to appoint as lead plaintiff the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). A movant cannot serve as lead plaintiff where the record shows that he or she "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Only two other movants claim to have a larger financial interest than Dr. Tharulli. These movants, however, do not have the financial interests they claim. They are also subject to unique defenses and appear incapable of adequately representing the class under well-established case law. Messrs. Viani and Price, who filed a joint motion seeking to serve as co-lead plaintiffs, claim a loss of $3,819,458.66. This figure includes over $1.25 million of losses that are not recoverable by way of this lawsuit. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (holding losses incurred before corrective disclosure are ineligible because they

were caused by reasons unrelated to the alleged wrongdoing). More to the point, this $1.25 million of unrecoverable losses encompasses the entirety of Mr. Price's supposed financial interest in the case, which raises questions as to the formation of their "group" and its legitimacy under *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (creating standard for evaluating "adequacy" of group). These questions include, for example, why Messrs. Viani and Price agreed to work with each other in the first place, the circumstances through which they were introduced, and how the appointment of their "group" could in any way be conceivably beneficial for the class as a whole when one of the group members has no financial interest in the outcome of the litigation. The joint declaration submitted by Messrs. Viani and Price in support of their motion do not answer these questions and, therefore, fails to establish their "adequacy" under Rule 23.

The only other movant who purports to have a greater financial interest in the litigation than Dr. Thalluri is Clay Campbell and his investment firm, Campbell Capital Management Inc. While Mr. Campbell claims a loss of nearly $3 million, this figure is grossly inflated due to the fact that he himself sustained a claimed LIFO loss of only $262,739.45 and the difference is attributable to losses sustained by over 90 unrelated individuals, trusts, and third-party entities who Mr. Campbell claims are clients of his investment firm. Mr. Campbell claims these losses as his own for the purposes of the lead plaintiff motion through a series of "assignments." However, each assignment explicitly states that Mr. Campbell will "remit any proceeds" back to the assignors, thus demonstrating that these assignments do not allow Mr. Campbell to claim any greater financial interest in the litigation other than his own. Given that the express purpose of the PSLRA in this regard is to "ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control

2

over the selection and actions of plaintiffs' counsel," Mr. Campbell should not be appointed lead plaintiff when Dr. Tharulli individually lost nearly $2 million. *See Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* No. 15-cv-3599-KMW, 2015 U.S. Dist. LEXIS 153202, at *3-5 (S.D.N.Y. Nov. 12, 2015). This is especially so considering the other problems associated with the assignments, including their validity without "consideration" under Florida and/or New York law. It is apparent that these assignments were not entered into for any "ordinary business purpose" under *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269 (2008), but instead at the behest of counsel in an attempt to secure the lead role in this action. This sort of gamesmanship should not be condoned.

For the reasons stated herein, Dr. Tharulli is the "most adequate plaintiff" to serve as lead plaintiff and, as such, his motion should be granted in its entirety.

## II.   ARGUMENT

### A.   The PSLRA Procedure.

The PSLRA provides for the Court to appoint as lead plaintiff the movant with the largest financial interest in the litigation that meets the adequacy and typicality requirements under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), creating a "rebuttable presumption." 15 U.S.C. § 78u-4(a)(3)(B)(iii). After the "presumptive" lead plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the movant with the largest financial interest meets the adequacy and typicality requirements, then he or she should be appointed lead plaintiff. If, however, the presumption is rebutted, and the movant with the largest

3

financial interest is not adequate or not typical, then the court should apply the same analysis to the movant with the next largest financial interest and repeat the process until an adequate and typical lead plaintiff is identified. *See generally In re Facebook, Inc.,* 288 F.R.D. 26, 36-41 (S.D.N.Y. 2012).

Here, Dr. Thalluri should be appointed lead plaintiff because he is the movant with the largest financial interest in the litigation that also meets the adequacy and typicality requirements of Rule 23.

**B.      Dr. Thalluri Should Be Appointed Lead Plaintiff.**

The PSLRA provides a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the movant with the "largest financial interest in the relief sought by the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii). The movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he or she is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff." *Facebook*, 288 F.R.D. at 35-41.

Courts in this District have considered four factors when identifying the movant with the greatest financial interest: "(1) number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 437 (S.D.N.Y 2008); *Sallustro v. CannaVest Corp.,* 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (collecting cases). The following table displays the claimed financial interests of the various competing movants[1]:

---

[1] Movants (1) Adam Berry; (2) Kudzanai Muringi; (3) Ryan Schick and Nechuma Terebelo; and (4) Donald Jon Lawrence, all filed notice of non-oppositions, recognizing they do not possess the largest financial interest. *See* ECF Nos. 44, 45, 47, and 48, respectively.

| Movant | Gross Shares | Net Shares | Net Funds Expended | Claimed LIFO Loss | *Dura* Loss |
|---|---|---|---|---|---|
| **Viani/Price Group** | **692,210** | **250,000** | **$4,786,147.19** | **$3,819,458.66** | **$2,542,427.97** |
| *Robert J. Viani* | 270,000 | 250,000 | $3,494,715.64 | $2,546,027.12 | $2,542,427.97 |
| *Eric C. Price* | 422,210 | 0 | $1,273,431.55 | $1,273,431.55 | $0 |
| | | | | | |
| **Dr. Ranga Thalluri** | **363,974** | **255,174** | **$3,047,814.09** | **$2,074,322.83** | **$2,007,094.48[2]** |
| | | | | | |
| **Cavalier/Ajami/Soo** | **51,293** | **51,287** | **$615,939.28** | **$677,559.15** | **$677,548.50** |
| *Richard Cavalier* | 19,286 | 19,286 | $ 257,292.21 | $183,624.25[3] | $183,624.25 |
| *Samih Ajami[4]* | 7 | 1 | $25.55 | $258,581.75 | $258,571.10 |
| *Alexander Soo* | 32,000 | 32,000 | $358,621.53 | $235,353.15 | $235,353.15 |
| | | | | | |
| **Clay Campbell** | **25,220** | **23,220** | **$ 356,566.71** | **$262,739.45** | **$249,157.76** |
| | | | | | |

As reflected in the above chart, Dr. Thalluri has the second-largest loss, behind only the Viani/Price Group. As explained, *infra*, the Viani/Price Group and its members individually are ineligible for appointment as lead plaintiff.

Not only does Dr. Thalluri possess the largest financial interest out of the qualified movants, he also meets the adequacy and typicality requirements of Rule 23. As explained in his opening motion papers, Dr. Thalluri purchased Paysafe stock when the prices were inflated due to Defendants' false and misleading statements and suffered damages therefrom. *See* ECF No. 29 at 7. Further, Dr. Thalluri's interests are not antagonistic to those of the Class, and he possesses a sufficient interest in the outcome of the case based on the losses he sustained. *Id*. at 8. As demonstrated by his certification and declaration submitted in support of his motion, Dr. Thalluri

---

[2] Dr. Thalluri provided both his LIFO loss, and *Dura* LIFO Loss with his opening motion. *See* ECF No. 34-2.

[3] Mr. Cavalier's claimed loss includes losses derived from warrants.

[4] Mr. Ajami's gross shares, net shares, and funds expended only account for common stock. His claimed loss and *Dura* loss includes losses derived from option trading.

is familiar with the duties of a lead plaintiff and class representative under the PSLRA and Rule 23, respectively, and is prepared to diligently discharge those duties. *See* ECF Nos. 34-1; 34-4 (PSLRA Certification & Declaration). Finally, Dr. Thalluri has retained experienced and capable counsel in the field of class actions securities litigation. *See* ECF. No. 34-5 (Levi & Korsinsky firm resume). Given that Dr. Thalluri possesses the largest financial interest out of qualified movants, timely filed his motion, and satisfies the adequacy and typicality requirements of Rule 23, he is the presumptively most adequate lead plaintiff.

**C.      The Viani/Price Group Will Not Adequately Protect the Interests of the Class and Should Be Disqualified as "Lawyer-Driven" under *Varghese.***

Courts are particularly "skeptical of [groups] when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA." *In re Petrobras Sec. Litig.,* 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015). Accordingly, the Southern District frequently holds that investor groups are inadequate class representatives when the group "appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together 'in the hope of thereby becoming the biggest loser for PSLRA purposes . . . .'" *Glauser v. EVCI Career Colleges Holding Corp.,* 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (citing *In re Veeco Instrument Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y 2005)). "[D]espite [investor group's] assurances that they are united in their goals and objectives and are willing and able to serve the Class, that is not enough to succeed on a lead plaintiff motion." *Elstein v. Net1 UEPS Techs., Inc.,* No. 13 CIV. 9100 ER, 2014 U.S. Dist. LEXIS 100574, at *18 (S.D.N.Y. July 23, 2014). The group must substantiate a "sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the

6

action" than courts in this District "will not hesitate" to deny the proposed group's motion. *Varghese*, 589 F. Supp. 2d at 393.

Courts in this District typically perform a "case-by-case analysis" into whether an unrelated investor group "would best serve the class." *Varghese*, 589 F. Supp. 2d at 392. In these instances, the courts look to see if the proposed group has made "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers . . . ." *Id.*; *accord Chauhan v. Intercept Pharm.,* No. 21-cv-00036 (LJL), 2021 U.S. Dist. LEXIS 13369, at *12-13 (S.D.N.Y. Jan. 25, 2021) ("The overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." (internal quotations omitted)). Pursuant to *Varghese*, this District considers the following factors when considering the "adequacy" of a "group" seeking to be appointed as the lead plaintiff: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa[.]" *Varghese*, 589 F. Supp. 2d at 392; *see also Chauhan,* 2021 U.S. Dist. LEXIS 13369, at *16-17 (denying the appointment of a group as lead plaintiff and refusing to consider the group members individually); *Williams v. Block.One*, No. 20-cv-2809 (LAK), 2020 U.S. Dist. LEXIS 138798, at *10-12 (S.D.N.Y. Aug. 4, 2020) (same).

In support of their motion, Messrs. Viani and Price submitted a sworn declaration in an attempt to make the evidentiary showing required by *Varghese*, but this joint declaration actually has the opposite effect given that it evidences their inability to actively monitor and control the litigation. *See* Joint Declaration, ECF No. 22-3. As mentioned previously, Mr. Price does not have

7

any recoverable losses in this lawsuit because he sold all of his shares prior to the corrective disclosure alleged in this action. *See Khunt*, 102 F. Supp. 3d at 531.

In *Khunt*, former Chief Judge Colleen McMahon explained the issue concisely. She wrote that under the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-46 (2005), "any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation." *Khunt*, 102 F. Supp. 3d at 531. Thus, "[i]f a loss is not *Dura* eligible then it is not redressable through the putative class action," then "the loss cannot logically contribute to his financial stake in that action." *Id*. Courts in this District and, indeed, throughout the country routinely follow this rule. *See City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.,* No. 20-cv-9132 (AJN), 2021 U.S. Dist. LEXIS 21607, at \*16 (S.D.N.Y. Feb. 4, 2021) (applying *Dura* analysis at lead plaintiff stage); *Rodriguez v. Draftkings Inc.,* 2021 U.S. Dist. LEXIS 219489, at \*13-15 (S.D.N.Y. Nov. 12, 2021) (same); *In re Evolus Inc. Sec. Litig.,* 2021 U.S. Dist. LEXIS 177575, at \*10 (S.D.N.Y. Sep. 17, 2021) (same).

Mr. Price sold all of his shares almost two months ***before*** the only corrective disclosure in this case (ECF Nos. 22-1; 22-2), which therefore means that any losses sustained in connection with his investment are causally unrelated to the alleged fraud. *See Khunt*, 102 F. Supp. 3d at 531. Consequently, he has no recoverable damages in this lawsuit and cannot adequately represent the Class. *Lee v. iQIYI, Inc.,* 20-CV-1830 (LDH) (JO), 2020 U.S. Dist. LEXIS 194582, at \*6-7 (E.D.N.Y. Oct. 20, 2020) (declined to appoint an otherwise total "in-and-out" trader); *Bensley v. FalconStor Software, Inc.,* 277 F.R.D. 231, 241 (E.D.N.Y. 2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate

8

loss causation."); *Maliarov v. Eros Int'l PLC,* Nos, 15-CV-8956 (AJN), 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082, at *12-13 (S.D.N.Y. Apr. 5, 2016) ("Popi is the only movant whose entire alleged loss pre-dates the October 30, 2015 Alpha Exposure report. As a result, Popi, unlike other movants, would be ***completely*** barred from recovery if no earlier disclosure date is established.") (emphasis added and in original). Given that one of the two members of the Viani/Price Group has no recoverable losses in this lawsuit, there can be no rational justification for appointing the group to serve as the lead plaintiff because doing so would not "best serve the class." *Varghese*, 589 F. Supp. 2d at 392.

Indeed, appointing the Viani/Price Group as the lead plaintiff would expose the class to unique defenses relating to "loss causation" insofar as one of the co-lead plaintiffs (Mr. Price) did not sustain damages as a result of Defendants' alleged fraud. *Porzio v. Overseas Shipholding Grp.,* Nos. 12 Civ. 7948, 12 Civ. 8547, 12 Civ. 9363, 2013 U.S. Dist. LEXIS 14463, at *16 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, the OSG Investor Group cannot make the requisite 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23. At the very least, the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").

Messrs. Viani and Price also face significant "adequacy" arguments based on the sworn statements they made in their joint declaration relating to their decision to form the group in the first place as well as their ability to work with one another to adequately supervise the class. Preliminarily, they claim that it would be in the class's best interest for them to serve as co-lead

9

plaintiffs based, in part, on their "respective losses arising from defendants' misconduct." ECF No. 22-3 at ¶6 ("Joint Declaration"). Yet, as explained, Mr. Price does not have any losses attributable to Defendants' misconduct.

Relatedly, Messrs. Viani and Price have no dispute resolution mechanism but instead a general intent "to make all decisions jointly, taking into consideration [counsel's] advice. We are confident in our ability to reach joint decisions regarding litigation matters and will use consensus decision making to maximize the recovery for the class." Joint Declaration at ¶6. They provide no explanation as to why Mr. Price, in particular, should have any say in the litigation of this Action given that he has no financial interest in its outcome; yet, notwithstanding, Mr. Viani is prepared to allow him to make critical decisions in the case and/or potentially cede control of it to Mr. Price if he is unavailable. Joint Declaration at ¶8 (discussing communication procedures). This deserves special attention from the Court given the direction set forth in *Varghese*. *See Cohen v. Luckin Coffee Inc.*, 1:20-cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647, at *6-11 (S.D.N.Y. June 12, 2020) (applying *Varghese* and rejecting a group who proposed with a deficient plan for overseeing the litigation and resolving intra-group disputes); *Kniffin v. Micron Tech., Inc.,* 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("vague discussions of general communication protocols and status reports hashed out over preliminary conference calls" and "boilerplate plans for cooperation" did not establish that a proposed group would work effectively and cohesively as lead plaintiff) (*citing Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,* 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011)).

Moreover, Messrs. Viani and Price conspicuously omit from the Joint Declaration how they came to know of one another or their willingness to work together. The timing of their respective certifications—Mr. Price on January 25, 2022 and Mr. Viani on February 4, 2022—

10

suggests that their counsel paired them together on the eve of the February 8, 2022 deadline in an attempt to maximize their financial interest in the action and, in doing so, win the "lead" role for their counsel. In other words, the circumstances surrounding the Viani/Price Group's formation suggests it is entirely lawyer-constructed. *See Luckin,* 2020 U.S. Dist. LEXIS 103647, at *12 ("[T]here is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel."). Under *Varghese*, this, too, weighs strongly in favor of denying the Viani/Price Group's motion.[5]

---

[5] Any belated request by Viani to now be considered individually should wholly be denied. Individuals that decide to move as a group for lead plaintiff and do not formally request that they be considered individually within the statutorily set sixty-day window, should not be considered separately if the group is found to be inadequate. *See Chauhan,* 2021 U.S. Dist. LEXIS 13369, at *16-17 ("Neither [Viani nor Price] have requested to be considered individually as lead plaintiff and the Court declines so to consider them. The PSLRA requires a purported class member who wishes to be considered for the position of lead plaintiff to make a motion, and to make it within the sixty-day window. Neither [Viani nor Price] moved to be considered individually as an alternative if their group was rejected, which they should have done if they wished to be considered individually…") (citing *Jakobsen v. Aphria, Inc.,* No. 18-cv-11376, 2019 U.S. Dist. LEXIS 64440, at *12-13, n.3 (S.D.N.Y. Mar. 27, 2019) ("There are no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis. As such, this Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff.")); *see also In re Petrobras Sec. Litig.,* 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015) (refusing to appoint a group member with the largest loss because it "at no time sought to serve as an individual lead plaintiff"); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 U.S. Dist. LEXIS 118562, at *15-16 (D. Ariz. Apr. 7, 2008) ("The [] Group moved for lead plaintiff as a group and will be evaluated as such."); *In re Stitch Fix, Inc. Sec. Litig.,* 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("the Court declines to . . . consider their individual losses" because "the group members have not requested individual consideration"); *McDermid v. Inovio Pharm., Inc.,* Civil Action No. 20-01402, 2020 U.S. Dist. LEXIS 106766, at *17 (E.D. Pa. June 18, 2020) ("The Inovio Group 'decided to move together as a group. . . .' That group motion is the one before the Court, and the Court will not retroactively amend it.") (citation omitted).

**D.      Clay Campbell Does Not Have the Largest Financial Interest in the Litigation and Would Expose the Class to Numerous Unique Defenses.**

Congress, in enacting the PSLRA, sought "to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.,* No. 15-cv-3599-KMW, 2015 U.S. Dist. LEXIS 153202, at *4-5 (S.D.N.Y. Nov. 12, 2015) (*quoting Peters v. Jinkosolar Holding Co. Ltd.,* No. 11-cv-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012)). "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." *Id; see also In re XM Satellite Radio Holdings Sec. Litig.,* 237 F.R.D. 13, 17 (D.D.C. 2006) ("Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and overseeing the litigation.").

Congress's intent in this regard is important because it stands squarely in the way of appointing Clay Campbell and his investment firm as the lead plaintiff in this action. Mr. Campbell, individually, sustained a claimed LIFO loss of $262,739.45[6]. ECF No. 41-3 (Summary of CCM's LIFO Loss). Campbell Capital Management, meanwhile, has no alleged losses because it did not purchase or own any Paysafe securities at any point in the class period. *See* ECF Nos. 41-2; 41-3. Only by way of the some-odd 90+ third-party assignments attached to their motion can they claim the $2.9 million loss they presently assert. ECF No. 41-2. But these assignments and

---

[6] This loss figure includes losses derived from sales that occurred prior to a corrective disclosure and are therefore not recoverable under *Dura*.

12

the third-party losses they carry cannot be counted as part of Mr. Campbell's financial interest in the litigation. Nor do they make an "adequate" or "typical" lead plaintiff out of Campbell Capital Management.

The assignments at bar explicitly state that Campbell Capital Management, as assignee, "agrees to remit any proceeds received as a result of this assignment to the Assignor." *See* ECF No. 41-2 at pp. 17-109. Consequently, the assignments provide Campbell Capital Management with no greater financial interest in the litigation; in other words, Mr. Campbell and his investment management firm are no more or less motivated to litigate this case as a result of the approximate 90+ assignments that were executed for the purposes of their lead plaintiff motion. Given the fact that Mr. Campbell, individually, sustained a claimed LIFO loss of only $262,739.45, he therefore cannot claim the "largest financial interest" in the litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The remittance of all proceeds back to the assignor affects not just Mr. Campbell's financial interest in the litigation, but also the validity of the assignments themselves in light of the fact that the assignments were made for no "consideration." *See* ECF No. 41-2 at pp. 17-90. Campbell Capital Management is located in Florida and incorporated under Florida law. *See* ECF No. 41-4 at ¶2. Its clients are presumably residents of Florida (based on the fact that Campbell Capital Management is located in Miami). Thus, the assignments at bar are subject to Florida law. *See In re Kingate Mgmt. Ltd. Litig.*, No. 09-CV-5386 (DAB), 2016 U.S. Dist. LEXIS 129882, at *56 (S.D.N.Y. Sep. 21, 2016) (applying a "'center of gravity' or 'groups of contacts' test to determine the law to apply to contract"). Under Florida law, an assignment needs "consideration" for it to be valid. *See Tensar Earth*, 625 F. Supp. 2d at 1246, *aff'd*, 329 Fed. Appx. 257 (11th Cir. 2009) ("[A]n assignment is considered a contract and, as such, requires consideration, or 'cause', to be valid."); *see also Pycsa Pan., S.A. v. Tensar Earth Techs., Inc.,* 625 F. Supp. 2d 1198, 1246 n.35 (S.D. Fla.

13

2008) ("[a] contract without consideration would also fail under the laws of Florida . . . .") (*citing Global Travel Mktg., Inc. v. Shea,* 908 So. 2d 392, 398 (Fla. 2005) (stating that lack of consideration is a defense to contract formation)); *Giles v. Sun Bank, N.A.,* 450 So. 2d 258, 260 (Fla. 5th DCA 1984) (stating that equitable assignments are valid if supported by consideration); *Hogan v. Supreme Camp of Am. Woodmen*, 146 Fla. 413, 416, 1 So. 2d 256 (Fla. 1941) ("A valid contract requires both capacity of the parties and consideration."). Having assigned their interests to Campbell Capital Management for no "consideration" (as evidenced by the lack of such in the assignment agreements themselves), they are invalid under Florida law and rendered a nullity for the purposes of the lead plaintiff motion.[7]

Even if *arguendo* the assignments are valid, they do not change the fact that Campbell Capital Management did not purchase or possess any Paysafe securities during the class period. This is significant because it means that Campbell Capital Management had no interest in the litigation prior to their execution which was approximately two months ***after*** the commencement of this action on December 10, 2021. *Compare* ECF Nos. 41-2 at 17-109 (assignments dated February 4-8, 2022) *with* ECF No. 1 (complaint dated December 10, 2021). "While some courts have permitted plaintiffs to pursue claims assigned to them after litigation commenced, they

---

[7] To the extent that the assignments are subject to New York law, they would still be invalid under New York's ban on champerty. *See* N.Y. Jud. Law §489(1). According to the Court of Appeals of New York, "the statute prohibits the purchase of notes, securities, or other instruments or claims with the intent and for the primary purpose of bringing a lawsuit." *Justinian Capital SPC v. WestLB AG*, 28 N.Y.3d 160, 43 N.Y.S.3d 218, 65 N.E.3d 1253, 1254 (N.Y. 2016); *see also PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, No. 1:18-CIV-20818-GAYLES, 2018 U.S. Dist. LEXIS 189801, at *29-32 (S.D. Fla. Nov. 5, 2018) (holding assignment invalid and in violation of New York's ban against champertous assignments). Any "choice-of-law" question only further illustrates the point that the assignments would expose the class to "unique defenses" capable of side-tracking the litigation. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class.").

14

generally permit plaintiffs to do so when plaintiffs had standing on at least one other claim at the time litigation began. Since [Campbell Capital Management] did not have standing to bring any other claims as of [December 10, 2021]," Campbell Capital Management "would be subject to a unique standing defense that makes [it] unfit to adequately represent the Class." *Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.*, 2021 U.S. Dist. LEXIS 180029, at *11 (S.D.N.Y. Sep. 21, 2021) (citing *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115-16 (S.D.N.Y. 2009)).

The peculiarities of the assignments combined with the fact that they expose the class to significant "unique defenses" beg the question as to why they were entered into in the first place and for what purpose; in other words, it appears unlikely that the assignments serve any of Campbell Capital Management's "ordinary business purposes." *See PEAK6 Capital Mgmt., LLC v. BP P.L.C.*, No. MDL No. 4:10-md-2185, 2016 U.S. Dist. LEXIS 417, at *48-55 (S.D. Tex. Jan. 4, 2016) (holding assignments "inoperable" because they were "not made for ordinary business purposes"); *see c.f. Sprint Communications*, 554 U.S. at 272-73 (allowing assignments where they served legitimate business purpose and provided assignee with value in exchange for pursuing claims). Indeed, Mr. Campbell provides no explanation as to why he orchestrated the assignments from over 90 of his supposed clients, what he stands to gain from them, or what he promised these individuals in return. *See*, *e.g.*, ECF No. 41-4 (declaration from Mr. Campbell). It is entirely likely that the maneuver was done at the behest of counsel for no other reason than to increase their chances at securing the "lead" role in this action which, if that were the case, would run contrary to the PSLRA's stance against "lawyer-driven litigation."

Mr. Campbell's assignments are clearly problematic. They present a multitude of issues each of which in its own right would easily expose the class to a "unique defense." These issues include the validity of the assignments given the absence of the consideration, the decision to remit

15

all proceeds back to the assignees, the timing of the assignments relative to the commencement of the litigation, and the motives behind Mr. Campbell and/or his counsel's decision to obtain the assignments.[8] "[B]ecause the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on potential risks.' Thus, '[b]efore disqualifying a potential lead plaintiff on [the basis that he is subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed.' Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.' This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at *17 (S.D.N.Y. Sep. 16, 2020) (citations omitted).

### E.      No Proof Exists to Rebut the Statutory Presumption in Favor of Dr. Thalluri

Having the largest financial interest and satisfying the Rule 23 requirements of adequacy and typicality, Dr. Thalluri is entitled to the presumption of "most adequate plaintiff." See 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may be rebutted only upon proof by a class member that Dr. Thalluri "will not fairly and adequately protect the interests of the class" or "is subject to

---

[8] Additional issues include whether the signatories for certain assignors are even authorized to act on behalf of the assigning entity. *See*, *e.g.*, ECF No. 41-2 at 31 (assignment from Business Asia Consultants signed by Larry Kronick without any representation of authorization). Many of the assignments also contain an illegible signature. *See e.g., id.* at 19 (Nicole DiPauli-Gould), 49 (Gabriel Martin), 51 (Gavin Worsdale), 62 (Jeffrey St. George). Moreover, assignments are included from the James Campbell Trust Ira BDA and Kendall Campbell, but without any corresponding account information. *See id.* at 56, 67. *See Bhojwani v. Pistiolis*, No. 06-cv-13761-CM-NKF, 2007 U.S. Dist. LEXIS 96246, at *12 (S.D.N.Y. July 31, 2007) ("carelessness about detail" "undermines the adequacy" of a lead plaintiff movant); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC,* No. 14-cv-10020-RMB, 2015 U.S. Dist. LEXIS 38635, at *12 (S.D.N.Y. Mar. 19, 2015) (a movant's adequacy is undermined if "the Court is unable to verify its claimed losses").

16

unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 412 (S.D.N.Y. 2004)(internal quotation and citation omitted). This the competing movants cannot do. Accordingly, Dr. Thalluri should be appointed as the Lead Plaintiff.

## III.    CONCLUSION

For the foregoing reasons, Dr. Thalluri respectfully requests that the Court grant his Motion and enter an Order: (1) consolidating the Actions, (2) appointing Dr. Thalluri as Lead Plaintiff, (3) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

Dated: February 22, 2022

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (AS-8383)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Dr. Ranga Thalluri and
[Proposed] Lead Counsel for the Class*