**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA WILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>    v.<br><br>PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD,<br><br>     Defendants. | Case No. 1:21-cv-10611-AJN-KHP |
| JOHN PAUL O'BRIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>    v.<br><br>PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD,<br><br>     Defendants. | Case No. 1:22-cv-00567-AJN |

**CAMPBELL CAPITAL MANAGEMENT INC.'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD <u>PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>**

Campbell Capital Management Inc. ("CCM") submits this memorandum of law in support of its motion for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 36), and in opposition to the seven competing motions for appointment as lead plaintiff and approval of lead counsel filed by other putative class members (Dkt. Nos. 16, 19, 21, 23, 26, 30, 37).[1]

## I.    INTRODUCTION

Eight movants (including three movant groups) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The motions were filed by CCM (Dkt. No. 36); Eric C. Price, as Trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05272015, and Robert J. Viani (the "Price/Viani Group"; Dkt. No. 19); Dr. Ranga Thalluri ("Thalluri"; Dkt. No. 26); Donald Jon Lawrence ("Lawrence"; Dkt. No. 16); Alexander Soo, Richard Cavalier, and Samih Ajami (the "Soo/Cavalier/Ajami Group"; Dkt. No. 30); Nechuma Terebelo and Ryan Schick (the "Terebelo/Schick Group"; Dkt. No. 37); Adam Berry ("Berry"; Dkt. No. 23); and Kudzanai Muringi ("Muringi"; Dkt. No. 21).

Four of the eight movants—Berry, Muringi, the Terebelo/Schick Group, and Lawrence— have since withdrawn from consideration by filing notices informing the Court that they do not oppose the competing motions. *See* Dkt. Nos. 44, 45, 47, 48. Four movants remain.

The PSLRA directs courts to appoint the "most adequate plaintiff"—*i.e.* the movant "most capable of adequately representing the interests of class members"—as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA also provides a rebuttable presumption that the most adequate

---

[1] No movant objects to consolidation. As such, only appointment of lead plaintiff and approval of lead counsel are addressed herein.

plaintiff is the plaintiff or movant who, *inter alia*, has the "largest financial interest in the relief sought by the class" and satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by another movant that the presumptively most adequate plaintiff will not adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff, and no other movant is entitled to consideration.

Here, CCM has the largest financial interest of any *bona fide* movant as measured by their financial losses on their Paysafe investments:[2]

| Movant | LIFO Loss |
|---|---|
| Campbell Capital Management Inc. | $2,902,048.07 |
| *Robert J. Viani* | *$2,544,798.98* |
| *Eric C. Price, as Trustee* | *$1,273,431.55* |
| ~~Price/Viani Group Total~~ | ~~$3,818,230.52~~ |
| Dr. Ranga Thalluri | $2,078,237.94 |
| Donald Jon Lawrence | $1,304,143.26 |
| *Alexander Soo* | *$235,353.06* |
| *Samih Ajami* | *$258,581.75* |
| *Richard Cavalier* | *$183,624.25* |
| ~~Soo/Ajami/Cavalier Group Total~~ | ~~$677,559.06~~ |
| *Nechuma Terebelo* | *$203,345.68* |
| *Ryan Schick* | *$330,623.50* |
| ~~Terebelo/Schick Group Total~~ | ~~$533,969.19~~ |
| Adam Berry | $526,406.73 |
| Kudzanai Muringi | $256,580.62 |

---

[2] Figures in this chart may differ slightly from the figures in the movants' motion papers because the figures in this chart are normalized using the same 90-day average price, ending February 7, 2022, to value losses on retained shares.

While the Price/Viani Group claims a collective loss of $3.8 million, Price and Viani have no pre-litigation relationship, and their "group" is a creation of their counsel, cobbled together to construct the largest financial interest. Such groups are not permitted to aggregate their losses to leapfrog another qualified movant and are often disqualified from consideration outright on the basis that they are "inadequate" to represent the class. Even if Price or Viani were to be considered individually, CCM has a larger financial loss than either. As such, CCM has the largest financial interest.

Moreover, as demonstrated in CCM's memorandum of points and authorities in support of its lead plaintiff motion (Dkt. No. 38), CCM has made the required preliminary showing of typicality and adequacy under Rule 23. Accordingly, CCM is the presumptively most adequate plaintiff. In fact, CCM is more than merely adequate. CCM is an investment advisor firm, and Clay Campbell, the President and Chief Investment Officer of CCM is a retired Certified Public Accountant. *See* Dkt. No. 41-4 ¶ 2. CCM is a sophisticated organization, more than capable of adequately representing the class. As such, CCM is the presumptively most adequate plaintiff.

Since CCM is the presumptively most adequate plaintiff, and the presumption has not been rebutted, CCM should be appointed as lead plaintiff, and its selection of counsel should be approved.[3]

## II.     CCM IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

CCM satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, it filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 36. Second, it has made the required preliminary showing that it satisfies the

---

[3] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

requirements of Rule 23, as demonstrated in its memorandum of law in support of its lead plaintiff motion. *See* Dkt. No. 38 at 7-8. Third, as explained *infra*, CCM has the largest financial interest in the relief sought by the class.

### A. CCM Has the Largest Financial Interest

While the PSLRA does not specify a means of calculating the "largest financial interest" among movants, courts typically consider: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). Of these factors, losses suffered is the most important. *See id.* at 437. In fact, to determine which movant has the largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Tr. v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same, citing *Molex*); *Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203, 2012 WL 2025850, at \*2 (S.D.N.Y. May 31, 2012) ("The Court accordingly focuses its analysis on that factor.").[4]

The preferred method to calculate financial losses requires class period sales to be matched to purchases on a last in, first out (LIFO) basis. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-102 (S.D.N.Y. 2005). Indeed, LIFO is the preferred accounting method because it "has been

---

[4] *See also Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at \*5 n.10 (S.D.N.Y. Dec. 21, 2007) ("The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.") (quoting *In re Bally Total Fitness Sec. Litig.*, No. 04-cv-3530, 2005 WL 627960, at \*4 (N.D. Ill. Mar. 15, 2005)); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617, 2006 WL 197036, at \*3 (S.D.N.Y. Jan. 25, 2006) (appointing a movant with the largest loss despite having a smaller interest with respect to the other three factors).

used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud." *Id.* at 101.

Here, CCM has the largest financial interest as measured by three of the four factors, including the most important factor, loss:[5]

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Campbell Capital Management Inc. | 273,440 | **269,900** | **$3,977,545.29** | **$2,902,048.07** |
| *Robert J. Viani* | *270,000* | *250,000* | *$3,494,715.64* | *$2,544,798.98* |
| *Eric C. Price, as Trustee* | *422,210* | *0* | *$1,273,431.55* | *$1,273,431.55* |
| ~~Viani/Price Group Total~~ | ~~692,210~~ | ~~250,000~~ | ~~$4,768,147.19~~ | ~~$3,818,230.52~~ |
| Dr. Ranga Thalluri | 363,974 | 255,174 | $3,047,814.09 | $2,078,237.94 |
| Donald Jon Lawrence | 137,980 | 133,480 | $1,811,322.77 | $1,304,143.26 |
| *Alexander Soo* | *32,000* | *32,000* | *$358,621.53* | *$235,353.06* |
| *Samih Ajami* | *7* | *1* | *$258,585.55* | *$258,581.75* |
| *Richard Cavalier* | *19,286* | *19,286* | *$256,974.89* | *$183,624.25* |
| ~~Soo/Ajami/Cavalier Group Total~~ | ~~51,293~~ | ~~51,287~~ | ~~$874,181.96~~ | ~~$677,559.06~~ |
| *Nechuma Terebelo* | *17,196* | *17,196* | *$268,684.75* | *$203,345.68* |
| *Ryan Schick* | *491,859* | *32,000* | *$470,642.84* | *$330,623.50* |
| ~~Terebelo/Schick Group Total~~ | ~~509,055~~ | ~~49,196~~ | ~~$739,327.59~~ | ~~$533,969.19~~ |
| Adam Berry | **781,841** | 109,672 | $983,702.43 | $526,406.73 |
| Kudzanai Muringi | 8,000 | 0 | $301,327.62 | $256,580.62 |

The only factor that CCM does not have the largest financial interest under—gross shares purchased—is widely considered the least important factor because it includes shares that were purchased and sold before the fraud was revealed. *See, e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011) ("the [gross] number of shares purchased . . . is the least important" factor). Accordingly, CCM has the largest financial interest.[6] Since CCM also filed a

---

[5] Figures in this chart may differ slightly from the figures in the movants' motion papers because the figures in this chart are normalized using the same 90-day average price, ending February 7, 2022, to value losses on retained shares.

[6] Any attempt by a competing movant to switch to a more favorable loss calculation methodology in their opposition memoranda should be rejected. *See Lucas v. United States Oil Fund, LP*, No.

timely motion, and satisfies the requirements of Rule 23, it is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**B.      The Three Movant Groups Cannot Aggregate the Financial Interests of Their Members**

The Court should reject any request by the three movant groups to aggregate the financial interests of their members because the groups are composed of members with no pre-existing relationship and were cobbled together by their counsel. *See* Dkt. No. 22-3 (Joint Declaration of the Price/Viani Group, not identifying a pre-litigation relationship); Dkt. No. 35-5 (Joint Declaration of the Soo/Cavalier/Ajami Group, not identifying a pre-litigation relationship); Dkt. No. 40-3 (Joint Declaration of the Terebelo/Schick Group, not identifying a pre-litigation relationship).

Courts routinely deny such groups' requests to aggregate losses to leapfrog over other more qualified lead plaintiff candidates. *See In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (declining to aggregate a group's losses because "[n]othing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible 'financial interest' figure") (citation omitted).

In fact, some courts disqualify such groups from the lead plaintiff contest entirely, without regard for the individual members' losses, on the basis that they are lawyer-driven and would be

---

20-cv-4740, 2020 WL 5549719, at *4 (S.D.N.Y. Sept. 16, 2020) (rejecting a movants' attempt to "change[] its approach only after learning that [a competing movant's] losses exceeded its own").

inadequate class representatives. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If . . . a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."); *Cohen v. Luckin Coffee Inc.*, No. 20-cv-01293, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (rejecting a "random assemblage of unlike individuals" that "had no pre-existing relationship" and "did not even know of one another before counsel introduced them"); *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) ("A proposed plaintiff group cannot be appointed lead plaintiff if it was assembled as makeshift by attorneys to claim the greatest financial interest in the litigation."); *Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021) (disqualifying a group of two even when "each of them ha[d] a larger loss than the other movants" because "at the time they decided to form the group and submit their application . . . they had no idea who the other movants would be or the size of their losses").

For these reasons, the Price/Viani Group, Soo/Cavalier/Ajami Group, and Terebelo/Schick Group, should not be permitted to aggregate their losses to leapfrog CCM.

## III. THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *see also Murphy v. JBS S.A.*, No. 17-cv-

3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of interest or a defense." *Constance*, 223 F.R.D. at 324-25; *Vladimir*, 2007 WL 4526532, at *10 (same).

No proof has been or can be presented that CCM would be inadequate or subject to unique defenses. To the contrary, CCM is an investment advisor firm, led by a former Certified Public Accountant. *See* Dkt. No. 41-4 ¶ 2. CCM is well-equipped to represent the interests of the class.

While other competing movants may challenge CCM's adequacy on the basis that CCM's clients assigned their legal claims to CCM, this argument in meritless as assignments are common and "[c]ourts . . . have allowed investment advisors to serve as lead plaintiffs when their clients assigned legal title to the investment advisors before the investment advisors filed their motions for appointment as lead plaintiff." *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *7 (N.D. Ill. June 26, 2018) (appointing an investment advisor with "over 200 assignments" as lead plaintiff) (emphasis omitted, collecting cases). As the Second Circuit has held, "an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'" *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008).

Since no competing movant can present proof rebutting the presumption that CCM is the most adequate plaintiff, CCM should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

**IV. CCM'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Accordingly, CCM's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel."). Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to effectively conduct this litigation. *See* Dkt. No. 41-5 (Glancy Prongay & Murray LLP firm résumé). The firm has decades of experience successfully representing injured investors. *See id.* By approving CCM's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, CCM's selection of lead counsel for the class should be approved. *See Hung v. iDreamSky Tech. Ltd.*, No. 15-cv-2514, 2016 WL 299034, at *6 (S.D.N.Y. Jan. 25, 2016) (approving Glancy Prongay & Murray LLP as lead counsel).

**V. CONCLUSION**

For the foregoing reasons, CCM respectfully requests that the Court grant its motion and enter an Order: (1) consolidating the related actions, (2) appointing CCM as lead plaintiff; (3) approving CCM's selection of Glancy Prongay & Murray LLP  as lead counsel for the class; and (4) denying the competing motions.

Respectfully submitted,

DATED: February 22, 2022 **GLANCY PRONGAY & MURRAY LLP**

By: _/s/ Gregory B. Linkh_
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Campbell
Capital Management Inc. and Proposed Lead
Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

## PROOF OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On February 22, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 22, 2022, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh