**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA WILEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD,<br><br>Defendants. | Case No. 1:21-cv-10611-AJN-KHP |
| JOHN PAUL O'BRIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD,<br><br>Defendants. | Case No. 1:22-cv-00567-AJN-KHP |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF ROBERT J. VIANI AND ERIC C. PRICE, AS TRUSTEE FOR THE ERIC C. PRICE & KRISTEN B. HENNIG-PRICE REV. LIVING TRUST UA 05/27/2015, FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS <u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

## **TABLE OF CONTENTS**

**Page**

I.    MR. VIANI AND MR. PRICE ARE A PROPER GROUP UNDER THE PSLRA ...........1

II.    ALL OF MR. PRICE'S LOSSES ARE RECOVERABLE UNDER *DURA*.......................7

III.    CONCLUSION........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chauhan v. Intercept Pharms.*,
   No. 21-cv-00036 (LJL),
   2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...............................................................................6

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
   Nos. 20-cv-9132 (AJN), *et al.*,
   2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)..............................................................................9, 10

*Cohen v. Luckin Coffee Inc.*,
   No. 1:20-cv-01293-LJL,
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) ....................................................................2, 5, 6

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER),
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)...............................................................................9

*Crass v. Yalla Grp. Ltd.*,
   No. 21 Civ. 6854 (PAE),
   2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021)..............................................................................4

*Cushman v. Fortress Biotech, Inc.*,
   No. 20-CV-5767(KAM)(RLM),
   2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021) .......................................................................4, 5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)........................................................................................................7, 8, 9, 10

*Garnett v. RLX Tech. Inc.*,
   No. 21 Civ. 5125 (PAE),
   2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021)..........................................................................4

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011).......................................................................................6

*Jakobsen v. Aphria, Inc.*,
   No. 18 Civ. 11376 (GBD),
   2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019). ........................................................................6

*Juliar v. Sunopta Inc.*,
   Nos. 08 Civ. 933 (PAC), *et al.*,
   2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ..........................................................................8

*Lavin v. Virgin Galactic Holdings, Inc.*,
  No. 21-CV-3070 (ARR) (TAM),
  2021 WL 5409798 (E.D.N.Y. Sept. 17, 2021) ...........................................................................4

*Maliarov v. Eros Int'l PLC,*
  Nos. 15-CV-8956 (AJN), *et al.*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)....................................................................7, 8, 9

*Mersho v. U.S. Dist. Ct. for the D. of Ariz.*,
  6 F.4th 891 (9th Cir. 2021) ...............................................................................3, 4, 6, 7

*Omdahl v. Farfetch Ltd.*,
  No. 19-cv-8657 (AJN),
  2020 WL 3072291 (S.D.N.Y. June 10, 2020) ....................................................................1, 5

*Springer v. Code Rebel Corp.*,
  No. 16-cv-3492 (AJN),
  2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) ............................................................................5

*Subramanian v. Watford*,
  No. 20-cv-02652-CMA-STV,
  2021 WL 1697147 (D. Colo. Apr. 29, 2021)..........................................................................3

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).........................................................................1, 2, 4, 5

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..........................................................................................1, 3

Mr. Viani and Mr. Price—who suffered losses of more than $3.8 million from their Class Period investments in Paysafe and FTAC securities—are entitled to appointment under the PSLRA because they possess the largest financial interest in the litigation and are adequate and typical in all respects. *See* ECF Nos. 20 (Opening Brief) & 49 (Response Brief).[1]

Faced with this statutorily required result, two movants with significantly smaller losses— Campbell and Dr. Ranga Thalluri ("Dr. Thalluri")—have lobbed speculative arguments against Mr. Viani and Mr. Price that fall far short of the "proof" required by the PSLRA to rebut Mr. Viani and Mr. Price's status as the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Omdahl v. Farfetch Ltd.*, No. 19-cv-8657 (AJN), 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (Nathan, J.) (same). Dr. Thalluri subsequently withdrew his motion and is no longer seeking appointment as lead plaintiff. *See* ECF No. 53. Thus, only Campbell—which is plagued by unique defenses requiring its disqualification, *see* ECF No. 49 at 8-12—continues to contest Mr. Viani and Mr. Price's Motion.

## I.    MR. VIANI AND MR. PRICE ARE A PROPER GROUP UNDER THE PSLRA

Mr. Viani and Mr. Price are a proper lead plaintiff group under the PSLRA and—through their Joint Declaration (ECF No. 22-3)—have submitted clear evidence of their ability to direct this litigation together. Nothing in the PSLRA requires a group to have a "pre-existing" relationship if the evidence before the court establishes the group's ability to effectively manage the litigation. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (noting that "[t]he majority of courts . . . permit[] unrelated investors to join

---

[1]    Unless otherwise indicated, all references to "ECF No. __" are to docket entries in the first-filed *Wiley* action, all capitalized terms are defined in Mr. Viani and Mr. Price's Motion, Opening Brief, and Response Brief, *see* ECF Nos. 19, 20, & 49, all emphasis is added, and all internal citations and quotation marks are omitted.

together as a group seeking lead-plaintiff status" if the group members "will be able to function cohesively and to effectively manage the litigation"); *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (appointing group of investors who lacked a pre-existing relationship where they provided evidence of their ability to manage the litigation).  Here, the Joint Declaration establishes that before they sought appointment as lead plaintiff, Mr. Viani and Mr. Price personally discussed this litigation and their duties as lead plaintiff, which include acting as fiduciaries for "all class members."  ECF No. 22-3, ¶¶ 2-3, 6.  In the Joint Declaration, they also acknowledged their obligation to stay informed about this litigation and to oversee counsel.  *Id.* ¶¶ 2-3.  Mr. Viani and Mr. Price will fulfill their obligations by "consulting with each other . . . with and without counsel as needed" and "have exchanged contact information" to facilitate their direct communication.  *Id.* ¶ 8.  Mr. Viani and Mr. Price further explained that they chose to move jointly as a group (even though they were under no obligation to seek appointment either individually or as a group) and chose Kessler Topaz to serve as lead counsel (even though they were aware that other firms issued press releases in connection with this litigation and that they could select any qualified counsel for the role), and provided biographical information regarding their identities, business ventures, and long histories of investing in the stock market.  *See id.* ¶¶ 2-3, 7.  These representations clearly establish that Mr. Viani and Mr. Price are jointly engaged in the litigation, fully committed to vigorously representing the class and actively participating in the prosecution of the claims, and prepared to effectively oversee the work of lead counsel.

Ignoring this evidence, Campbell—despite being an amalgamation of approximately 100 distinct individuals and entities without any evidence of a pre-existing relationship between them—speculates that Mr. Viani and Mr. Price cannot jointly serve as Lead Plaintiff based

exclusively on the absence of a pre-existing relationship. *See* ECF No. 51 at 6-7. Campbell's argument is devoid of any facts suggesting—let alone proving—that Mr. Viani and Mr. Price cannot act as a cohesive group and is belied by the evidence establishing that Mr. Viani and Mr. Price are already functioning as a cohesive group. Campbell's baseless speculation fails to meet the standard set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "***proof***" to rebut presumption). Moreover, Campbell's attempt to elevate a pre-existing relationship as the ***only*** relevant factor when evaluating a group is not supported by the plain language of the PSLRA (which does not require a group to have pre-existing relationship),[2] this District's case law, recent circuit court authority on this issue, or this Court's prior appointment of movants without a pre-existing relationship.

As the Ninth Circuit recently explained in *Mersho v. U.S. Dist. Ct. for the D. of Ariz.*, 6 F.4th 891, 901 (9th Cir. 2021), vague concerns about a group's cohesiveness, based merely on the fact that members of the group are unrelated, are insufficient under the PSLRA to rebut actual evidence submitted to the court. Specifically, the Ninth Circuit held that the district court had committed clear error in rejecting a group of unrelated class members because the district court "based its decision on 'misgivings' about a lack of cohesion or control over counsel even though the ***only evidence*** it acknowledged—the Petitioners' joint declaration—contradicts such conclusions." *Id.* As the Ninth Circuit explained, "[m]isgivings are not evidence that cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead

---

[2]    "The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff" and "the statute contains no requirement that the members of a group be related." *Subramanian v. Watford*, No. 20-cv-02652-CMA-STV, 2021 WL 1697147, at *3 (D. Colo. Apr. 29, 2021) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001)).

3

plaintiff,'" as is necessary to rebut a group's presumptive status under the PSLRA. *Id*. (second alteration in original).

*Mersho*'s holding accords with the case law of courts in this Circuit, which, when applying the analysis in *Varghese*,[3] look to how a group would function based on declarations submitted by a movant group. *See, e.g.*, *Crass v. Yalla Grp. Ltd.*, No. 21 Civ. 6854 (PAE), 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021) (appointing a group of two unrelated individuals who, in their joint declaration, had "demonstrated their ability to work cooperatively," explained their "understanding of the fiduciary obligations of Lead Plaintiffs," and affirmed their "preparedness to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated"); *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070 (ARR) (TAM), 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021) (appointing a group of two individuals with no pre-litigation relationship where the movants had "stipulated that they are willing to able to take on the responsibilities of lead plaintiff and to represent the class of investors"); *Garnett v. RLX Tech. Inc.*, No. 21 Civ. 5125 (PAE), 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) (appointing a group of three unrelated individuals—even though one had initially moved for appointment separately from the other two—because they had "since coalesced and demonstrated their ability to work cooperatively"); *Cushman v. Fortress Biotech, Inc.*, No. 20-CV-5767(KAM)(RLM), 2021 WL 1526172, at *2-3 (E.D.N.Y. Apr. 19, 2021) (appointing a group of two individuals with no pre-litigation relationship and noting that "having discussions with their counsel and a conversation with each other is sufficient involvement at this point in order to be able to adequately represent the putative class" and that "a group of diverse

---

3       *See Mersho*, 6 F.4th at 902 ("District courts often consider a pre-litigation relationship ***along with other factors***[.]").

investors who did not know each other previously could be in a better position to represent a large and diverse class of investors than one investor would be"). Similarly, this Court has also repeatedly appointed movant groups even when group members lacked a pre-litigation relationship. *See, e.g.*, *Farfetch*, 2020 WL 3072291, at *3-4 (finding that a group of two movants had "easily met" the PSLRA's requirements of adequacy and typicality); *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2017 WL 838197, at *3 (S.D.N.Y. Mar. 2, 2017) (Nathan, J.) (appointing a group of two individuals that did not claim a pre-existing relationship).

Here, the only evidence in the record—Mr. Viani and Mr. Price's Joint Declaration—clearly establishes their ability to adequately represent the class, and Campbell has not presented any evidence to the contrary.

The cases cited by Campbell do not support the argument that a pre-existing relationship is the only factor (or even necessary) when evaluating the appointment of a group. For example, in *Luckin Coffee*, the court rejected a group of ***five*** unrelated investors (represented by ***four*** law firms) not because they had no pre-litigation relationship, but because the group had provided "no plan for communicating with one another" across far-flung time zones—with group members located in ***five*** countries: the United Kingdom, the United States, Canada, China, and Saudi Arabia—and provided only limited information about the group members' identities and sophistication, as well as the group members' involvement in the litigation to date. 2020 WL 3127808, at *4. Campbell ignores that the *Luckin Coffee* court went on to appoint a ***different group consisting of two investors with no pre-litigation relationship*** on the basis of a joint declaration that closely mirrors the Joint Declaration provided by Mr. Viani and Mr. Price. *See id.* at *6 ("the Court finds that the AP7 Group satisfies the standards under *Varghese* for a grouping of plaintiffs"); *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-JPC (S.D.N.Y. Apr. 13, 2020),

5

ECF No. 67-7 (joint declaration of movant group that was ultimately appointed), attached as Exhibit A to the Reply Declaration of Naumon A. Amjed ("Amjed Reply Decl."). Specifically, the *Luckin Coffee* court noted that the second group of two investors had been "more concrete" about "their involvement in the litigation thus far"—including their participation in a group conference call—"laid out plans for cooperation in the future that include communications with each other (and not just each individually with counsel)," and made "commitments with respect to their individual participation in the litigation." *Luckin Coffee*, 2020 WL 3127808, at *5. Mr. Viani and Mr. Price have made the same representations here. *See* ECF No. 22-3; *supra* at 2.[4]

Because Mr. Viani and Mr. Price have provided specific evidence of their ability to effectively direct this litigation, and Campbell has failed to provide any evidence to the contrary, Campbell has not rebutted the presumption that Mr. Viani and Mr. Price are the most adequate plaintiff.[5] *See Mersho*, 6 F.4th at 901 ("relying only on the absence of proof . . . regarding a pre-

---

[4] Other cases cited by Campbell are similarly distinguishable. For example, in *Chauhan v. Intercept Pharmaceuticals*, the court did not reject a group simply because it consisted of unrelated members, but rather, because "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel and if necessary, restricting the role of counsel, in the best interest of efficiently prosecuting the case on behalf of the class." No. 21-cv-00036 (LJL), 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021). Specifically, the group "provide[d] no cogent explanation for why they propose[d] two different law firms, each of which is independently competent, to handle th[e] lawsuit," or why one of the group members "ma[de] reference to a third law firm but provide[d] no explanation of what role that firm is to play." *Id.* In contrast, Mr. Viani and Mr. Price, through their selection of a single, highly-experienced firm (Kessler Topaz), have demonstrated their commitment to the efficient prosecution of this case. Likewise, in *Jakobsen v. Aphria, Inc.*, the court rejected a group of *five* individuals who appeared to be "barely" involved in the litigation and who provided no information about their sophistication. No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019).

[5] Courts in the Second Circuit routinely appoint groups of unrelated investors where one member of the group possesses the single largest financial interest. *See, e.g.*, *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356-57 (S.D.N.Y. 2011) (appointing group where one member asserted the largest individual financial interest of all movants). Accordingly, because Mr. Viani possesses the largest financial interest of any individual before the Court that is also capable of satisfying the PSLRA's adequacy and typicality requirements, concerns about aggregation of financial interests are moot.

6

litigation relationship . . . does not comport with the burden-shifting process Congress established in the PSLRA").

## II.    ALL OF MR. PRICE'S LOSSES ARE RECOVERABLE UNDER *DURA*

While Dr. Thalluri has now withdrawn his motion, the following response is being provided to correct the record concerning Dr. Thalluri's (now moot) argument that "Mr. Price sold all of his shares almost two months before the ***only corrective disclosure in this case***" and, as a result, "any losses sustained in connection with his investment are causally unrelated to the alleged fraud." ECF No. 50 at 8. This argument is wrong and ignores the fact that the *O'Brien* complaint pleads ***two corrective disclosures***: the first on August 16, 2021; and the second on November 11, 2021. *See O'Brien*, ECF No. 1, ¶¶ 7-11. The *O'Brien* complaint alleges that "investors ***began to learn the truth*** about Paysafe's prospects on August 16, 2021, when the Company announced its financial results for the second quarter of 2021 and . . . attributed [its] weak guidance to challenges in the Company's Digital Wallet segment, including 'some softness in the . . . online gambling space' in European markets" and that, "[o]n this news, the price of Paysafe common stock declined $1.58 per share, or more than 15%, from a close of $10.20 per share on August 13, 2021, to close at $8.62 per share on August 16, 2021." *Id.* ¶¶ 7, 9 (second ellipsis in original); *see also Maliarov v. Eros Int'l PLC,* Nos. 15-CV-8956 (AJN), *et al*., 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (Nathan, J.) ("[D]eterminations of largest financial interest must be 'based on the facts alleged in the complaint.'"). The August 16, 2021 disclosure was also identified in the press release announcing the filing of the *O'Brien* complaint which stated that "[i]nvestors began to learn the truth about Paysafe on August 16, 2021 . . . ." Amjed Reply Decl., Ex. B (notice of pendency). The August 16, 2021 disclosure was further cited in Mr. Viani and Mr. Price's Opening Brief (*see* ECF No. 20 at 4) ***and*** in another movant's opening brief (*see* ECF No. 25 at 3).

Here, Mr. Price purchased 422,210 shares of Paysafe stock *before* August 16, 2021, *held* all 422,210 shares on August 16, 2021, and sold all 422,210 shares at a loss *after* August 16, 2021. *See* ECF Nos. 22-1 (PSLRA Certification with schedule of transactions) & 22-2 (loss chart). Thus, Mr. Price plainly suffered significant recoverable losses as the result of the revelation of Defendants' fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). As this Court has expressly recognized, "loss causation may be premised on *partial* revelations that do not uncover the complete extent of the falsity of specific prior statements . . . ." *Eros*, 2016 WL 1367246, at *3, *5 (appointing group where one of two group members suffered losses from a partial disclosure); *accord Juliar v. Sunopta Inc*., Nos. 08 Civ. 933 (PAC), *et al*., 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("Courts in this District have found that where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff.").

Accordingly, if the Court were to apply *Dura*'s loss causation principles and exclude gains and losses from Class Period shares that were not held at the time of either of the *two* pled corrective disclosures (so-called "in-and-out transactions"), Mr. Viani and Mr. Price still have the largest financial interest: [6]

---

[6] *See* Amjed Reply Decl., Ex. C (Declaration of Kenneth N. Kotz ("Kotz Decl.")).

| Movant | LIFO Losses | *Dura* Losses |
|---|---|---|
| *Mr. Viani* | *$2,545,991* | *$2,547,013* |
| *Mr. Price* | *$1,273,432* | *$1,273,432* |
| **Mr. Viani and Mr. Price** | **$3,819,422** | **$3,820,444** |
| Campbell | $2,902,512 | $2,849,156 |
| ~~Dr. Thalluri~~ | ~~$2,079,454~~ | ~~$2,117,015~~ |

Mr. Viani and Mr. Price's calculations are confirmed by Kenneth N. Kotz ("Mr. Kotz"), who was relied upon by the court in *In re Comverse Technology, Inc. Securities Litigation*—a seminal opinion analyzing *Dura*'s application to lead plaintiff movants' financial interest that has been repeatedly cited by courts in this Circuit. No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *8 (E.D.N.Y. Mar. 2, 2007) (relying on Mr. Kotz's analysis—which "clearly delineates the losses that [the movants] each suffered, if in-and-out transactions are excluded"—to assess the movants' financial interests under *Dura*); *see also City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, Nos. 20-cv-9132 (AJN), *et al.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (Nathan, J.) (citing *Comverse*); *Eros*, 2016 WL 1367246, at *3 (same).

Mr. Kotz calculated the movants' *Dura* losses by first matching all Class Period transactions under the LIFO accounting methodology and then removing all "in-and-out transactions" in which shares were purchased and sold: (1) prior to the first corrective disclosure on August 16, 2021; and (2) between the first corrective disclosure on August 16, 2021, and the second corrective disclosure on November 11, 2021. *See* Kotz Decl., ¶¶ 2-3. As a result, the only transactions included in the *Dura* losses are Class Period purchases that were held across at least one of the two pled corrective disclosures. This exact approach has been relied upon by numerous courts—including this Court—when calculating *Dura* losses at the lead plaintiff stage. *See, e.g.*, *Citigroup*, 2021 WL 396343, at *5 (relying upon movant's *Dura* loss calculations that excluded

9

gains and losses before first corrective disclosure and between the first and second corrective disclosures); *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc.*, No. 1:20-cv-09132-AJN (S.D.N.Y. Jan. 12, 2021), ECF No. 50-2 (movant's *Dura* loss calculations in *Citigroup*), attached as Exhibit D to Amjed Reply Decl.  Mr. Kotz's analysis confirms that Mr. Price's losses are recoverable under *Dura.*

Dr. Thalluri's assertions regarding Mr. Price's recoverable losses are without any basis in reality and are devoid of the "proof" required by the PSLRA.  In any case, Dr. Thalluri's withdrawal of his motion, *see* ECF No. 53, moots this argument.

## III.   CONCLUSION

For the reasons set forth above, Mr. Viani and Mr. Price respectfully request that the Court: (1) appoint Mr. Viani and Mr. Price as Lead Plaintiff; (2) approve their selection of Kessler Topaz as Lead Counsel for the class; and (3) deny the competing motions.

Dated:  March 1, 2022

Respectfully submitted,

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*S/ Naumon A. Amjed*
Naumon A. Amjed
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Robert J. Viani and Eric C. Price, as trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05/27/2015, and Proposed Lead Counsel for the Class*

10