# EXHIBIT A

**JOINT DECLARATION OF RICHARD GRÖTTHEIM AND OSEY MCGEE JR. IN
SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN AND LOUISIANA SHERIFFS'
PENSION & RELIEF FUND FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

We, Richard Gröttheim and Osey McGee Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1.      We respectfully submit this Joint Declaration in support of Sjunde AP-Fonden ("AP7") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs")'s motion for appointment as Lead Plaintiff in the securities class action litigation against Luckin Coffee Inc. (the "Company" or "Luckin Coffee") and other defendants, including certain of the Company's officers, directors, and underwriters.  We are informed of and understand the requirements and duties of the Lead Plaintiff imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the selection and retention of counsel and overseeing the prosecution of the Luckin Coffee litigation.  We each have personal knowledge regarding the facts set forth in this Joint Declaration relating to the institution with which we are associated.

2.      I, Richard Gröttheim, am the Chief Executive Officer of AP7, and am authorized to make this declaration on behalf of AP7.  Headquartered in Sweden, AP7 began investing in 2000 as part of Sweden's national pension system.  As of February 28, 2020, AP7 managed approximately $60 billion in assets on behalf of more than three million Swedish pension savers. As set forth in the motion for appointment as Lead Plaintiff and supporting papers, AP7 incurred substantial losses on its investments in Luckin Coffee securities.

3.      AP7 is a sophisticated institutional investor that understands, appreciates, and accepts the duties and responsibilities with which a lead plaintiff is charged under the PSLRA. AP7's familiarity with the Private Securities Litigation Reform Act of 1995 ("PSLRA")'s

requirements is informed by, among other things, its role serving as lead plaintiff or co-lead plaintiff in: *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery with AP7 serving as a co-lead plaintiff with other institutional investors, and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check LLP ("Kessler Topaz") serving as co-lead counsel); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp., et al.*, No. 9:14-cv-81057 (S.D. Fla.) ($56 million recovery with AP7 serving as lead plaintiff, and Kessler Topaz serving as lead counsel); *Lou. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc., et al.*, No. 2:11-cv-00289-WKS (D. Vt.) ($36.5 million recovery with AP7 serving as a co-lead plaintiff with other institutional investors, and Bernstein Litowitz and Kessler Topaz serving as co-lead counsel); *In re Johnson & Johnson Sec. Litig.*, No. 3:10-cv-04841 (D.N.J.) ($23 million recovery with AP7 serving as lead plaintiff, and Kessler Topaz serving as lead counsel); *Union Asset Management Holding AG and Sjunde AP-Fonden v. The Kraft Heinz Company, et al.*, No. 19-cv-01339 (N.D. Ill.) (with AP7 currently serving as a co-lead plaintiff with another institutional investor, and Bernstein Litowitz and Kessler Topaz serving as co-lead counsel); *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc., et al.*, No. 18-cv-12084 (S.D.N.Y.) (with AP7 currently serving as lead plaintiff, and Kessler Topaz serving as lead counsel); and *Sjunde AP-Fonden, et al. v. General Electric Co.*, et al., No. 17-cv-08457 (S.D.N.Y.) (with AP7 currently serving as lead plaintiff, and Kessler Topaz serving as lead counsel). Representatives of AP7 have been deposed in class action lawsuits and AP7 has been certified as a class representative in a number of cases under the PSLRA. AP7 believes its experience overseeing class actions lawsuits under the federal securities laws and directing the two law firms it is proposing as lead counsel here—Kessler Topaz and Bernstein Litowitz—will be a significant benefit to the class.

4.      I, Osey McGee Jr., am the Executive Director of Louisiana Sheriffs, and am authorized to make this Joint Declaration on its behalf.  Based in Baton Rouge, Louisiana, Louisiana Sheriffs is a public pension fund that provides pension and other benefits for sheriffs, deputy sheriffs, and tax collectors in the State of Louisiana.  Louisiana Sheriffs is responsible for the retirement income of these employees and their beneficiaries.  Louisiana Sheriffs manages approximately $4 billion in assets for the benefit of its approximately 20,000 active and retired participants. As set forth in the motion for appointment as Lead Plaintiff and supporting papers, Louisiana Sheriffs incurred substantial losses on its investments in Luckin Coffee securities.

5.      Louisiana Sheriffs is a sophisticated institutional investor that understands, appreciates, and accepts the duties and responsibilities with which a lead plaintiff is charged under the PSLRA.  Louisiana Sheriffs' familiarity with the PSLRA's requirements is informed by, among other things, its role serving as lead plaintiff or co-lead plaintiff in: *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (S.D.N.Y.) ($730 million recovery with Louisiana Sheriffs serving as a co-lead plaintiff with other institutional investors, Bernstein Litowitz serving as lead counsel, and Kessler Topaz serving as additional counsel); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (N.D. Cal.) ($627 million recovery with Louisiana Sheriffs serving as a co-lead plaintiff with other institutional investors, and Bernstein Litowitz and Kessler Topaz serving as co-lead counsel); *Louisiana Sheriffs' Pension and Relief Fund v. Merrill Lynch & Co.*, No. 08-cv-9063 (S.D.N.Y.) ($150 million recovery with Louisiana Sheriffs serving as a co-lead plaintiff with another institutional investor, and Bernstein Litowitz serving as lead counsel); *In re Symbol Technologies, Inc. Securities Litigation*, No. 02-cv-1383 (E.D.N.Y.) ($139 million recovery with Louisiana Sheriffs serving as a co-lead plaintiff with other institutional investors, and Bernstein Litowitz serving as lead counsel); *In re Wells Fargo Mortgage-Backed*

*Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.) ($125 million recovery with Louisiana Sheriffs serving as a co-lead plaintiff with other institutional investors, and Bernstein Litowitz serving as lead counsel); *Tung v. Bristol-Myers Squibb Co., et al.*, No. 18-cv-01611 (S.D.N.Y.) (with Louisiana Sheriffs currently serving as a co-lead plaintiff with another institutional investor, and Bernstein Litowitz serving as lead counsel); and *In re Evoqua Water Technologies Corp. Securities Litigation*, No. 18-cv-10320 (S.D.N.Y.) (with Louisiana Sheriffs currently serving as a co-lead plaintiff with another institutional investor, and Bernstein Litowitz serving as co-lead counsel). Representatives of Louisiana Sheriffs have been deposed in shareholder litigation and Louisiana Sheriffs has been certified as a class representative in a number of cases under the PSLRA. Louisiana Sheriffs believes its experience overseeing class actions lawsuits under the federal securities laws and directing the two law firms it is proposing as lead counsel here—Kessler Topaz and Bernstein Litowitz—will be a significant benefit to the class.

6.      AP7 and Louisiana Sheriffs are strongly motivated to recover the significant losses that we and the class suffered as a result of defendants' violations of the federal securities laws. AP7 and Louisiana Sheriffs's principal goal in seeking to serve as Lead Plaintiff in this case is to achieve the best possible recovery for the class from all culpable parties.  We believe that the prosecution of this international fraud with multiple sophisticated defendants should be entrusted to experienced institutional investors that have a significant financial interest in the claims against defendants and are committed to ensuring the litigation is litigated as zealously and efficiently as possible, in accordance with their duties under the PSLRA.

7.      Accordingly, AP7 and Louisiana Sheriffs hereby reaffirm our obligation to satisfying the fiduciary obligations that we will assume if appointed Lead Plaintiff, including by conferring with each other and with our counsel regarding litigation strategy and other matters,

attending court proceedings, depositions, any settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents. Through these and other measures, AP7 and Louisiana Sheriffs will ensure that the Luckin Coffee securities litigation will be vigorously prosecuted consistent with the Lead Plaintiff's obligations under the PSLRA and in the best interests of the class, and will seek to obtain the greatest possible recovery for the class.

8. AP7 and Louisiana Sheriffs each determined that they could maximize the class's recovery by pooling their respective resources and experience by jointly seeking appointment as Lead Plaintiff. After reviewing the allegations pleaded in the complaint, and consulting with their respective counsel, AP7 and Louisiana Sheriffs each independently determined to seek joint appointment as Lead Plaintiff, and subsequently approved the filing of a joint motion seeking their appointment as Lead Plaintiff.

9. In exploring their potential leadership of this case, AP7 and Louisiana Sheriffs expressed an interest in working with other sophisticated institutional investors in seeking joint Lead Plaintiff appointment. Further, based on their experience serving as lead plaintiff in securities class actions alongside other institutional investors, AP7 and Louisiana Sheriffs believe that their partnership would allow for their sharing of experiences and resources and would add substantial value to the prosecution of the Luckin Coffee litigation and benefit the class. In particular, AP7 and Louisiana Sheriffs believed that their partnership would be especially beneficial to the class given that, by working together, AP7 and Louisiana Sheriffs would have standing to bring claims under both the Securities Act of 1933 and the Securities Exchange Act of 1934. In this way, AP7 and Louisiana Sheriffs' partnership ensures that the class will be able to pursue all potential claims against all culpable parties, and will provide the broadest protection to the class.

10.     For these reasons, and after additional diligence, AP7 and Louisiana Sheriffs each independently determined that our funds could best achieve our shared goals of securing the maximum potential recovery for Luckin Coffee investors by seeking joint appointment as Lead Plaintiff, and that our partnership would ensure the class was represented by highly-qualified counsel.

11.     As part of an effort to formalize our leadership over this litigation, and to begin discussing our strategy for prosecuting this litigation as Lead Plaintiff, representatives of AP7 and Louisiana Sheriffs participated in a conference call in which we discussed our respective funds' losses arising from defendants' misconduct, the claims against the various defendants, and the procedures and protocols we would follow in jointly prosecuting the case.  During this call, AP7 and Louisiana Sheriffs also discussed: the benefits the class would receive from the leadership of committed institutions with a history of service under the PSLRA; our desire to maximize the recovery for the class; our interests in prosecuting the case in a collaborative fashion; the measures we would employ to ensure that representatives of AP7 and Louisiana Sheriffs could discuss the prosecution of this matter either with or without counsel; and ensuring that investors' claims will be efficiently and zealously prosecuted through our oversight of our proposed Lead Counsel, Bernstein Litowitz and Kessler Topaz.

12.     Louisiana Sheriffs and AP7 agree that our collective resources, combined experience leading securities class actions (including serving as co-lead plaintiffs with other institutional investors), and our ability to engage in joint decision-making will materially benefit and advance the interests of the class in this case.  Through our discussions, we determined that Louisiana Sheriffs and AP7 were like-minded, sophisticated institutional investors that each had a

substantial financial stake in this litigation and share a commitment to maximizing investors' recovery.

13.    We understand that the PSLRA and courts throughout the country, including courts in this District, have endorsed the appointment of small groups of institutional investors to serve as lead plaintiff when the group is able to establish that its members are able to oversee the litigation and their proposed lead counsel in an independent manner.  We intend to prosecute this litigation in such an independent and vigorous manner.

14.    Moreover, both AP7 and Louisiana Sheriffs are highly motivated to recover our funds' respective substantial losses and intend to share our perspectives, experiences, and resources to direct this litigation.  To this end, we have discussed with each other the importance of joint decision-making, open communication and the ability to confer, with or without counsel, via telephone and email on short notice to ensure that we are able to make timely decisions. Among other things, AP7 and Louisiana Sheriffs each have dedicated and experienced personnel who will oversee this matter and are available to confer via telephone and email to ensure that the funds are able to make timely decisions.

15.    In addition to discussing our goals for the litigation, AP7 and Louisiana Sheriffs recognized the importance of selecting qualified law firms to prosecute the litigation, and that they do so in a cost-effective manner.  With respect to our selected counsel, we believe that the class will benefit from having law firms experienced in jointly litigating securities class actions successfully serving as Lead Counsel.  We are personally familiar with the experience, resources, and successes of our proposed Lead Counsel, Bernstein Litowitz and Kessler Topaz, and are aware that they are both accomplished law firms with a history of achieving significant recoveries in

actions they have prosecuted together as co-lead counsel—including actions in which AP7 and Louisiana Sheriffs have overseen Bernstein Litowitz and Kessler Topaz service as co-lead counsel.

16. Through our oversight of our proposed Lead Counsel, we are confident that Bernstein Litowitz and Kessler Topaz will prosecute this litigation in a zealous and efficient manner. We understand that Bernstein Litowitz and Kessler Topaz have successfully prosecuted, and are currently prosecuting, several securities class actions together, and that they have a demonstrated track record of achieving some of the largest securities class action recoveries while working together efficiently and in a cost-effective manner. As noted in our respective descriptions above, several of these cases have been under the direction of AP7 or Louisiana Sheriffs.

17. To further ensure that this litigation will be prosecuted efficiently and without duplicative effort, prior to seeking appointment as Lead Plaintiff, we instructed Bernstein Litowitz and Kessler Topaz to enter into a Joint Prosecution Agreement to govern counsels' activities in this litigation. We have further instructed Bernstein Litowitz and Kessler Topaz to provide the Joint Prosecution Agreement to the Court for *in camera* review should the Court deem such a review helpful. Consistent with the Joint Prosecution Agreement, as part of our oversight of counsel, and to ensure there is no duplication of effort, we have instructed our proposed Lead Counsel to keep contemporaneous time records to be provided to us upon request. In addition, both AP7 and Louisiana Sheriffs understand the Lead Plaintiff's responsibility to ensure that any request for attorneys' fees sought by counsel are appropriate. We have taken that obligation seriously, and believe the limit on fees set forth in our respective retainer agreements with counsel properly align the interests of counsel with those of the class and are consistent with previous attorneys' fees awarded by courts in this District in cases asserting claims under the federal

securities laws. We also understand that the amount of attorneys' fees awarded to counsel in this case, if any, will be set by the Court. Ultimately, we believe the experience and success of Bernstein Litowitz and Kessler Topaz in jointly prosecuting securities class actions, combined with our oversight of these firms, will ensure that the class receives the best possible representation in this case.

**[REMAINDER INTENTIONALLY BLANK]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements relating to AP7 are true and correct to the best of my knowledge.

Executed this __11__ day of April 2020.

_____
Richard Gröttheim
Chief Executive Officer
Sjunde AP-Fonden

I declare, based on my own knowledge and information provided to me by legal counsel, that the foregoing statements relating to Louisiana Sheriffs are, to the best of my knowledge, true and correct.

Executed this 13ᵗʰ day of April 2020.

_____
Osey McGee Jr.
Executive Director
Louisiana Sheriffs' Pension & Relief Fund