**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA WILEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL (IZZY) DAWOOD, <br><br> Defendants. | Case No. 1:21-cv-10611-AJN-KHP |
| JOHN PAUL O'BRIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II, WILLIAM P. FOLEY, II, RICHARD N. MASSEY, BRYAN D. COY, PHILIP MCHUGH, and ISMAIL DAWOOD, <br><br> Defendants. | Case No. 1:22-cv-00567-AJN |

**CAMPBELL CAPITAL MANAGEMENT INC.'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS
<u>LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II.  CCM IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF ............................3

III.  THE PRICE/VIANI GROUP AND THALLURI FAIL TO REBUT THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF ....................................................4

    A.  CCM's Assignments Are Not Revocable ..................................................................5

    B.  CCM's Assignment Agreements Are Supported by Consideration .........................5

    C.  CCM Has a Financial Interest in the Claims It Was Assigned................................7

    D.  CCM's Assignment Agreements Do Not Violate New York's Anti-Champerty Statute ........................................................................................................................8

    E.  The Price/Viani Group and Thalluri's Speculation About Other Potential Issues Are Insufficient to Disqualify CCM.............................................................................9

IV.  CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

**<u>CASES</u>**

*Born v. Quad/Graphics, Inc.*,
No. 19-cv-10376, 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ....................................................8

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004)...................................................................................................4

*Doctor's Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019) ..........................................................................................................6

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11-cv-3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .................................................7, 9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011)................................................................................................4, 9

*In re Imax Sec. Litig.*,
No. 06-cv-6128, 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011)................................................8, 9

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
No. 20-cv-8585, 2021 WL 148752 (S.D.N.Y. Jan. 15, 2021)......................................................7

*Murphy v. JBS S.A.*,
No. 17-cv-3084, 2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017) .....................................................4

*Reyes v. Lincoln Auto. Fin. Servs.*,
861 F.3d 51 (2d Cir. 2017) ............................................................................................................5

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011)...................................................................................................3

*Seidel v. Noah Educ. Holdings Ltd.*,
No. 08-cv-9203, 2009 WL 700782 (S.D.N.Y. Mar. 9, 2009) ......................................................7

*Sokolow v. LJM Funds Mgmt., Ltd.*,
No. 18-cv-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018) ..................................................4

*Sprint Comm. Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) ..................................................................................................................6, 8

*Taylor v. Barnes & Noble, Inc.*,
No. 14-cv-108, 2014 WL 12769396 (S.D.N.Y. July 16, 2014) ...................................................7

*Tr. For the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*,
13 N.Y.3d 190, 918 N.E.2d 889 (2009) ................................................................................8

*Vladimir v. Bioenvision, Inc.*,
No. 07-cv-6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007)...............................................4

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) .........................................................................4, 5, 6, 8

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(iii)..............................................................................3, 4

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 71 .......................................................................6

Lead Plaintiff Movant Campbell Capital Management Inc. ("CCM") respectfully submits this memorandum of law in further support of its motion for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 36), and in reply to the opposition memoranda filed by the Price/Viani Group (Dkt. No. 49, the "P/V Opp.") and Dr. Ranga Thalluri ("Thalluri") (Dkt. No. 50, the "Thalluri Opp.").

## I.     INTRODUCTION

Of the seven other original lead plaintiff movants, only the Price/Viani Group and Thalluri oppose CCM's appointment as lead plaintiff. Notably, after filing his opposition memorandum, Thalluri withdrew his motion on February 28, 2022. *See* Dkt. No. 53. As such, only CCM and the Price/Viani Group are still seeking appointment as lead plaintiff.

CCM has the largest financial interest of any *bona fide* movant. While the Price/Viani Group claims the largest financial interest, this is only the case if its members interests are aggregated. However, aggregation is not permitted because the Price/Viani Group has not demonstrated that it is anything more than a collection of unrelated members, brought together for the purpose of aggregating their losses. Moreover, similar groups are routinely disqualified from consideration outright as "lawyer-driven" and therefore inadequate to represent the class.

Recognizing that they do not have the largest financial interest, and are not the presumptively most adequate plaintiff, the Price/Viani Group and Thalluri launch multiple spurious attacks on CCM in the hopes that one will stick, or that the sheer number of attacks will create the illusion that CCM is vulnerable to unique defenses. But each attack is more baseless than the last.

First, the Price/Viani Group claims CCM's assignments are revocable, because the assignments are silent as to revocability, and that CCM lacks standing on this basis. But the assignments are not silent. The assignments explicitly state that they are binding on the parties,

and the fact that the terms of the assignments do not permit revocation means they are not revocable.

Next, Thalluri claims CCM's assignment agreements are invalid because they are not supported by consideration. This is incorrect. The assignors transferred a legal right to CCM in exchange for CCM's promise to remit any recovery obtained as a result of the assignments.

Next, Thalluri claims that CCM has no financial interest in the claims assigned to it. This is incorrect. The Second Circuit has held that assignments transfer the injury-in-fact to the assignee, even where the assignee agrees to remit the proceeds of the assignment.

Next, Thalluri claims that the assignments violate New York's anti-champerty statute which prohibits the purchase of notes, securities, or other instruments or claims with the intent and for the primary purpose of bringing a lawsuit in certain instances. However, the assignments do not violate the champerty statute because the statute does not apply when the purpose of an assignment is the collection of a legitimate claim.

Finally, the Price/Viani Group and Thalluri throw out a collection of other one-line attacks against CCM at the end of their briefs, for example: (1) speculating without evidence that some of CCM's clients may not have understood the effects of their assignments, (2) claiming it is suspicious for an investment advisor to seek to recover its client's losses (it's not), (3) questioning without reason whether certain signatories for certain assignors are authorized to act on behalf of the assigning entities (they are), and (4) lamenting that some of the assignments "contain an illegible signature." However, such speculation and nit-picking are not "proof" that CCM is inadequate or subject to unique defenses. In fact, Thalluri's withdrawal demonstrates that he realizes that his assorted attacks are baseless.

As such, the presumption that CCM is the most adequate plaintiff has not been rebutted, and CCM should therefore be appointed as lead plaintiff.

## II.    CCM IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

As demonstrated in CCM's opposition memorandum (Dkt. No. 51, "CCM Opp."), of the remaining movants, CCM has the largest financial interest in the relief sought by the class under three of the four relevant factors, including the most important factor, loss:

| Movant | Gross Shares | Net Shares | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Campbell Capital Management Inc. | 273,440 | **269,900** | **$3,977,545.29** | **$2,902,048.07** |
| *Robert J. Viani* | *270,000* | *250,000* | *$3,494,715.64* | *$2,544,798.98* |
| *Eric C. Price, as Trustee* | ***422,210*** | *0* | *$1,273,431.55* | *$1,273,431.55* |
| ~~Viani/Price Group Total~~ | ~~692,210~~ | ~~250,000~~ | ~~$4,768,147.19~~ | ~~$3,818,230.52~~ |

Moreover, the only factor CCM does not have the largest financial interest under, gross shares purchased, "is the least important." *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011).

While the Price/Viani Group attempts to claim a larger financial interest than CCM in its opposition memorandum by aggregating the members' interests, *see* P/V Opp. at 4-5, aggregation is not permitted because the group members have no pre-litigation relationship and were grouped for the purpose of manufacturing the largest financial interest. *See* CCM Opp. at 6-7. Thalluri concurs with CCM's analysis in his opposition memorandum. *See* Thalluri Opp. at 11 ("[T]he circumstances surrounding the Viani/Price Group's formation suggests it is entirely lawyer-constructed.").

Since CCM filed a timely motion, has the largest financial interest, and made a preliminary showing of its typicality and adequacy, CCM is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**III. THE PRICE/VIANI GROUP AND THALLURI FAIL TO REBUT THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF**

Investment advisors are permitted to obtain assignments from their clients and serve as lead plaintiff. *See Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *7 (N.D. Ill. June 26, 2018); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). Because the Price/Viani Group and Thalluri cannot deny this caselaw, they focus their attention on attacking the assignment agreements between CCM and its clients. However, none of their attacks are supported by fact or law. The spurious nature of the Price/Viani Group and Thalluri's attacks is underscored by the fact that their respective counsel have repeatedly filed substantially similar assignment agreements in other actions. *See, e.g.*, Declaration of Gregory B. Linkh in Support of Campbell Capital Management Inc.'s Reply Memorandum of Law ("Linkh Reply Decl."), Exs. A, B, C, D (filed concurrently herewith).

The presumption that CCM is the most adequate plaintiff may be rebutted only upon "proof" that CCM "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) (similar); *see also Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of interest or a defense." *Constance*, 223 F.R.D. at 324-25; *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same). Neither competing movant has provided the required proof.

**A.  CCM's Assignments Are Not Revocable**

The Price/Viani Group claims that CCM's assignments "are entirely silent as to whether [CCM's] clients may revoke the assignment[s]." P/V Opp. at 10. The Price/Viani Group further argues that, if the assignments are unilaterally revocable by the assignors, then the assignments "do not confer standing" for CCM to assert its clients' claims under applicable caselaw. *Id.* To support its argument, the Price/Viani Group cites *Huff*, which held that an assignment agreement that explicitly "permit[s] the assignor to . . . terminate the plaintiff-assignee's authority to pursue the assigned claims" is insufficient to grant the assignee standing. *See* P/V Opp. at 9 (quoting *Huff*, 549 F.3d at 108).

This attack fails for the simple reason that the assignment agreements here are not revocable. *See* Dkt. No. 41-2 (Certification and Assignment Agreements). Unlike the agreements discussed in *Huff*, the assignment agreements here do not grant the assignor the right to revoke the assignment. To the contrary, the assignments explicitly state that the terms of the agreement "shall be binding upon . . . the Parties." *Id.* Moreover, it is well-established that contracts are not unilaterally revocable. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 57 (2d Cir. 2017) ("It is black-letter law that one party may not alter a bilateral contract by revoking a term without the consent of a counterparty.").[1]

**B.  CCM's Assignment Agreements Are Supported by Consideration**

Thalluri argues that assignment agreements are invalid because CCM "agrees to remit any proceeds received as a result of this assignment to the Assignor." Thalluri argues that this provision

---

[1] The Price/Viani Group's counsel has repeatedly filed assignment agreements in other actions that are "entirely silent" as to revocability. *See* Linkh Reply Decl., Exs. A, B. To CCM's counsel's knowledge, the Price/Viani Group's counsel have not claimed the assignments they filed in those actions were defective.

means the assignment agreements "were made for no 'consideration'" and are thus not valid contracts. *See* Thalluri Opp. at 13. This attack on CCM might be the most confusing of all. It appears at first that Thalluri is arguing that CCM did not receive consideration because it is obligated to return all proceeds it receives to the assignors. That position is incorrect, but understandable. However, Thalluri goes on to claim that the assignors "assigned their interests to CCM for no 'consideration'"—indicating that the *assignors* were the ones that received no consideration. *Id.* at 14. Regardless, Thalluri is incorrect, and this attack fails.

The assignment agreements here are supported by consideration. CCM received from the assignors a legal right to pursue the claims in this action. In exchange, the assignors received from CCM a promise (and obligation) to remit any proceeds CCM obtains to the assignors. "A fundamental tenet of the law of consideration is that '[c]onsideration may consist of a performance or of a return promise.'" *See Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 253 (2d Cir. 2019) (citing Restatement (Second) of Contracts § 71) (emphasis omitted). "There is consideration for a contract if the promisee, being induced by the agreement, does ***anything*** legal that he or she is not bound to do." *Id.* (citation omitted, emphasis added). The assignors assigned a legal claim which they were "not bound to do," and in exchange CCM promised to remit future proceeds, which it was "not bound to do." *Id.* As such, the assignment agreements are supported by consideration.

Thalluri does not cite to any authority holding that assignment agreements of this type are not valid contracts. This is likely because the Supreme Court and Second Circuit have endorsed these types of assignment agreements as valid contracts. *See Huff*, 549 F.3d at 105 ("[T]he Supreme Court held in *Sprint Communications Co., L.P. v. APCC Servs., Inc.* [554 U.S. 269 (2008)] that an assignee who holds legal title to an injured party's claim has constitutional standing to pursue that claim, even if the assignee has agreed to remit all proceeds from the litigation to the

assignor."). As such, the assignment agreements here are supported by consideration, and Thalluri's attack fails.[2]

### C. CCM Has a Financial Interest in the Claims It Was Assigned

Thalluri argues that CCM does not have a financial interest in this action "because it did not purchase or own any Paysafe securities at any point in the class period" and that the assignment agreements do not confer a financial interest on CCM because CCM agreed to remit any proceeds to the assignors. *See* Thalluri Opp. at 12-13. Thalluri again fails to cite any authority supporting this assertion.

Thalluri is incorrect. District courts routinely allow assignees to assert a financial interest in the assigned claims. *See, e.g.*, *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658, 2011 WL 4597553, at *4 (S.D.N.Y. Oct. 4, 2011); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-8585, 2021 WL 148752, at *4 (S.D.N.Y. Jan. 15, 2021) ("[c]laiming the next greatest financial interest is Chang Pin Lin, who reports losses of $344,719.21," including losses from assigned claims); *Taylor v. Barnes & Noble, Inc.*, No. 14-cv-108, 2014 WL 12769396, at *6 (S.D.N.Y. July 16, 2014) ("Briskin . . . suffered a loss of $34,787 as a result of the alleged fraud," including losses from assigned claims). In analogous circumstances, courts allow trustees to assert a financial interest in the claims of a trust even though a trustee is not the beneficiary of the trust. *See, e.g.*, *Seidel v. Noah Educ. Holdings Ltd.*, No. 08-cv-9203, 2009 WL 700782, at *1, *2, *5 (S.D.N.Y. Mar. 9, 2009) (appointing "Stephen Atkins, as trustee of the Jae Family Lifetime Benefit Trust" as lead plaintiff, holding "Atkins has the largest financial interest" based on trust losses). Courts also credit the purported financial interests of pension funds even though pensioners (not the funds

---

[2] Thalluri's counsel has repeatedly filed assignment agreements in other actions that agree to remit all proceeds to the assignor. *See* Linkh Reply Decl., Exs. C, D. To CCM's counsel's knowledge, Thalluri's counsel have not claimed the assignments they filed in those actions were defective.

themselves) are the ultimate beneficiaries of the funds' assets. *See Born v. Quad/Graphics, Inc.*, No. 19-cv-10376, 2020 WL 994427, at *1-*3 (S.D.N.Y. Mar. 2, 2020) (appointing the "Alaska Electrical Pension Fund" as lead plaintiff, finding the fund "has the largest financial stake in the putative class's recovery").

Discussing the Supreme Court's holding in *Sprint*, the Second Circuit has recognized that "assignees" can claim an "injury-in-fact" because "the assignment also transferred the assignor's claims for injuries" even when "they planned to remit the litigation proceeds to the assignors." *Huff*, 549 F.3d at 108 (2d Cir. 2008). Accordingly, CCM owns the claims assigned to it, and may assert the injuries (financial interest) associated with such claims as its own. The fact that CCM has agreed to remit the proceeds obtained from pursuing the assignors' claims ***in the future*** does not negate the fact that it ***currently*** possesses the financial interest in those claims. *See Sprint*, 554 U.S. at 287 ("What does it matter what the [assignees] do with the money afterward? The injuries would be redressed whether the [assignees] remit the litigation proceeds to the payphone operators, donate them to charity, or use them to build new corporate headquarters."). As such, CCM has a financial interest in the assigned claims.

### D. CCM's Assignment Agreements Do Not Violate New York's Anti-Champerty Statute

Thalluri relegates to a footnote the argument that "[t]o the extent that the assignments are subject to New York law, they would . . . be invalid under New York's ban on champerty" which "prohibits the purchase of notes, securities, or other instruments or claims with the intent and for the primary purpose of bringing a lawsuit." *See* Thalluri Opp. at 14 n.7. Thalluri is incorrect.

"[T]he champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim." *See In re Imax Sec. Litig.*, No. 06-cv-6128, 2011 WL 1487090, at *5 (S.D.N.Y. Apr. 15, 2011) (quoting *Tr. For the Certificate Holders of Merrill Lynch Mortg.*

*Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 201, 918 N.E.2d 889, 895 (2009)). The champerty statute only prohibits "the purchase of claims with the intent and for the purposes of bringing an action that the purchaser may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up in an effort to secure costs." *Id.* (internal brackets and ellipses omitted). In fact, "New York courts have consistently emphasized that the anti-champerty doctrine should be applied narrowly" and "the prohibition of champerty has always been . . . largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs." *Id*. at *4 (citation omitted). Here, CCM is pursuing legitimate claims, so New York's ban on champerty does not apply. *See also Faris*, 2011 WL 4597553, at *7 (assigning claims to an investment manager seeking appointment as lead plaintiff "is not prohibited by the New York champerty statute").

### E. The Price/Viani Group and Thalluri's Speculation About Other Potential Issues Are Insufficient to Disqualify CCM

Both competing movants, at the end of their opposition memoranda, briefly speculate as to other defenses or issues that may be unique to CCM. The Price/Viani Group claims that maybe "some or all of [CCM's] clients did not fully understand the effects of their assignments." P/V Opp. at 11. Thalluri asserts that "it appears unlikely" that the assignments serve CCM's ordinary business purposes and that CCM offers "no explanation as to why [it obtained] the assignments." Thalluri Opp. at 15.

This is just unsupported speculation that falls far short of the "proof" required to rebut the presumption that CCM is the most adequate plaintiff. *See Foley*, 272 F.R.D. at 133. The Price/Viani Group provides no evidence that any client of CCM did not understand the effect of their assignments. And there is no mystery as to why CCM obtained the assignments and is pursuing this case. CCM is in the business of managing its clients' investments and made the

investment decisions for its clients relevant to this action. CCM is a victim of the fraud alleged in this action and is seeking a recovery of its losses.[3]

*    *    *

Accordingly, the Price/Viani Group and Thalluri have failed to rebut the presumption that CCM is the most adequate plaintiff.

## IV. CONCLUSION

For the foregoing reasons, CCM respectfully requests that the Court appoint it as lead plaintiff, and approve its selection of Glancy Prongay & Murray LLP as lead counsel for the class.

Respectfully submitted,

DATED: March 1, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: _/s/ Gregory B. Linkh_
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

---

[3] Thalluri also raises other purported issues in a footnote at the end of his opposition memorandum, which can be easily dismissed. *See* Thalluri Opp. at 16 n.8. Thalluri claims the "[a]dditional issues include whether the signatories for certain assignors are even authorized to act on behalf of the assigning entity"—they are—"[m]any of the assignments also contain an illegible signature"— this is not a basis to disqualify a movant—"and assignments are included from the James Campbell Trust Ira BDA and Kendall Campbell, but without any corresponding account information"—the James Campbell Trust Ira BDA account is included and labeled "James Campbell Trust Account 2" in CCM's financial interest analysis. *See id.* While Kendall Campbell's losses were mistakenly excluded from CCM's analysis, they amount to $3,820.73, and would increase CCM's losses by that amount if included.

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Campbell
Capital Management Inc. and Proposed Lead
Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On March 1, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 1, 2022, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh