**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

IN RE PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQQUISITION CORP. II SECURITIES LITIGATION,

_____

Master File No.
1:21-CV-10611-ER-KHP

OPINION AND ORDER

**KATHARINE H. PARKER, United States Magistrate Judge:**

On February 8, 2022, seven motions were filed by movants seeking to (1) consolidate the related actions; (2) appoint Lead Plaintiff, and (3) approve Lead Counsel. (ECF Nos. 16[1], 19, 21[2], 23[3], 30[4], 36, 37[5].) Of the seven movants seeking to be made Lead Plaintiff only two remain to be considered – Robert J. Viani and Eric C. Price Group (hereafter, "Viani/ Price Group") and Campbell Capital Management ("CCM"). Specifically, class members Robert J. Viani ("Viani") and Eric C. Price ("Price") moved this Court to appoint Viani and Price as Lead Plaintiff and approve Kessler Topaz Meltzer & Check, LLP as Lead Counsel for the class. (ECF No. 19.) Alternatively, CCM moves this Court to appoint CCM as Lead Plaintiff and approve Glancy Prongay & Murray LLP as Lead Counsel. (ECF No.

---

[1] By motion dated February 8, 2022, movant Donald Jon Lawrence moved the court to (1) consolidate the related actions, (2) appoint movant to serve as Lead Plaintiff, and (3) approve Movant's selection of the Rosen Law Firm, P.A. as Lead Counsel for the litigation. (ECF No. 16.)

[2] On February 8, 2022, Kudzanai Muringi moved the court to (1) consolidate the related actions, (2) appoint Muringi as Lead Plaintiff, and (3) approve Faruqi & Faruqi, LLP as Lead Counsel for the class. (ECF No. 21.)

[3] On February 8, 2022, Adam Berry moved the court to (1) consolidate the related actions, (2) appoint Berry as lead plaintiff, and (3) approve Johnson Fistel, LLP as lead counsel for the proposed class. (ECF No. 23.)

[4] On February 8, 2022, Richard Cavalier, Samih Ajami, and Alexander Soo moved the court to (1) consolidate the above-captioned related cases, (2) appoint Movants as Lead Plaintiffs, and (3) approve Bernstein Liebhard LLP as Lead Counsel for the litigation. (ECF No. 30.)

[5] Nechuma Terebelo and Ryan Schick moved this Court to (1) consolidate the above-captioned actions; (2) appoint them as Lead Plaintiff; and (3) approve Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel. (ECF No. 37.)

1

36.) The Viani/ Price Group also submitted further support for their Motion. (ECF No. 49.) Additionally, all movants request that the related cases (*Wiley*, 21-CV-10611; and *O'Brien*, 22-CV-567) be consolidated.

On May 5, 2022, the Court granted the request for consolidation with the amended caption as represented above.

The Court now appoints Viani and Price as Lead Plaintiff and Kessler Topaz Meltzer & Check, LLP as lead counsel. (ECF No. 66.)

## FACTS ALLEGED IN THE COMPLAINTS

The above-captioned actions were commenced as purported securities class actions on behalf of a class of persons and entities that purchased or otherwise acquired Paysafe and/or FTAC securities between December 7, 2020, and November 10, 2021, against Paysafe Limited ("Paysafe" or the "Company") f/k/a Foley Trasimene Acquisition Corp. II ("FTAC"), certain of Paysafe's executive officers and directors, and certain of FTAC's former executive officers and directors (collectively, "Defendants") under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a).

Paysafe is incorporated under the laws of Bermuda, with its principal executive offices located in Bermuda. *Wiley* Compl. at ¶ 15. Paysafe's common shares trade on the New York Stock Exchange ("NYSE") under the symbol "PSFE." *Id*. Paysafe provides end-to-end payment solutions through three primary business segments: Integrated Processing, which processes payments for merchants; Digital Wallet, which enables consumers to make digital payments for purposes such as e-commerce, online gambling, and gaming; and eCash

Solutions, which allows consumers to use cash for digital payments for purchasing prepaid digital vouchers.

FTAC was a special purpose acquisition company ("SPAC") formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination. *Id*. at ¶ 22. On December 7, 2020, FTAC announced that it and Paysafe Group Holdings Limited entered into a definitive agreement and plan of merger. *Id*. at ¶ 23. On closing of the transaction, the newly combined company was to operate as Paysafe with its shares trading under the symbol "PSFE." *Id*. The merger was completed on March 30, 2021. *Id*. at ¶ 24.

On December 7, 2020, FTAC issued a press release titled "Foley Trasimene Acquisition Corp. II and Paysafe, A Leading Global Payments Provider Focused on Digital Commerce and iGaming, Announce Merger." *Id*. at ¶ 25. The press release highlighted several aspects of Paysafe's business and touted its growth opportunities in a large addressable market. *Id*.

On May 11, 2021, Paysafe issued a press release announcing its first quarter 2021 financial results. *Id*. at ¶ 26. The press release announced, among other things, an increase in revenue of 5% and an increase in total payment volume of 8%. *Id*. The press release also reaffirmed the Company's 2021 yearly outlook. *Id*. Defendant McHugh, the Company's CEO, stated that the company was "well positioned to deliver consistent double-digit growth[.]" *Id*. On August 16, 2021, Paysafe issued a press release announcing its second quarter 2021 financial results. *Id*. at ¶ 27. The press release announced, among other

things, an increase in revenue of 13% and an increase in total payment volume of 41%. *Id*. The Company again reaffirmed its 2021 full year outlook. *Id*.

The Actions allege that Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and prospects. *Id*. at ¶ 28. Specifically, the Actions allege that Defendants failed to disclose to investors that: (1) Paysafe was being negatively impacted by gambling regulations in key European markets; (2) Paysafe was encountering performance challenges in its Digital Wallet segment; (3) new eCommerce customer agreements were being pushed back; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id*.

The full truth allegedly emerged on November 11, 2021, when, before the market opened, Paysafe issued a press release titled "Paysafe Reports Third Quarter 2021 Results." *Id*. at ¶ 29. The press release disclosed that Paysafe was revising its 2021 guidance due to "[g]ambling regulations and softness in key European markets and performance challenges impacting the Digital Wallet segment" and "[t]he modified scope and timing of new eCommerce customer agreement relative to the Company's original expectations for these agreements." *Id*. The press release disclosed that the Company would be revising its financial guidance downward for 2021. *Id*. On this news, the Company's share price fell more than 40%, on unusually heavy trading volume.

The *Wiley* Complaint alleges the November 11, 2021 was the corrective disclosure. The *O'Brien* complaint pleads two corrective disclosures: the first on August 16, 2021; and

the second on November 11, 2021. *See O'Brien*, ECF No. 1, ¶¶ 7-11. Specifically, the *O'Brien* complaint alleges that "investors *began to learn the truth* about Paysafe's prospects on August 16, 2021, when the Company announced its financial results for the second quarter of 2021 and . . . attributed [its] weak guidance to challenges in the Company's Digital Wallet segment, including 'some softness in the [ ] online gambling space' in European markets" and that, "[o]n this news, the price of Paysafe common stock declined $1.58 per share, or more than 15%, from a close of $10.20 per share on August 13, 2021, to close at $8.62 per share on August 16, 2021." *Id.* at ¶ 7.9. It asserts the full truth came out on November 11, 2021. *Id.* at 10.

## FACTS RELEVANT TO APPOINTMENT OF LEAD PLAINTIFF/COUNSEL

CCM, represented by the Los Angeles-based firm Glancy Prongay & Murray LLP ("GPM"), is an investment advisory firm located in Miami, Florida. Clay Campbell is the President and Chief Investment Officer of CCM. Campbell is a retired Certified Public Accountant. He has attested that he understands the obligations of lead plaintiff and will dutifully represent the class. (ECF No. 41-4.) Campbell himself, as well as approximately 100 of CCM's various clients, invested in Paysafe and lost money. The aggregate loss amounts to approximately $2.9 million. CCM's clients all signed assignment agreements assigning to CCM all interest they may have arising from violations of the federal securities laws in connection with their purchase or acquisition of Paysafe securities and appointing CCM as attorney-in-fact for purposes of exercising all powers relating to the causes of action asserted in this matter. CCM, as assignee, agreed to remit any proceeds received as a result of the assignment to the assignors (its clients). (*Id.*) The individual losses of CCM's clients

range from a few thousand dollars to a maximum of approximately $215,000.  (ECF No. 41-3)

GPM represents investors, consumers and employees and has prosecuted class action cases and complex litigation in federal and state courts throughout the country.  (ECF No. 41-5.)  It has offices in New York and California.  It represents that it has served as lead and co-lead counsel in securities class actions and has been recognized by the Institutional Shareholder Services unit of RiskMetrics Group as a top plaintiffs' law firm in its annual Securities Class Action Services report since 2003.  (*Id.*)  It has served as co-lead counsel in cases in this District as well.  *See, e.g., Lapin v. Goldman Sachs*, 03-cv-850; *In re Liven, Inc. Noteholders Litigation*, 99-cv-9425, *In re Lumenis, Ltd. Securities Litigation*, 02-cv-1989, and *Ree v. Procom Technologies, Inc.*, 02-cv-7613.

Viani is a resident of New York and owns forty restaurant franchise locations.  He has an associate's degree from Dutchess Community College and states he has invested in the stock market since 2005.  (ECF No. 22-3.)  Price is a resident of California who owns and manages rental properties and the investments of a family trust.  (*Id.*)  He received a bachelor's degree in finance from Pacific Union College and an MBA from Pepperdine University and has been investing in the stock market for 24 years.  (*Id.*)  Both individuals invested in Paysafe and lost money.  Viani personally suffered a loss of approximately $2.54 million and Price personally suffered a loss of approximately $1.27 million.  (ECF No. 22-2.)  They both are represented by Kessler Topaz Meltzer & Check, LLP ("KT").  They attest that prior to seeking appointment as Lead Plaintiff they participated in a joint conference call to formalize their commitment to jointly prosecuting this litigation and their duties if selected

as lead plaintiff.  They agree to make decisions jointly, taking into consideration legal advice from KT.  They state they are confident in their ability to reach joint decisions regarding litigation matters.  (ECF No. 22-3.)

KT is a litigation firm with offices in Pennsylvania and California that specializes in the prosecution of securities class actions.  (ECF No. 22-5.)  It has served as lead or co-lead counsel in various securities class actions, including in this District.  *See, e.g., In re Wachovia Preferred Securities and Bond/Notes Litigation*, 09-cv-6351, *In re Longtop Financial Tec. Ltd. Securities Litigation*, 11-cv-3658, *Operative Plasterers and Cement Masons Int'l Assoc. Local 262 Annuity Fund v. Lehman Brothers Holdings, Inc.*, 08-cv-5523, and *In re Satyam Computer Services, Ltd. Sec. Litig*ation, 09-md-02027.  (*Id.*)

## LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA") sets forth the standard for selecting a lead plaintiff in class actions brought pursuant to the Securities Exchange Act.  As an initial matter, the plaintiff who files the first action must publish notice to the class within twenty (20) days of filing the action, informing class members of (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  *See* 15 U.S.C. § 78u–4(a)(3)(A)(I).  Within sixty days after publication of the notice, any member or group of members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See id*. § 78u–4(a)(3)(A)-(B).

Next, the PSLRA provides that within ninety days after publication of notice, the Court shall consider any motion made by a purported class member and shall appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." *Id*. § 78u-4(a)(3)(B). The PSLRA directs that:

> the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I). The Court's identification of the presumptively most adequate lead plaintiff may be rebutted if class members offer evidence that the presumptive lead plaintiff: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

A Magistrate Judge may issue an order appointing lead plaintiff and approving lead counsel under Rule 72 of the Federal Rules of Civil Procedure. *See City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, 2019 WL 13167890, at *1 n.1 (E.D.N.Y. Dec. 23, 2019) (collecting cases); *Salim v. Mobile TeleSystems PJSC*, 2019 WL 11095253, at *1 n. 2 (E.D.N.Y. Sept. 11, 2019); *In re VEON Ltd. Sec. Litig.*, 2022 WL 1284547, at *1 (S.D.N.Y. Apr. 29, 2022) (Magistrate Judge Wang granting appointments of lead counsel and lead plaintiff).

a. Both Applications are Timely

The PSLRA allows any member of the class, or group of class members, to move for appointment as lead Plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u–4(a)(3)(A)(I)(II).  In this case, in connection with the filing of the first-filed action, *Wiley*, notice was published in Business Wire on December 10, 2021, alerting investors to the pendency of the action and informing them of the February 8, 2022, deadline to seek appointment as Lead Plaintiff.  *See* Amjed Decl., Ex. D, ECF No. 22. Here, both movants satisfied this first requirement by filing their respective motions to be appointed as lead plaintiff by February 8, 2022.

b. Largest Financial Interest

The PSLRA presumes that the movant or group of movants asserting the largest financial interest in the relief sought by the class and who otherwise satisfy the requirements of Rule 23 is the most adequate plaintiff.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii). Courts in the Second Circuit have primarily looked to movants' asserted losses, as calculated under the Last-In, First-Out ("LIFO" [6]) methodology, when assessing financial interest under the PSLRA.

Here, Viani and Price have the largest financial interest because they suffered combined losses of approximately $3,819,459 on a LIFO basis in connection with their Class Period transactions in Paysafe and FTAC securities.  (*See* Amjed Decl., Exs. A-B; *see also* ECF No. 49.)  Viani personally suffered a loss of approximately $2.54 million and Price personally

---

[6] LIFO is the preferred and most-widely-accepted methodology for calculating movants' losses. *See Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO").  The movants' LIFO losses are taken from their respective filings.

suffered a loss of approximately $1.27 million. In contrast, CCM has a loss of approximately $2,902,048 via assignments from 101 individuals and entities.

Though the PSLRA expressly permits a "person or group of persons" to be appointed lead plaintiff, *Id.* § 78u–4(a)(3)(b)(iii)(I), the PSLRA does not define what a "group" can or should be, nor how its "members" must be related to one another. *See In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. 95, 99 (S.D.N.Y.2005) ("[T]he [PSLRA] does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group."). Historically, district courts have been divided over whether a group of unrelated investors such as Viani and Price constitutes a "group of persons" that may be appointed lead plaintiff. *See id.*; *In re Star Gas Sec. Litig.,* 2005 WL 818617, at *4 (D. Conn. Apr. 8, 2005) (noting that some courts forbid the aggregation of unrelated plaintiffs while other courts accept a proposed group of lead plaintiffs without scrutiny).

But the majority of courts, including those in this District, have permitted unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class. *See, e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case.").

Accordingly, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's

10

members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *See, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008) (permitting proposed group whose members "submit that they have a longstanding pre-litigation relationship and a clear understanding as to consultation, information sharing, and management of the litigation"); *Reimer v. Ambac Fin. Group, Inc.,* 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (proposed group held joint conference calls to formulate strategy).

However, courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action. *See, e.g.*, *Goldberger v. PXRE Group, Ltd.,* 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (rejecting proposed group that "shares only this lawsuit in common" and suspecting the group was the result of the "type of lawyer-driven action that the PSLRA eschews"); *In re Doral Fin. Corp. Sec. Litig.,* 414 F. Supp. 2d 398, 401–02 (S.D.N.Y. 2006) (rejecting groups of unrelated investors, stating that "by allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the

11

litigation"); *In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (rejecting request to aggregate when "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA"); *In re Razorfish, Inc. Sec. Litig.,* 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (rejecting proposed group because it "is simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'").

This skepticism is consistent with core aims of the PSLRA: shifting control of the litigation from the lawyers to the investors and preventing "the manipulation by class action lawyers of the clients whom they purportedly represent." H.R. Conf. Rep. 104–369, at 31, as reprinted in 1995 U.S.C.C.A.N. 730, 730; *see also In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157–58 (S.D.N.Y. 1997) ("One of the principal legislative purposes of the [PSLRA] was to prevent lawyer-driven litigation. . . . To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.").

Judge Castel succinctly summarized the state of the law in this District as follows:

> The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may. But to enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers.

*In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (citation omitted).

In this case, Viani and Price did not have a relationship before this litigation. But, they submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions concerning this case that affect the putative class. Both individuals are business people familiar with investing and sophisticated investors. It is unclear to this Court exactly how Viani and Price each found their way to the KT firm, though the Court assumes they both saw notice of the litigation published by the KT firm and reached out to KT as a result.

CCM had a pre-existing relationship with all of its clients and they with each other via CCM. Because of the assignment of claims to CCM, there is no chance of disagreement between and among the various client – CCM as an entity is the proposed Plaintiff with the injury. As an investment advisory firm, CCM is sophisticated, as is its principal Clay Campbell. CCM has a smaller financial stake in the outcome of the litigation than Viani and Price and the assignments require CCM to relinquish proceeds from the litigation to its clients.[7]

   c. Requirements of Rule 23

The final requirement for selecting a lead plaintiff requires that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy. *See* 15 U.S.C. § 78u–

---

[7] The Court notes that this fact does not necessarily deprive CCM of standing in this matter. A valid assignment gives a plaintiff standing to pursue an assignor's claims, even if the assignee will not receive any pecuniary gain from pursuing the action and would otherwise not have standing. *Sprint Comm. Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286-287 (2008) (allowing an assignee to bring suit, even though the assignee had agreed to remit any recovery to the assignor of the legal claim); *Cordes & Co. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 102 (2d Cir.2007) ("It is indeed commonplace for an assignee to institute or continue an action of his or her assignor on an assigned claim even though he or she, apart from the assignment, is without standing, and the court, apart from the assignment, would be without power to decide the case.").

4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a part or group of parties may serve as a class representative if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). At the lead plaintiff selection stage of litigation, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *3 (S.D.N.Y. June 10, 2020).

At this stage in the litigation, a prima facie showing that the requirements of Rule 23 are met is sufficient. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23." (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007), *on reconsideration in part sub nom. In re IMAX Sec. Litig.*, 2009 WL 1905033 (S.D.N.Y. June 29, 2009)). Further, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49 (citation omitted); *see also Kuriakose v. Federal Home Loan Mortgage Co.*, 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24, 2008) ("In a motion to be appointed as lead plaintiff, a class member need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." (citation omitted)).

In evaluating the movants' adequacy, courts consider whether "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there

is no conflict between [them] and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Kuriakose*, 2008 WL 4974839, at *4.  The 'typicality' requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.  *Id.*

Viani and Price satisfy the typicality requirement because, like all other proposed class members, they seek recovery for the losses on their investments in Paysafe and FTAC securities that they incurred as a result of Defendants' misrepresentations and omissions, and further that their claims arise from the same conduct as those of the other class members.  They also satisfy the adequacy requirement of Rule 23 because their interest in aggressively pursuing claims against Defendants is aligned with the interests of other putative class members who were similarly harmed as a result of Defendants' false and misleading statements.  There does not appear to be any conflict, or potential conflict, between Viani's and Price's interests and those of the other members of the putative class and they have attested that they are fully committed to vigorously pursuing the claims on behalf of the proposed class.  Moreover, both movants submitted a Joint Declaration where they noted that they fully understand the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents, and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation.  *See* Amjed Decl., Ex. C, 8-9.  Based on the

15

memoranda and declaration submitted by movants, the Court is persuaded that Viani and Price have made a preliminary showing that they will adequately protect the interests of the class. Additionally, Viani and Price are committed to ensuring that this litigation is prosecuted in an efficient and effective manner. Both movants have participated in a joint conference call to discuss the claims against Defendants and their plans to jointly prosecute this litigation, and have arranged to communicate with each other as needed, both with and without counsel, and plan to use consensus decision making to maximize the recovery for the class. *See id*. at 6.

Accordingly, Viani and Price satisfy all three requirements of 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I): they made a motion in response to a notice; they have the largest financial interest; and made a preliminary showing that they otherwise satisfy the requirements of Rule 23. Accordingly, Viani and Price are entitled to a rebuttable presumption that they should be appointed lead plaintiff in this action. CCM has not come forward with evidence to suggest that Viani and Price could not work together in an effective manner or to otherwise rebut the presumption that they should be appointed lead Plaintiffs.

While it is true that Viani and Price had no relationship prior to this action and that their individual losses are less than CCM's loss, their aggregate loss is more. Additionally, CCM's standing could potentially be challenged if Defendants question the validity of the approximately 100 assignments of the claim. It also appears that the assignments may be revocable, meaning that CCM's financial interest could diminish during the course of the litigation. Further, discovery on the validity of the assignments and CCM's standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of

this matter.  *Cf. Plymouth County Ret. Assoc. v. Array, Inc.*, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) (denying appointment as lead plaintiff due to risk that plaintiff would be subject to unique defenses surrounding assignment of claims).

On balance, the Court finds that Viani and Price should be appointed lead Plaintiff for the reasons set forth above.

   d. Lead Counsel Selection

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(v).  Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class.

Viani and Price have selected and retained KT to serve as Lead Counsel for the class. As noted above, KT specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Amjed Decl., Ex. E.  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litig.*, No. 08-md-2058 (PKC) (S.D.N.Y. ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/ Notes Litig.,* No. 08-CV-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litig.*, No. 08-CV-5523 (LAK) (S.D.N.Y.) ($615 million recovery).  KT is also currently serving as lead or co-lead counsel in several high-profile securities class actions across the country and in this District, including: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-CV-12084 (VSB) (S.D.N.Y.) and

17

S*junde AP-Fonden v. General Electric Co.*, No. 17-CV-8457 (JMF) (S.D.N.Y.).  KT also has obtained successful verdicts from trials.  *See In re Longtop Financial Technologies Ltd. Securities Litig.*, No. 11-CV-3658 (SAS) (S.D.N.Y.). Thus, it is well qualified to represent the class.

Thus, the Court appoints KT as lead counsel.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motion at ECF No. 19 of Viani and Price to be appointed Lead Plaintiffs and to have their choice of counsel approved as lead counsel.  All other motions at ECF Nos. 16, 21, 23, 30, 36, and 37 are DENIED.  The pending motions in related case *O'Brien*, 22-cv-567 at ECF Nos. 6 and 9 are also DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Amended Complaint in the consolidated action shall be due 45 days from the date of this Opinion and Order.  Defendants' Motions to Dismiss shall be due 60 days after the filing of the Amended Complaint.  Plaintiffs shall have 60 days to file an opposition to the motion.  Defendants shall have 30 days to file a reply in support of the Motions to Dismiss.

IT IS FURTHER ORDERED that discovery is stayed pending resolution of the Motions to Dismiss.

**SO ORDERED.**
Dated: May 10, 2022

KATHARINE H. PARKER
United States Magistrate Judge