**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQQUISITION CORP. II SECURITIES LITIGATION, | Master File No. 1:21-cv-10611-ER-KHP |

**CAMPBELL CAPITAL MANAGEMENT INC.'S OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE KATHARINE H. PARKER'S OPINION AND ORDER DATED MAY 10, 2022 APPOINTING LEAD PLAINTIFFS AND APPROVING LEAD COUNSEL**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     RULE 72(a) LEGAL STANDARD.................................................................... 2

III.    PROCEDURAL HISTORY.................................................................................. 3

IV.     THE PSLRA STANDARD FOR APPOINTING A LEAD PLAINTIFF AND RELATED
        CONGRESSIONAL POLICY GOALS ................................................................ 4

V.      THE ORDER MISIDENTIFIES VIANI AND PRICE AS THE PRESUMPTIVELY
        MOST ADEQUATE PLAINTIFFS BECAUSE IT IMPROPERLY ALLOWS THEM TO
        AGGREGATE THEIR FINANCIAL INTERESTS............................................ 5

        A.      The Order Begins by Accurately Summarizing the Legal Standard in this District
                Regarding Whether Group Members May Aggregate Their Losses ..................... 6

        B.      If the Standard Is Properly Applied, Viani and Price Cannot Aggregate Their
                Losses.................................................................................................... 7

        C.      Adopting the Order Would Set a Low Bar for Aggregation in this District and
                Invite a Flood of Lawyer-Driven Groupings .......................................... 11

VI.     CCM IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF........................... 11

VII.    THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF HAS
        NOT BEEN REBUTTED ................................................................................. 12

VIII.   CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

<u>CASES</u>

*Chauhan v. Intercept Pharms.*,
No. 21-cv-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...................................................... 9

*Cohen v. Luckin Coffee Inc.*,
No. 20-cv-01293, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ........................................... 6, 9

*Constance Sczesny Tr. v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................................. 12, 13

*Elstein v. Net1 UEPS Techs., Inc.*,
No. 13-cv-9100, 2014 WL 3687277 (S.D.N.Y. July 23, 2014)........................................... 5, 6, 9

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11-cv-3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011).................................................. 16

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................... 12, 13

*Fries v. N. Oil & Gas, Inc.*,
No. 16 -cv-6543, 2017 WL 1880819 (S.D.N.Y. May 8, 2017) ..................................... 6, 7, 8, 11

*Gucci Am., Inc. v. Guess?, Inc.*,
No. 09-cv-4373, 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011) ............................................................ 3

*In re CMED Sec. Litig.*,
No. 11-cv-9297, 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ..................................................... 9

*In re Donnkenny Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ................................................................................................. 5

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012)............................................................................................... 11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................................. 6

*Jakobsen v. Aphria, Inc.*,
No. 18-cv-11376, 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019)......................................... 9, 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................... 9

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019) ........................................................................... 9

*Murphy v. JBS S.A.*,
  No. 17-cv-3084, 2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017) ................................... 12

*Plymouth County Retirement Association v. Array Technologies, Inc.*,
  No. 21-cv-4390, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021)................................... 15

*Sokolow v. LJM Funds Mgmt., Ltd.*,
  No. 18-cv-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018)................................ 15

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................... 6

*Vladimir v. Bioenvision, Inc.*,
  No. 07-cv-6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ............................... 13

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)................................................................................ 14, 16

STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................ 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................... 4, 14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................. 5, 12

28 U.S.C. § 636(b)(1)(A) ................................................................................................... 3

RULES

Fed. R. Civ. P. 23.............................................................................................................. 4

Fed. R. Civ. P. 72(a) ............................................................................................. 1, 2, 3, 4

iii

Lead Plaintiff Movant Campbell Capital Management Inc. ("CCM") respectfully submits this memorandum of law pursuant to Rule 72(a) of the Federal Rules of Civil Procedure setting forth objections to Magistrate Judge Katharine H. Parker's Opinion and Order dated May 10, 2022 (Dkt. No. 67, the "Order") appointing Robert J. Viani ("Viani") and Eric C. Price ("Price") as lead plaintiffs, approving Viani and Price's selection of lead counsel, and denying CCM's motion for appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 36, "CCM's Motion").  The Order is contrary to the mandate of the Private Securities Litigation Reform Act of 1995 ("PSLRA") that the Court appoint the "most adequate plaintiff" as lead plaintiff.

## I.      INTRODUCTION

This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the PSLRA. The PSLRA directs the Court to appoint the "most adequate plaintiff" as lead plaintiff. The PSLRA also provides a presumption that the most adequate plaintiff is the movant who has, among other things, "the largest financial interest in the relief sought by the class." The presumption may be rebutted only by proof that the presumptively most adequate plaintiff is inadequate or subject to unique defenses. Once appointed, the lead plaintiff has the right to select counsel with the approval of the Court.

Here, CCM's loss (which courts accept as a proxy for "financial interest") is approximately $2.9 million. Viani has the next largest loss of approximately $2.54 million, and Price has the smallest loss of approximately $1.27 million. Despite CCM's greater loss, the Order identifies Viani and Price as the presumptively most adequate plaintiffs because it allows Viani and Price to aggregate their financial interests to overcome CCM's financial interest. This is error and contrary to the law in this District.

Under the law of this District, to aggregate their financial interests, Viani and Price must

1

demonstrate that their grouping (rather than one of them being appointed individually) would best serve the class, that they can function cohesively apart from their counsel, and that they were not assembled as a makeshift by their attorneys for the purpose of amassing an aggregation of investors with the greatest collective financial interest.

The Order does not make a finding with respect to whether the class is best served by Viani and Price's grouping. The Order also appears to support (and certainly does not reject) the conclusion that Viani and Price's counsel formed their group to aggregate their financial interests. To support aggregation, however, the Order points to Price and Viani's Joint Declaration,[1] which they signed the day before their motion was filed. But a review of the Joint Declaration only demonstrates that Viani and Price cannot aggregate. In particular, the Joint Declaration demonstrates that Viani and Price do not have a plan for cooperation, and that they do not have a dispute resolution mechanism in the event they disagree regarding a litigation decision. The Joint Declaration also does not offer any plausible reason for their grouping other than aggregating their losses. As such, the Order erred when it allowed Viani and Price to aggregate their financial interests.

Once Viani and Price's financial interest are disaggregated, CCM has the largest financial interest, and is entitled to the most adequate plaintiff presumption. Since no other movant has rebutted this presumption (as detailed below), CCM should be appointed as lead plaintiff, and its selection of counsel should be approved.

## II.    RULE 72(a) LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure provides that "[a] party may serve and file objections" to a magistrate judge's non-dispositive pretrial order and that "[t]he district judge

---

[1] *See* Joint Declaration of Robert J. Viani and Eric C. Price, Dkt. No. 22-3 ("Joint Declaration" or "Joint Decl.").

. . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

An order is "clearly erroneous" if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-cv-4373, 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011) (brackets omitted). An order is "contrary to law" if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (brackets omitted); *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-18252007, WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (vacating magistrate judge's order appointing lead plaintiff because it failed to "determine precisely which losses each plaintiff stands to recover as this litigation proceeds" as required by relevant caselaw).

## III.    PROCEDURAL HISTORY

On February 8, 2022, eight movants (including three movant groups) filed competing motions for appointment as lead plaintiff and approval of their respective selections of lead counsel pursuant to the PSLRA. The motions were filed by CCM (Dkt. No. 36); Viani and Price (Dkt. No. 19); Dr. Ranga Thalluri ("Thalluri"; Dkt. No. 26); Donald Jon Lawrence ("Lawrence"; Dkt. No. 16); Alexander Soo, Richard Cavalier, and Samih Ajami (the "Soo/Cavalier/Ajami Group"; Dkt. No. 30); Nechuma Terebelo and Ryan Schick (the "Terebelo/Schick Group"; Dkt. No. 37); Adam Berry ("Berry"; Dkt. No. 23); and Kudzanai Muringi ("Muringi"; Dkt. No. 21).

Five of the eight movants—Berry, Muringi, the Terebelo/Schick Group, Lawrence, and the Soo/Cavalier/Ajami Group—withdrew from consideration before their opposition memoranda were due by filing notices informing the Court that they do not oppose the competing motions. *See* Dkt. Nos. 44, 45, 47, 48, 52.

On February 22, 2022, the remaining movants, CCM, Viani and Price, and Thalluri filed oppositions to each other's motions. *See* Dkt. Nos. 49, 50, 51.

On February 28, 2022, Thalluri withdrew his motion—leaving only CCM, and Viani and Price still seeking appointment as lead plaintiff. *See* Dkt. No. 53.

On March 1, 2022, CCM and Viani and Price filed reply memoranda in response to the oppositions. *See* Dkt. No. 54; Dkt. No. 56 ("CCM Reply").

On May 5, 2022, Magistrate Judge Katharine H. Parker held a hearing regarding the pending motions.[2]

On May 10, 2022, Magistrate Judge Katharine H. Parker entered the Order appointing Viani and Price as lead plaintiffs and approving their selection of Kessler Topaz Meltzer & Check, LLP ("KT") as lead counsel.

## IV.   THE PSLRA STANDARD FOR APPOINTING A LEAD PLAINTIFF AND RELATED CONGRESSIONAL POLICY GOALS

The PSLRA mandates that the Court appoint "the most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the "most adequate plaintiff" is the movant that: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also* Order at 8.

Once the Court identifies the presumptively most adequate plaintiff, the presumption may

---

[2] The transcript of the hearing is filed herewith as Exhibit A to the Declaration of Gregory B. Linkh in Support of Campbell Capital Management Inc.'s Objections Pursuant to Fed. R. Civ. P. 72(a) to Magistrate Judge Katharine H. Parker's Opinion and Order Dated May 10, 2022 Appointing Lead Plaintiffs and Approving Lead Counsel.

be rebutted only "upon proof . . . that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

"One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997). By establishing a presumption for the movant with the largest financial interest, "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff." *Id*; *see also Elstein v. Net1 UEPS Techs., Inc.*, No. 13-cv-9100, 2014 WL 3687277, at *2 (S.D.N.Y. July 23, 2014) ("The purpose behind these PSLRA provisions is to prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.") (internal quotation marks omitted).

## V.   THE ORDER MISIDENTIFIES VIANI AND PRICE AS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFFS BECAUSE IT IMPROPERLY ALLOWS THEM TO AGGREGATE THEIR FINANCIAL INTERESTS

The Order holds that "Viani and Price are entitled to a rebuttable presumption that they should be appointed lead plaintiff in this action." Order at 16. The Order incorrectly arrives at this conclusion by allowing Viani and Price to aggregate their losses, and thereby collectively claim a larger financial interest than CCM:

> Viani and Price have the largest financial interest because they suffered combined losses of approximately $3,819,459 . . . . Viani personally suffered a loss of approximately $2.54 million and Price personally suffered a loss of approximately $1.27 million. In contrast, CCM has a loss of approximately $2,902,048 . . . .

5

Order at 9-10. Considered alone, neither Viani nor Price has a larger financial interest than CCM. Allowing Viani and Price to aggregate their financial interests to leapfrog over CCM is error and misapplies the relevant caselaw in this District.

A.    **The Order Begins by Accurately Summarizing the Legal Standard in this District Regarding Whether Group Members May Aggregate Their Losses**

The Order recognizes that courts "have permitted unrelated investors to join together as a group seeking lead-plaintiff status," but only "if such a grouping would best serve the class." Order at 10 (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998)); *Elstein*, 2014 WL 3687277, at *3 (before allowing aggregation, "[t]his court has required that unrelated plaintiffs first demonstrate that appointment as a group would best serve the class"); *Fries v. N. Oil & Gas, Inc.*, No. 16 -cv-6543, 2017 WL 1880819, at *2 (S.D.N.Y. May 8, 2017) ("[U]nrelated investors can aggregate their financial losses only 'if such a grouping would best serve the class.'"); *see also Cohen v. Luckin Coffee Inc.*, No. 20-cv-01293, 2020 WL 3127808, at *6 (S.D.N.Y. June 12, 2020) (allowing aggregation in part because "together, they would have standing to bring claims under both the Securities Act and the Securities Exchange Act"). Moreover, "courts have typically required that plaintiffs lacking [] a [pre-litigation] relationship present a more compelling showing as to their fitness for the position." *Elstein*, 2014 WL 3687277, at *4.

The "[d]etermination of whether a grouping would best serve the class . . . hinges on whether the members of the group can 'function cohesively and . . . effectively manage the litigation apart from their lawyers.'" *Fries*, 2017 WL 1880819, at *2 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). Courts in this District generally consider the following *Varghese* factors when evaluating a proposed group: (1) existence of a pre-litigation relationship between group members; (2) involvement of the group

6

members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *Id.*; Order at 10-11.

The Order also accurately recognizes that, upon application of the *Varghese* factors "courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." Order at 11 (collecting cases).

**B.    If the Standard Is Properly Applied, Viani and Price Cannot Aggregate Their Losses**

While the Order accurately lays out the standard to determine whether aggregation is appropriate, the Order does not apply the standard to Viani and Price. The Order's analysis is confined to one paragraph:

> In this case, ***Viani and Price did not have a relationship before this litigation***. But, they submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions concerning this case that affect the putative class. Both individuals are business people familiar with investing and sophisticated investors. ***It is unclear to this Court exactly how Viani and Price each found their way to the KT firm, though the Court assumes they both saw notice of the litigation published by the KT firm and reached out to KT as a result***.

Order at 13 (emphasis added). Approximately half of the Order's analysis (the emphasized portion) strongly suggests, contrary to the ruling of the Order, that Viani and Price should not be permitted to aggregate their losses.

With respect to the ultimate question—whether Viani and Price "in aggregate would better serve the class than if they were separate"—the Order is silent. *Fries*, 2017 WL 1880819, at \*3. Without such a finding, the Order is not justified in aggregating their financial interests.

7

To support aggregation, however, the Order points to the personal sophistication of Viani and Price, and notes that they "submitted an affidavit [their Joint Declaration] describing their decision to participate in this case and how they will cooperate on decisions concerning this case that affect the putative class." Order at 13.  However, the Joint Declaration only provides additional evidence that Viani and Price cannot aggregate their losses. The Joint Declaration demonstrates that Viani and Price filed a joint lead plaintiff motion at the prompting of their counsel for the purpose of aggregating their losses. The Joint Declaration was signed by Viani and Price one day before their lead plaintiff motion was filed. Viani and Price describe only one direct interaction with each other before filing their motion: "we convened a joint conference call to formalize our commitment to jointly prosecute this litigation." Joint Decl. ¶ 6. Given that Viani and Price did not know each other prior to this litigation, their counsel presumably set up the call. In fact, Viani and Price do not state when this call took place. It could have even been the day before their motion was filed (the same day they signed the Joint Declaration).

The Joint Declaration also demonstrates that Viani and Price have no plan for cooperation. Their "plan" is to "consult[] with each other and with counsel regarding the prosecution of this lawsuit via telephone, email, and videoconference." *Id.* ¶ 8. To assure the Court that they can implement this "plan" they declare "we each have exchanged contact information for one another." *Id.* Agreeing to communicate is not a plan. And Viani and Price do not provide one of the most important parts of any plan for joint prosecution of an action: a dispute resolution mechanism in the event they disagree. Instead, Viani and Price just assure the Court that there will be no disagreements: "[w]e intend to make all decisions jointly, taking into consideration Kessler Topaz's advice . . . [w]e are confident in our ability to reach joint decisions regarding litigation matters and will use consensus decision making." *Id.* ¶ 6. This is insufficient.

*See Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021) (rejecting a group that provided "boilerplate language" that the group members would "resolve any disputes").

While the Joint Declaration contains other boilerplate averments that Viani and Price "are united in their goals and objectives and are willing and able to serve the Class," this "is not enough to succeed on a lead plaintiff motion." *Elstein*, 2014 WL 3687277, at *5; *see also Cohen*, 2020 WL 3127808, at *4 ("The Court would expect no less from *any* person or persons proposing to be lead counsel.").

Application of the five *Varghese* factors in light of the Joint Declaration and the reasoning in the Order makes clear that the class is not best served by grouping Viani and Price. First, "Viani and Price did not have a relationship before this litigation." Order at 13. Second, their involvement in the litigation thus far has been minimal. They filed a joint lead plaintiff motion and had one introductory conference call. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("Vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation."); *In re CMED Sec. Litig.*, No. 11-cv-9297, 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (rejecting aggregation where "at the purported conference call . . . they exchanged contact information to be able to communicate outside the presence of counsel"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) ("Their only involvement in the litigation thus far appears to have been a single conference call."). Third, they do not have a plan for cooperation. Their "plan" is just to talk to each other, and they have no dispute resolution mechanism. *See Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (rejecting a "vague and conclusory" plan for

9

cooperation, which included "maintaining in regular contact with each other and with counsel"). Fourth, while Viani and Price are sophisticated individuals, they are no more sophisticated than CCM. And finally, Viani and Price's counsel chose to group them, rather than Viani and Price choosing to group and then reaching out to KT. *See* Order at 13 ("[T]he Court assumes [Viani and Price] both saw notice of the litigation published by the KT firm and reached out to KT as a result."); *Jakobsen*, 2019 WL 1522598, at \*4 (holding that a group formed by their counsel "failed to meet their evidentiary burden to prove that their grouping was not the product of lawyer-driven litigation" which "weighs heavily against the [group's] motion"). As such, every *Varghese* factor, other than possibly the fourth factor (the sophistication of the group members), weigh against the proposition that the class is better served by grouping Viani and Price. As such, they cannot aggregate their financial interests.

Moreover, it is clear from the record that Viani and Price were grouped by their counsel for the purpose of aggregating their losses, and "courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status . . . if the court . . . is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action." Order at 11. Viani and Price do not offer evidence, and the Order does not find, that their grouping was motivated by anything other than combining their losses. Even their Joint Declaration appears to attest to the fact that they grouped to maximize their collective financial interest:

> We are each strongly motivated to recover the significant losses we suffered as a result of the defendants' violations of the federal securities laws. Accordingly, ***we believe that this case should be prosecuted by investors with a financial interest substantial enough to ensure that the action is prosecuted zealously, efficiently, and in the best interests of the class***.

Joint Decl. ¶ 4 (emphasis added). As such, under the caselaw of this District, as set forth in the

10

Order, Viani and Price "cannot aggregate their financial interests to seek joint appointment."

*Fries*, 2017 WL 1880819, at *3.

C.   **Adopting the Order Would Set a Low Bar for Aggregation in this District and Invite a Flood of Lawyer-Driven Groupings**

The Order sets an exceedingly low bar for aggregation. According to the Order, counsel may aggregate the losses of any small group of unrelated investors so long as they set up a conference call the day before lead motions are due and have the group members sign a boilerplate joint declaration with no real plan for cooperation and no dispute resolution mechanism.

Adopting the Order would invite a flood of lawyer-driven groupings. Counsel in securities cases are often in communication with multiple investors interested in applying for appointment as lead plaintiff. It would be very easy for counsel to persuade investors to form a group, hold a short conference call, and sign a boilerplate declaration on the bases that they have a better chance at being appointed if they aggregate their losses than if they move separately. In this case, for example, counsel for CCM was in communication with another investor with losses over $1 million. If grouped with CCM, their aggregate losses would exceed Viani and Price's losses. If the Order is adopted, "the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 120 (E.D.N.Y. 2012). The Court should decline to open the door to this kind of lawyer-driven litigation.

VI.   **CCM IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF**

Once Viani and Price's financial interests are disaggregated, CCM satisfies all three criteria to be the presumptively most adequate plaintiff. First, since Viani and Price each have a smaller loss than CCM, CCM has the largest financial interest in the relief sought by the class.

Second, the Order found that CCM filed a timely motion. *See* Order at 9. Third, while the Order did not make a finding with respect to whether CCM has made the required preliminary showing that it satisfies the relevant adequacy and typicality requirements of Rule 23, CCM submits that it has. The Order correctly sets out the standard:

> In evaluating the movants' adequacy, courts consider whether "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between [them] and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Kuriakose*, 2008 WL 4974839, at *4. The 'typicality' requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *Id.*

Order at 14-15. CCM satisfies these criteria. The Order finds that CCM's counsel is qualified. *See* Order at 6. No party claims there is a conflict between CCM and the members of the class, and the Order does not find such a conflict. CCM's financial interest of more than $2.9 million ensures that it has a sufficient interest to ensure vigorous advocacy. And no party disputes that CCM's claims arise from the same events and is based on the same legal arguments as other class members' claims. Accordingly, CCM is the presumptively most adequate plaintiff.

## VII.    THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculation and conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *see also Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."). Proof demands "specific support" and "evidence" of the "actual

or potential conflict of interest or a defense." *Constance*, 223 F.R.D. at 324-25; *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same).

CCM is an investment advisor firm headed by Clay Campbell, a retired certified public accountant (CPA).[3] CCM manages the accounts of its clients who assigned their claims in this action to CCM. *Id.* at ¶ 3. CCM has agreed to remit any proceeds received as a result of the assignments to the client assignors. *Id.*

No proof has been presented that CCM would be inadequate or subject to unique defenses. Price and Viani leveled several attacks on CCM's adequacy, but CCM sufficiently addressed all of them in its reply memorandum. *See* CCM Reply at 4-10.

Because the Order does not find that CCM is the presumptively most adequate plaintiff, there is no reason for the Order to assess whether the presumption is rebutted. Despite this, the Order briefly identifies three issues that the Order finds would rebut the presumption that CCM is the most adequate plaintiff. None stand up to scrutiny.

First, the Order finds that "CCM's standing ***could potentially*** be challenged if Defendants ***question the validity*** of the approximately 100 assignments of the claim." Order at 16 (emphasis added). This is the type of speculation that courts in this District reject as "proof" of inadequacy. *See Foley*, 272 F.R.D. at 133 (the unique defense "must be shown, not merely speculated"). There is no analysis of why the assignments are invalid. As such, the presumption cannot be rebutted on this basis.

Second, the Order finds that "[i]t also ***appears*** that the assignments ***may be*** [unilaterally] revocable, meaning that CCM's financial interest ***could*** diminish during the course of the

---

[3] *See* Declaration of Clay Campbell in Support of Campbell Capital Management Inc.'s Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel, Dkt. No. 41-4, ¶ 2.

litigation." Order at 16 (emphasis added). As context, the Second Circuit has held that assignments that explicitly "permit[] the assignor to . . . terminate the plaintiff-assignee's authority to pursue the assigned claims" do not confer standing to the assignee. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107-08 (2d Cir. 2008). However, it does not make sense to find that CCM's assignments "may be" revocable. Assignments are either revocable or they are not. Here, CCM's assignments are not revocable—they do not contain a provision that allows the assignor to terminate the assignee's authority. *See* CCM Reply at 5; *see also* Dkt. No. 41-2 (Certification and Assignment Agreements). Without a provision granting unilateral revocability, the assignments are not unilaterally revocable. Further the assignments explicitly state that they "shall be binding upon . . . the Parties." *Id.* The Order provides no basis to hold that the assignments are revocable. As such, this cannot be a basis to find CCM inadequate.[4]

Moreover, with respect to the finding that CCM's financial interest "could diminish during the course of the litigation" (Order at 16), this is true for every lead plaintiff and lead plaintiff group. Class periods can change over the course of the litigation, certain claims are sometimes dismissed, and members of lead plaintiff groups sometimes drop out of the case. All these would affect a lead plaintiff's (or lead plaintiff group's) financial interest. But the PSLRA is only concerned with the financial interest of the movants at the time a lead plaintiff is to be selected, and only for the purpose of identifying the presumptive lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). The fact that a plaintiff's financial interest might later change does not rebut the most adequate plaintiff presumption. This concern is also speculative. It has been approximately three and a half months since CCM filed its lead plaintiff motion, and not a single

---

[4] Viani and Price's counsel have repeatedly filed assignment agreements in other actions that were silent as to revocability. *See* Dkt. Nos. 57-1, 57-2.

assignor has requested revocation of their assignment.

Third, the Order finds that "discovery on the validity of the assignments and CCM's standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter." Order at 16-17. This concern is conclusory because no proof has been presented that there is any serious legal question as to the validity of CCM's assignments. This case is nothing like *Plymouth County Retirement Association v. Array Technologies, Inc.*, No. 21-cv-4390, 2021 WL 5051649, at *2 (S.D.N.Y. Nov. 1, 2021), cited in the Order at 16, which declined to appoint an assignee as lead plaintiff because there was a serious legal question as to whether the assignment was "sufficient under Austrian law to confer [the assignor] with the requisite property interest under *Huff*." The *Array* court found that such "complex issues of foreign law" would "cause a needless litigation sideshow." *Id.* (internal quotation marks omitted). There is no such complexity here. Moreover, discovery regarding CCM's assignments will not become a distraction because, to prove CCM lacks standing, Defendants would have to prove that every single assignment is invalid, which is an impossible task, not worth pursuing. If CCM can show even one is valid, standing would be established, and Defendants' attack would fail. The Order also does not set forth a plausible legal theory as to why CCM's assignments are invalid. Without such a basis, the presumption that CCM is the most adequate plaintiff has not been rebutted.

Additionally, if CCM is eliminated from consideration based on unspecified concerns regarding "discovery on the validity of the assignments," such reasoning would apply to all assignments and would functionally eliminate all assignee plaintiffs from serving as lead plaintiff, contrary to the endorsement of other courts. *See Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018 WL 3141814, at *7 (N.D. Ill. June 26, 2018) (appointing an investment

15

advisor assignee as lead plaintiff); *Huff*, 549 F.3d 100, 108 (endorsing assignments); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658, 2011 WL 4597553, at \*4 (S.D.N.Y. Oct. 4, 2011) (appointing an assignee as lead plaintiff).

*       *       *

Since CCM is the presumptively most adequate plaintiff, and the presumption has not been rebutted, CCM should be appointed as lead plaintiff.

## VIII.   CONCLUSION

For the foregoing reasons, CCM's objections to Magistrate Judge Katharine H. Parker's Order should be sustained, CCM's Motion should be granted, CCM should be appointed as lead plaintiff, and CCM's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved.

Respectfully submitted,

DATED: May 24, 2022

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Campbell Capital Management Inc. and Proposed Lead Counsel for the Class*

16

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

17

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On May 24, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 24, 2022, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh