**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQUISITION CORP. II SECURITIES LITIGATION | Master File No. 1:21-cv-10611 (ER) (KHP) <br><br> <u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CAMPBELL CAPITAL MANAGEMENT INC.'S OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE KATHARINE H. PARKER'S OPINION AND ORDER DATED MAY 10, 2022 APPOINTING <u>LEAD PLAINTIFFS AND APPROVING LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................................1

II.   ARGUMENT.........................................................................................................................5

          A.    Legal Standard .......................................................................................................5

          B.    CCM Does Not Meet the "Heavy Burden" for Setting Aside the Order .................5

                    1.    The Order Followed the Majority View in Appointing Mr. Viani and
                          Mr. Price ......................................................................................................6

                    2.    CCM Is Subject to Unique Defenses and Cannot Be Appointed...............15

III.  CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................7, 8, 10

*Batter v. Hecla Mining Co.*,
2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ...........................................4, 15, 16

*Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*,
306 F.3d 726 (9th Cir. 2002) ...................................................................................17

*Chauhan v. Intercept Pharms.*,
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ............................................................14

*In re CMED Sec. Litig.*
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012)............................................................14

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) ..............................................3, 10, 12

*Crass v. Yalla Grp. Ltd.*,
2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021)..............................................................7

*Cushman v. Fortress Biotech, Inc.*,
2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021) .................................................. *passim*

*Elstein v. Net1 UEPS Techs., Inc.*,
2014 WL 3687277 (S.D.N.Y. July 23, 2014) ..........................................................14

*Fries v. N. Oil & Gas, Inc.*,
2017 WL 1880819 (S.D.N.Y. May 8, 2017) .....................................................13, 14

*Garnett v. RLX Tech. Inc.*,
2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021)......................................................7, 12

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)......................................................................18

*Jakobsen v. Aphria, Inc.*,
2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ........................................................14

*Khatabi v. Bonura*,
2017 WL 10621191 (S.D.N.Y. Apr. 21, 2017)................................................ *passim*

*Lavin v. Virgin Galactic Holdings, Inc.*,
  2021 WL 5409798 (E.D.N.Y. Sept. 17, 2021) ...................................................................7, 11

*Lundy v. Ideanomics, Inc.*,
  2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) .........................................................................16

*May v. KushCo Holdings, Inc.*,
  2019 WL 9633651 (C.D. Cal. Sept. 5, 2019) .........................................................................13

*Mersho v. U.S. Dist. Ct. for D. of Ariz.*,
  6 F.4th 891 (9th Cir. 2021) ..........................................................................................3, 6, 14

*In re Molycorp, Inc. Sec. Litig.*,
  2012 WL 13013602 (D. Colo. May 29, 2012)....................................................................11, 17

*Omdahl v. Farfetch Ltd.*,
  2020 WL 3072291 (S.D.N.Y. June 10, 2020) .....................................................................6, 14

*Plymouth Cnty. Ret. Assoc. v. Array, Inc.*,
  2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021)........................................................................2, 17

*Schaffer v. Horizon Pharma Plc*,
  2016 WL 3566238 (S.D.N.Y. June 27, 2016) .........................................................................16

*In re Snap Inc. Sec. Litig.*,
  2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) .....................................................................10, 16

*Sokolow v. LJM Funds Mgmt., Ltd.*,
  2018 WL 3141814 (N.D. Ill. June 26, 2018)......................................................................16, 17

*Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
  2012 WL 3638629 (D.N.J. Aug. 22, 2012) .......................................................................16, 17

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a) ...........................................................................................................1, 6, 14

**Other Authorities**

Fed. R. Civ. P. 72(a) .................................................................................................................5

iii

Court-appointed Lead Plaintiff Robert J. Viani ("Mr. Viani") and Eric C. Price ("Mr. Price"), as trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05/27/2015, respectfully submit this Memorandum of Law in Opposition to Campbell Capital Management Inc.'s ("CCM") objections (ECF No. 72, the "Objections") to Magistrate Judge Katharine H. Parker's Opinion and Order appointing Mr. Viani and Mr. Price as Lead Plaintiff and approving their selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class (ECF No. 67, the "Order").[1]

## I.    INTRODUCTION

On May 10, 2022, following full briefing and oral argument, Magistrate Judge Parker issued a detailed opinion granting Mr. Viani and Mr. Price's motion for appointment as Lead Plaintiff and denying CCM's competing motion. *See* Order at 16-18. Specifically, Magistrate Judge Parker found that Mr. Viani and Mr. Price were "entitled to a rebuttable presumption that they should be appointed lead plaintiff" under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), because "they have the largest financial interest" based on their loss of approximately $3.8 million from their investments in Paysafe securities "and made a preliminary showing that they otherwise satisfy the requirements of Rule 23." Order at 16. Magistrate Judge Parker further concluded that CCM—the lone competing movant—had not presented any evidence to rebut Mr. Viani and Mr. Price's presumptive status under the PSLRA. *See id.* Not only did the Order determine that Mr. Viani and Mr. Price met the PSLRA's criteria for appointment, Magistrate Judge Parker found that CCM did not. As noted in the Order, CCM's standing to pursue claims, which is based on an amalgamation of approximately 100 boilerplate

---

[1]    Unless otherwise noted, all references to "ECF No. __" are to docket entries in *In re Paysafe Limited f/k/a Foley Trasimene Acquisition Corp. II Securities Litigation*, No. 1:21-cv-10611 (ER) (KHP) (S.D.N.Y.), all emphasis is added, and all internal quotation marks and citations are omitted.

assignments, was subject to unique defenses that, among other things, would require discovery to assess the validity of each and every assignment and "would be contrary to the interest of the class." *Id*. at 16-17 (citing *Plymouth Cnty. Ret. Assoc. v. Array, Inc.*, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021)).  Given this finding, CCM could not have been appointed regardless of its claimed financial interest.  *See Array*, 2021 WL 5051649, at *2 (rejecting movant "subject to unique standing defenses regarding the invalidity of the Assignment").  Accordingly, Mr. Viani and Mr. Price are the ***only*** movants capable of meeting the PSLRA's criteria for appointment and were properly appointed as Lead Plaintiff for the class.  *See* Order at 16-17.

Unsatisfied with this result, CCM now contends that the Order should be set aside because Magistrate Judge Parker's analysis—which CCM concedes "accurately lays out the standard" for determining whether Mr. Viani and Mr. Price may jointly serve as Lead Plaintiff—was "error and misapplies the relevant caselaw in this District."  Objections at 6-7.  However, CCM's relitigation of arguments Magistrate Judge Parker fully considered and rejected is without merit, and fails to satisfy CCM's "heavy burden" for establishing that the Order is "clearly erroneous" or "contrary to law."  *See Khatabi v. Bonura*, 2017 WL 10621191, at *2-3 (S.D.N.Y. Apr. 21, 2017) (Ramos, J.) (recognizing that the standard for setting aside a magistrate judge's opinion is "***highly deferential***" and "the objector thus carries a ***heavy burden***").

Mr. Viani and Mr. Price's appointment is consistent with "[t]he ***majority*** of courts" that "permit[] unrelated investors to join together as a group seeking lead-plaintiff status" under the PSLRA if the group members provide evidence that they "will be able to function cohesively and to effectively manage the litigation." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  Here, Mr. Viani and Mr. Price provided specific evidence of their active involvement in the litigation, their plan for communicating with and without counsel,

their understanding of their obligations under the PSLRA, their sophistication, and how they retained counsel to represent the class. *See* Order at 13, 15-16; *see also* ECF No. 22-3 (the "Joint Declaration"). Based on this evidence, Magistrate Judge Parker concluded that Mr. Viani and Mr. Price "will adequately protect the interests of the class" and are entitled to appointment as Lead Plaintiff. Order at 16; *see also, e.g.*, *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at \*5 (S.D.N.Y. June 12, 2020) (finding that unrelated investors had formed a proper group because they had "participated in a conference call," "laid out plans for cooperation in the future that include communications with each other (and not just each individually with counsel)," and "ma[d]e commitments with respect to their individual participation in the litigation"). In contrast to the Order's findings, "CCM has not come forward with evidence to suggest that Viani and Price could not work together in an effective manner or to otherwise rebut the presumption that they should be appointed [L]ead Plaintiffs." Order at 16; *see also Mersho v. U.S. Dist. Ct. for D. of Ariz.*, 6 F.4th 891, 901 (9th Cir. 2021) (holding that the district court's rejection of a group of unrelated class members was inconsistent with the PSLRA because the district court "based its decision on 'misgivings' about a lack of cohesion or control over counsel even though the only evidence it acknowledged—the Petitioners' joint declaration—contradicts such conclusions").

Despite the Order basing its appointment on the only evidence in the record—the Joint Declaration—and being consistent with the "majority" view on the appointment of groups, CCM disagrees and claims, based on nothing more than CCM's say so, "that the class is not best served by grouping Viani and Price." Objections at 9; *see also* ECF No. 51 at 6-7 (CCM's opposition brief arguing that groups of unrelated investors should not be appointed). CCM's baseless speculation, in the face of evidence to the contrary, is insufficient at any stage of the litigation and is fatal given the "heavy burden" it now faces to set the Order aside. *See Cushman v. Fortress*

3

*Biotech, Inc.*, 2021 WL 1526172, at *2-3 (E.D.N.Y. Apr. 19, 2021) (rejecting attempt by a competing movant, represented by CCM's counsel here, to set aside a magistrate judge's order appointing a group of unrelated investors); *Khatabi*, 2017 WL 10621191, at *3 (explaining that a district judge must be "left with the definite and firm conviction that a mistake has been committed" to set aside a magistrate judge's order).

Moreover, even if Mr. Viani and Mr. Price could not jointly claim the largest financial interest (which they do), they are the ***only*** qualified movant before the Court.  As noted in the Order, CCM could not be appointed because it is subject to several unique defenses stemming from its reliance upon more than 100 assignments from its clients to establish its standing in this litigation.  *See* Order at 16-17 (citing *Array*, 2021 WL 5051649 (denying appointment as lead plaintiff due to risk that plaintiff would be subject to unique defenses surrounding assignment of claims)); *see also Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a ***potential*** that the [movant] will be subject to unique defenses . . . disqualification is appropriate.").  As evidenced by Magistrate Judge Parker's findings, non-speculative arguments regarding CCM's assignments exist, and the potential invalidation or revocation of the assignments would be disastrous for the class as it would be left without a lead plaintiff with a sufficient financial interest in the litigation.  At the very least, the need for CCM to continuously survey its 100-plus assignors whenever any issue about the assignments arises—a virtual certainty now given the Order's findings—is a burden the class should not shoulder and is fatal to CCM's motion.

There is simply no legal basis for CCM to set the Order aside and replace Mr. Viani and Mr. Price as Lead Plaintiff in this litigation.  Accordingly, the Court should overrule CCM's Objections to the Order.

## II.   ARGUMENT

### A.   Legal Standard

The appointment of a lead plaintiff and lead counsel under the PSLRA is a non-dispositive pre-trial issue. *See* ECF No. 5 (Order of Reference to Magistrate Judge Parker for "General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement)"). Federal Rule of Civil Procedure 72(a) ("Rule 72(a)") provides that, when a magistrate judge decides a pretrial matter not dispositive of a party's claims or defenses (such as the appointment of Mr. Viani and Mr. Price), the applicable standard of review by the district court is whether the order is "***clearly erroneous*** or is ***contrary to law***." Fed. R. Civ. P. 72(a). "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," and is contrary to law if "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Khatabi*, 2017 WL 10621191, at *3. As this Court has previously recognized, "[t]his is a ***highly deferential standard***, and the objector thus carries a ***heavy burden***." *Id.* The Order is not subject to *de novo* review. *See id.* at *2.

Here, the Order makes two findings: (1) that Mr. Viani and Mr. Price met the PSLRA's criteria for appointment as Lead Plaintiff; and (2) that CCM is subject to unique defenses concerning the validity and revocability of its 100-plus assignments. *See* Order at 16-17. CCM faces a "heavy burden" to establish that ***both*** findings are "erroneous" or "contrary to law" to set aside Magistrate Judge Parker's appointment of Mr. Viani and Mr. Price as Lead Plaintiff. CCM does not come close to making the necessary showing for either finding, let alone both findings.

### B.   CCM Does Not Meet the "Heavy Burden" for Setting Aside the Order

CCM argues that the Court should set aside the Order because Mr. Viani and Mr. Price are an improper group and cannot claim the largest financial interest, and, therefore, CCM is the "most

adequate plaintiff" and should have been appointed.  CCM is wrong on both counts, and fails to establish that the Order was clearly erroneous or contrary to law.

### 1.    The Order Followed the Majority View in Appointing Mr. Viani and Mr. Price

The PSLRA states that the "person or group of persons that . . . has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23" is the presumptively most adequate plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The process is sequential and the Court must appoint the presumptively "most adequate plaintiff" unless a competing movant can provide "***proof***" that the movant will not fairly and adequately represent the class or is subject to unique defenses.  *Id.* § 78u-4(a)(3)(B)(iii)(II); *see also Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (stating that the presumption "may only be rebutted by proof"); *Mersho*, 6 F.4th at 901 (stating that "evidence" is required under the PSLRA to rebut presumptive status of group without a pre-litigation relationship).

Magistrate Judge Parker correctly concluded that Mr. Viani and Mr. Price were the presumptively "most adequate plaintiff" under the PSLRA, and that CCM had failed to rebut the presumption.  *See* Order at 16.  CCM does not dispute the accuracy of Mr. Viani and Mr. Price's financial interest, their adequacy, or their typicality, and instead argues only that Mr. Viani and Mr. Price should not have been permitted to seek appointment as a group.  *See* Objections at 5-11. This argument misstates the applicable case law, is contrary to the evidence in the record, and fails to satisfy the "heavy burden" CCM faces to set aside the Order.  *See Khatabi*, 2017 WL 10621191, at *2-3.

As CCM concedes, Magistrate Judge Parker correctly noted courts in this District and throughout the country regularly appoint groups of unrelated investors to serve together as lead plaintiff if they can "function cohesively" and "effectively manage the litigation apart from their

lawyers."   Objections at 6; *id.* at 7 ("the Order accurately lays out the standard to determine whether aggregation is appropriate"); *see also, e.g.*, *Varghese*, 589 F. Supp. 2d at 392 (noting that the "majority" of courts allow for the appointment of groups lacking a pre-motion relationship). As CCM further admits, whether group members had a pre-litigation relationship is just one factor courts consider in evaluating a group's ability to manage the litigation.  *See* Objections at 6-7. Indeed, courts routinely allow groups with no pre-litigation relationship to aggregate their losses where group members can show that they, *e.g.*, are actively involved in the litigation, have plans for cooperation, and are sophisticated investors.  *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 392 (listing "[f]actors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers"); *Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021) (appointing a group of two unrelated individuals who, in a joint declaration, had "demonstrated their ability to work cooperatively," explained their "understanding of the fiduciary obligations of Lead Plaintiffs," and affirmed their "preparedness to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated"); *Lavin v. Virgin Galactic Holdings, Inc.*, 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021) (appointing a group of two individuals with no pre-litigation relationship, including an individual represented by CCM's counsel here, where the movants had "stipulated that they are willing and able to take on the responsibilities of lead plaintiff and to represent the class of investors"); *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) (appointing a group of three unrelated individuals—even though one had initially moved for appointment separately from the other two—because they had "since coalesced and demonstrated their ability to work cooperatively"); *Fortress Biotech*, 2021 WL 1526172, at *2-3 (appointing a group of two individuals with no pre-litigation relationship who had provided

7

evidence of their ability to manage the litigation); *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group of unrelated members providing a joint declaration).

Mr. Viani and Mr. Price made such a showing here.  As set forth in their Joint Declaration, Mr. Viani and Mr. Price are experienced businessmen overseeing multimillion dollar businesses and sophisticated investors who fully understand the responsibilities of the lead plaintiff—which include "acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel"—and are committed to "oversee[ing] the vigorous prosecution of this litigation in order to maximize the class's recovery."  Joint Declaration, ¶¶ 2-3; *see id.* ¶ 9.  Mr. Viani and Mr. Price explained that they each chose Kessler Topaz to serve as lead counsel, even though they knew they could select any qualified counsel, and that they decided to move for joint appointment as lead plaintiff because they believe their "ability to jointly lead this case would provide the class the benefits of joint decision-making and allow each of [them] to confer with the other as [they] lead this important litigation on behalf of [their] fellow investors." *Id.* ¶¶ 5, 7.  To that end, Mr. Viani and Mr. Price convened a joint conference call prior to moving for appointment as lead plaintiff, where they discussed their respective losses, the case against Defendants, and the procedures and protocols they will follow in prosecuting the litigation.  *Id.* ¶ 6.  Mr. Viani and Mr. Price have also exchanged contact information for each other, with plans to communicate both with and without counsel as needed, and have agreed to "use consensus decision making to maximize the recovery for the class." *Id.* ¶ 6, 8.  Moreover, they continued to communicate after their motion was filed and specifically discussed next steps in the litigation should the Court appoint them Lead Plaintiff.  *See* ECF No. 72-2 ("Hr'g Tr.") at 14.  This evidence establishes that, even at this early stage of the litigation, Mr. Viani and Mr. Price are already

functioning "cohesively . . . to effectively manage the litigation." *Varghese*, 589 F. Supp. 2d at 392.

Based on this proof—which was the only evidence before the Court—Magistrate Judge Parker correctly concluded that Mr. Viani and Mr. Price are a proper group under the PSLRA. As Magistrate Judge Parker explained:

> In this case, Viani and Price did not have a relationship before this litigation. But, they submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions concerning this case that affect the putative class. Both individuals are business people familiar with investing and sophisticated investors. . . .
>
> \*       \*       \*
>
> [B]oth movants submitted a Joint Declaration where they noted that they fully understand the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents, and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation. . . . Based on the memoranda and declaration submitted by movants, the Court is persuaded that Viani and Price have made a preliminary showing that they will adequately protect the interests of the class. Additionally, Viani and Price are committed to ensuring that this litigation is prosecuted in an efficient and effective manner. Both movants have participated in a joint conference call to discuss the claims against Defendants and their plans to jointly prosecute this litigation, and have arranged to communicate with each other as needed, both with and without counsel, and plan to use consensus decision making to maximize the recovery for the class.

Order at 13, 15-16. Magistrate Judge Parker also correctly noted that Mr. Viani and Mr. Price reached out to Kessler Topaz, and selected Kessler Topaz as counsel after discussing the case and the lead plaintiff process with Kessler Topaz attorneys. *See* Order at 13; *see also* Hr'g Tr. at 13 (counsel confirming that Mr. Viani and Mr. Price actively sought out Kessler Topaz to represent

9

them in this litigation); *Varghese*, 589 F. Supp. 2d at 392 (considering "whether the members chose outside counsel, and not vice versa"). Accordingly, Magistrate Judge Parker found that Mr. Viani and Mr. Price are capable of working together in an effective manner and can properly seek appointment as a group. *See* Order at 16. These factual findings are completely consistent with the types of analyses many other courts have applied in concluding that unrelated groups of investors can jointly serve as lead plaintiff under the PSLRA. *See, e.g.*, *Luckin Coffee*, 2020 WL 3127808, at *5 (finding, on the basis of a joint declaration that closely resembled Mr. Viani and Mr. Price's joint declaration, that unrelated investors had formed a proper group because they had "participated in a conference call," "laid out plans for cooperation in the future that include communications with each other (and not just each individually with counsel)," and "ma[d]e commitments with respect to their individual participation in the litigation"); *In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at *4 (C.D. Cal. Apr. 1, 2019) (finding that a group's joint declaration "establishes the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interest, to work collaboratively, and to proceed quickly"); *Bank of Am.*, 258 F.R.D. at 270 (appointing group based on evidence of cohesion established by the group's joint declaration). Accordingly, there is no basis whatsoever for concluding, under the "highly deferential" standard, that CCM has met its "heavy burden" of proving that the Order was clearly erroneous or contrary to law. *Khatabi*, 2017 WL 10621191, at *3.

CCM's efforts to reverse Magistrate Judge Parker's ruling amount to nothing more than "quibbles with [her] application of the *Varghese* factors." *Fortress Biotech*, 2021 WL 1526172, at *2. The court's decision in *Fortress Biotech* upholding a magistrate judge's appointment of a group of unrelated investors is instructive. In *Fortress Biotech*, an individual movant (also

10

represented by counsel for CCM here) submitted objections to a magistrate judge's order appointing a group of unrelated investors as lead plaintiff. Specifically, the movant argued that the group had been improperly appointed because its members had no relationship prior to the litigation, its involvement in the case to date had been limited, the group members lacked a sufficient plan to communicate with each other, and the group was formed by counsel. *See id.* at \*2-3. The court rejected these arguments, holding that they were mere "quibbles" with the magistrate judge's application of *Varghese*, and failed to show that the order was "clearly erroneous or . . . contrary to law." *Id.* at \*2. CCM makes the same arguments here, and they fail for the same reasons.

First, CCM contends that Mr. Viani and Mr. Price did not have a pre-existing relationship before this litigation. But as Magistrate Judge Parker, the *Fortress Biotech* court, and many other courts have held, "such a relationship is not required," and indeed, "a group of diverse investors who did not know each other previously could be in a better position to represent a large and diverse class of investors than one investor would be." *Id.* at \*2; *see also Virgin Galactic*, 2021 WL 5409798, at \*4 ("[i]t is not necessary that proposed lead plaintiffs have a pre-litigation relationship"); *In re Molycorp, Inc. Sec. Litig.*, 2012 WL 13013602, at \*3 (D. Colo. May 29, 2012) (noting "significant public policy advantages" of appointing a group because, *inter alia*, a group is "more likely to make consensus decisions that protect the interests of absent class members, rather than simply protecting the financial interests of a single individual").

Next, CCM argues that Mr. Viani and Mr. Price's involvement in the litigation thus far has been minimal. One, this is not true, *see, e.g.*, Joint Declaration, and, two, CCM does not explain what more Mr. Viani and Mr. Price should or could have done at this extremely early stage of litigation. Indeed, as the *Fortress Biotech* court observed, "[i]t is not clear . . . what else [the

11

competing movant] expects they should have done," and "[t]he members of the [group] having discussions with their counsel and a conversation with each other is sufficient involvement at this point in order to be able to adequately represent the putative class." 2021 WL 1526172, at *3; *see also, e.g.*, *Luckin*, 2020 WL 3127808, at *5 (noting that group members had sufficiently demonstrated "their involvement in the litigation thus far" by stating that they had participated in a conference call). What is more, Mr. Viani and Mr. Price have continued to remain involved in this litigation—including participating in an additional joint conference call prior to the May 5, 2022 hearing, *see* Hr'g Tr. at 14, and continuing to discuss the litigation with counsel following their appointment as Lead Plaintiff.

Nor is CCM correct in contending that Mr. Viani and Mr. Price lack a plan for cooperation: as explained in their Joint Declaration, Mr. Viani and Mr. Price have exchanged contact information so that they are able to communicate both with and without counsel, and have agreed to "use consensus decision making" when determining how to maximize the class's recovery. *See* Joint Declaration, ¶¶ 6-8. As courts regularly recognize, such representations are sufficient to demonstrate a group's ability to work cohesively. *See, e.g.*, *Fortress Biotech*, 2021 WL 1526172, at *3 ("The court does not doubt that, in this era, two people will be able to remain in contact with each other, despite the fact that they may not live near each other."); *RLX Tech.*, 2021 WL 3913541, at *5 (finding that group members had "demonstrated their ability to work cooperatively" by moving for joint appointment and speaking by telephone); *Luckin*, 2020 WL 3127808, at *5 (finding that the group members had "laid out plans for cooperation in the future" by agreeing to "communicat[e] with each other (and not just individually with counsel) on short notice by email and by telephone").

12

Finally, it is irrelevant that Mr. Viani and Mr. Price formed a group only after they reached out to Kessler Topaz.  As the *Fortress Biotech* court stated, CCM "does not provide any reason why this fact hinders [Lead Plaintiff's] ability to adequately represent the putative class," given that Mr. Viani and Mr. Price "have a substantial interest in litigating the putative class's allegations," and chose to move for appointment together because they believed the class would benefit from joint decision-making.  2021 WL 1526172, at *3; *see also* Joint Declaration, ¶ 5 (Mr. Viani and Mr. Price attesting that they "believe our ability to jointly lead this case would provide the class the benefits of joint decision-making and allow each of us to confer with the other as we lead this important litigation on behalf of our fellow investors").  Indeed, "[r]egardless of whether the two members were connected by a law firm or by chance, they have a significant common stake in the outcome of this case," and are fully equipped to manage the litigation cohesively for all the reasons stated in the Order.  *Fortress Biotech*, 2021 WL 1526172, at *3; *see also May v. KushCo Holdings, Inc.*, 2019 WL 9633651, at *3 (C.D. Cal. Sept. 5, 2019) (appointing a group of three unrelated investors, represented by CCM's counsel here, and noting that the U.S. Securities and Exchange Commission has indicated that a group of no more than "three to five members will facilitate joint decision-making").

In short, CCM has failed to establish that the Order made an indisputable mistake or misapplied the law in determining that Mr. Viani and Mr. Price were the presumptively most adequate plaintiff, such that the appointment of Mr. Viani and Mr. Price as Lead Plaintiff was clearly erroneous or contrary to law.  *See Khatabi*, 2017 WL 10621191, at *3.[2]  CCM has therefore failed to carry its "heavy burden" under Rule 72(a).  *Id.*

---

[2]    As noted in Mr. Viani and Mr. Price's reply brief, *see* ECF No. 54 at 6, and herein, CCM's legal authority is readily distinguishable given Mr. Viani and Mr. Price's demonstrated efforts to lead this litigation.  For example, the group of investors in *Fries v. N. Oil & Gas, Inc.*, "did not proffer any evidentiary support" and "[t]heir motion [was] entirely devoid of allegations regarding why the two plaintiffs decided to work together or if they even know each

13

CCM's separate argument that "[a]dopting the Order would invite a flood of lawyer-driven groupings" is baseless speculation. *Compare* Objections at 11 *with* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Farfetch*, 2020 WL 3072291, at *2 ("This presumption may only be rebutted by proof that the purportedly most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."); *Mersho*, 6 F.4th at 901 (finding that a district court erred in rejecting a group of unrelated investors based on its "misgivings" about such groups). As discussed above, the Order, and the representations it relied on, are completely consistent with established case law setting forth the evidence required to demonstrate the propriety of a movant group. Moreover, CCM's counsel—despite their protestations here—routinely represents groups of unrelated investors seeking appointment as lead plaintiff in securities class actions. In fact, since the beginning of 2019 alone, CCM's counsel has sought lead plaintiff appointment for at least ***46 groups of investors with no apparent pre-litigation relationship***. *See* Declaration of Naumon A. Amjed ("Amjed Decl."), Ex. A (listing

---

other." 2017 WL 1880819, at *2 (S.D.N.Y. May 8, 2017); *see also Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *4 (S.D.N.Y. July 23, 2014) ("[t]here is no indication that [Plaintiffs] have ever spoken to each other or know anything about one another") (alterations in original); *Varghese*, 589 F. Supp. 2d at 394 ("The [group] does not inform the Court whether its members have ever communicated with each other or plan to do so in the future, or if they are even aware of each other's existence."). Likewise, the court in *Chauhan v. Intercept Pharmaceuticals*, did not reject a group simply because of "boilerplate language" in its declaration, but rather, because the group's "conduct to date belies the notion that they would take an active role in the litigation supervising counsel and if necessary, restricting the role of counsel, in the best interest of efficiently prosecuting the case on behalf of the class." 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021). Specifically, unlike Mr. Viani and Mr. Price who have retained a single firm to represent them and the class, the group in *Intercept* "provide[d] no cogent explanation for why they propose[d] two different law firms, each of which is independently competent, to handle th[e] lawsuit," or why one of the group members "ma[de] reference to a third law firm but provide[d] no explanation of what role that firm is to play." *Id*. Similarly, the group rejected in *In re CMED Securities Litigation*, did not evidence their affirmative decision to join together for the benefit of the class, like Mr. Viani and Mr. Price have, but rather stated that they "agreed to proceed together because we . . . would ***like the opportunity to participate in this action*** as Lead Plaintiffs." 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (ellipsis in original). Further, in *Jakobsen v. Aphria, Inc.*, the court rejected a group of five individuals who appeared to be "barely" involved in the litigation and provided no information about their sophistication. 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019).

cases in which counsel for CCM has moved on behalf of groups of apparently unrelated investors since 2019).

Accordingly, the Court should overrule CCM's Objections to Magistrate Judge Parker's finding that Mr. Viani and Mr. Price were the presumptively most adequate plaintiff and were entitled to Lead Plaintiff appointment.

### 2.    CCM Is Subject to Unique Defenses and Cannot Be Appointed

Mr. Viani and Mr. Price are the only movants before the Court capable of meeting all of the PSLRA's criteria for appointment.  Even if Mr. Viani and Mr. Price did not assert the largest financial interest in this litigation (which they do), CCM cannot be appointed.  *See, e.g.*, *Hecla*, 2020 WL 1444934, at *7.

Specifically, as Magistrate Judge Parker correctly stated, CCM is subject to disqualifying unique defenses because:

> CCM's standing could potentially be challenged if Defendants question the validity of the approximately 100 assignments of the claim.  It also appears that the assignments may be revocable, meaning that CCM's financial interest could diminish during the course of the litigation.  Further, discovery on the validity of the assignments and CCM's standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter. *Cf. Plymouth County Ret. Assoc. v. Array, Inc.*, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) (denying appointment as lead plaintiff due to risk that plaintiff would be subject to unique defenses surrounding assignment of claims).

Order at 16-17.

CCM argues that "[t]here is no analysis of why the assignments are invalid" and that "it does not make sense to find that CCM's assignments 'may be' revocable," as Magistrate Judge Parker stated, because "[a]ssignments are either revocable or they are not."  Objections at 13-14. But CCM is missing the point: the question is not whether the assignments ultimately are or are not revocable, but whether Defendants can ***potentially*** argue that they are.  *See Hecla*, 2020 WL

15

1444934, at *7 ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Snap*, 2019 WL 2223800, at *2 ("[C]ourts should not appoint a lead plaintiff whose appointment would pose a 'danger that absent class members will suffer if [the lead plaintiff] is preoccupied with defenses unique to it.'") (second alteration in original).  Indeed, given that Magistrate Judge Parker has already expressed doubt about the validity of the assignments and whether CCM's clients may later revoke their respective assignments, it is highly likely that these issues will reappear at later stages of litigation and cause distraction to the detriment of the class (potentially even threatening the class's claims).  *See, e.g.*, *Lundy v. Ideanomics, Inc*., 2020 WL 7389027, at *3 (S.D.N.Y.  Dec. 16, 2020) ("[I]f Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns."); *Schaffer v. Horizon Pharma Plc*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on ***potential*** risks.") (some emphasis in original); *Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012) (noting that standing questions "would require substantial attention at litigation, thus detracting from the class' best interests").

Moreover, while CCM correctly notes that some courts have appointed assignees as lead plaintiff, those cases do not resemble the issues attended to the more than 100 threadbare and ambiguous assignments here.  For example, in *Sokolow v. LJM Funds Management, Ltd.*, appointed a group of unrelated investors, including two investment managers that "***explained in some detail*** how it secured assignments [from its clients] and recognized its potential discovery-related obligations in connection with those assignments."  2018 WL 3141814, at *7 (N.D. Ill.

16

June 26, 2018); *see also Sokolow v. LJM Funds Mgmt., Ltd.*, No. 1:18-cv-01039-RMD (N.D. Ill. May 1, 2018), ECF No. 103 at 8-10, attached as Exhibit B to Amjed Decl. (delineating how the investment advisors "thoroughly explained the assignment process in the PSLRA class action context to individual clients" and advised the clients consult with their own counsel prior to signing the assignments, thus ensuring that the clients were fully informed about the implications of their assignments and that the defendants could not reasonably challenge them); Hr'g Tr. at 16-17 (discussing evidence provided by assignees in *LJM*).[3]  CCM provided no such evidence here.  *See Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*, 306 F.3d 726, 730 (9th Cir. 2002) (stating that adequacy is based on "pleadings and declarations" submitted by movant).  Moreover, should CCM attempt to submit evidence to mitigate its exposure to these unique defenses on reply, such efforts are "untimely" and will only raise more questions.  *See Array*, 2021 WL 5051649, at *3.  Judge Marrero recently rejected a tardy attempt to bolster standing with evidence submitted for the first time on reply (on a motion seeking reconsideration of the court's ruling finding unique defenses regarding standing).  *See id.*  Judge Marrero refused to consider this material and stated that the movant "should have submitted the [evidence] with its original motion" for appointment.  *Id.*  The same should apply to CCM.

Accordingly, CCM has also failed to carry its "heavy burden" to show that the Order was clearly erroneous or contrary to law with respect to CCM's unique defenses.  With CCM

---

[3]     CCM's reliance on *LJM*, *see* Objections at 15-16, undercuts its effort to set aside the Order's appointment of Mr. Viani and Mr. Price as a group.  As noted by *LJM*, "the 'trend' has been to allow small groups of investors to act as lead plaintiff even if they do not have pre-existing relationships."  2018 WL 3141814, at *3.  Moreover, the class's claims in *LJM* were not hinging on the validity of the assignees' assignments.  By appointing a group of investors, the class in *LJM* was protected because the "group can best represent the interests of the absent class members in the event that a Lead Plaintiff later withdraws, or if defendants successfully challenge one of the group during the pendency of the litigation."  *Molycorp*, 2012 WL 13013602, at *3.  CCM's appointment provides no such protection for the class and, given the Order's concerns about CCM, *see* Order at 16-17, it is virtually certain that CCM's appointment would create an unnecessary distraction for the class and jeopardize class certification.  *See Cent. Eur. Distrib.*, 2012 WL 3638629, at *13 (noting that the standing question "would require substantial attention at litigation, thus detracting from the class' best interests").

17

appropriately disqualified, Mr. Viani and Mr. Price would be entitled to appointment as Lead Plaintiff even if they did not claim a larger financial interest than CCM. Indeed, courts in the Second Circuit routinely appoint groups of unrelated investors where one member of the group possesses the single largest financial interest of any qualified movant before the court. *See, e.g.*, *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356-57 (S.D.N.Y. 2011) (appointing group where one member asserted the largest individual financial interest of all movants).

## III. CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court overrule CCM's Objections to Magistrate Judge Parker's Order.

Dated: June 7, 2022

Respectfully submitted,

**KESSLER TOPAZ MELTZER
& CHECK, LLP**

*S/ Naumon A. Amjed*
Naumon A. Amjed
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Counsel for Lead Plaintiff Robert J. Viani and Eric C. Price, as trustee for the Eric C. Price & Kristen B. Hennig-Price Rev. Living Trust UA 05/27/2015, and Lead Counsel for the Class*

18