# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD SOKOLOW, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:18-cv-01039-RMD |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| LJM FUNDS MANAGEMENT, LTD., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |
| STANLEY BENNETT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:18-cv-01312-ARW |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| LJM FUNDS MANAGEMENT, LTD., et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

[Caption continued on following page.]

JOINT REPLY BRIEF IN FURTHER SUPPORT OF LJM FUND INVESTOR GROUP'S AND
INVESTMENT ADVISOR GROUP'S MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

| | | |
|---|---|---|
| JAMES NOSEWICZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:18-cv-01589-RWG |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| LJM FUNDS MANAGEMENT, LTD., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT.......................................................................................................3

    A.     The Combined Investor Group Is the Presumptive Lead Plaintiff and Will Fairly and Adequately Represent the Class .............................................................3

    B.     The Competing Motions Should Be Denied and Their Challenges to the Combined Investor Group Rejected...................................................................5

        1.     The MWH Group Is Inadequate to Represent the Class.............................6

        2.     Ms. Godkin's Arguments Against the Investment Advisor Group and the LJM Fund Investor Group Are Without Merit...............................8

            a.     Tradition and SRS Properly Secured Assignments ........................8

            b.     The Combined Investor Group Is a Proper "Group" Under the PSLRA .................................................................................10

III. CONCLUSION...................................................................................................11

**TABLE OF AUTHORITIES**

**Page**

CASES

*BG Litig. Recovery I, LLC v. Barrick Gold Corp.*,
  180 F. Supp. 3d 316 (S.D.N.Y. 2016).......................................................................9

*Bhojwani v. Pistiolis*,
  No. 06 Civ. 13761 (CM), 2007 WL 9228588
  (S.D.N.Y. July 31, 2007) ...................................................................................4, 7

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
  No. 3:16-CV-1106, 2017 WL 5759361
  (N.D. Ohio Nov. 28, 2017)...................................................................................9

*City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.*,
  No. 11 C 8332, 2012 WL 1339678
  (N.D. Ill., Apr. 18, 2012) ...........................................................................2, 4, 5, 11

*Cordes & Co. Fin. Servs. v. A. G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)...................................................................................9

*CP Stone Fort Holdings, LLC v. John*,
  No. 16 C 4991, 2016 WL 5934096
  (N.D. Ill. Oct. 11, 2016)........................................................................................9

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11 Civ. 3658 (SAS), 2011 WL 4597553
  (S.D.N.Y. Oct. 4, 2011) .......................................................................................5

*Funke v. Life Fin. Corp.*,
  No. 99 Civ. 11877 (CBM), 2003 WL 194204
  (S.D.N.Y. Jan. 28, 2003).......................................................................................7

*In re Atl. Power Corp. Sec. Litig.*,
  No. 13-10537-DPW, 2014 WL 12628589
  (D. Mass. Mar. 31, 2014)......................................................................................6

*In re Bally Total Fitness Sec. Litig.*,
  No. 04 C 3530, 2005 WL 627960
  (N.D. Ill. Mar. 15, 2005)........................................................................................4

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ...............................................................................1

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...................................................................................3

**Page**

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
   No. 14 Civ. 8495 (RMB), 2015 WL 1345931
   (S.D.N.Y. Mar. 19, 2015) ................................................................................................4, 7

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
   No. 00 Civ. 152(JEI), 2000 WL 486956
   (D.N.J. Apr. 24, 2000) ........................................................................................................5

*Nosewicz v. LJM Funds Mgmt., Ltd., et al.*,
   No. 1:18-cv-01589 (N.D. Ill.) ...........................................................................................6

*Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008)......................................................................................................9, 10

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532
   (S.D.N.Y. Dec. 21, 2007) ...................................................................................................5

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008)...............................................................................................9

*West Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   No. 13-6731, 2014 WL 1395059
   (E.D. Pa. April 10, 2014) .................................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77z-1(a)(3)(B)(iii) .............................................................................................................4
   §77z-1(a)(3)(B)(iii)(I) .........................................................................................................1
   §77z-1(a)(3)(B)(iii)(I)(bb) ..................................................................................................3

Private Secuties Litigation Reform Act ............................................................................. *passim*

Federal Rules of Civil Procedure
   Rule 23 ..........................................................................................................................1, 3, 7

## I.    INTRODUCTION

The Combined Investor Group's financial interest of *$8,623,635* is larger than any other lead plaintiff movant and it is comprised of both the largest group loss ($6,923,381) and the largest loss of any individual investor (Mr. Wilson at over $1.1 million).[1]  The Combined Investor Group also satisfies the typicality and adequacy requirements of Rule 23 as it consists of two experienced investment advisory firms in the financial services industry and close-knit individual investors who jointly vetted and retained counsel in order to submit a lead plaintiff application.  Accordingly, the Combined Investor Group is presumptively the "most adequate plaintiff" under the standards established by the PSLRA.  *See* 15 U.S.C. §77z-1(a)(3)(B)(iii)(I).

Only two movants contest the Combined Investor Group's appointment — the MWH Group and Ms. Godkin — but they each have a smaller financial interest.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").  The MWH Group did not raise a single challenge to the adequacy of the LJM Fund Investor Group or the Investment Advisor Group in its response brief; instead its sole argument was that it thought it had the largest financial interest. *See* ECF No. 93.  Inexplicably, the MWH Group never specified the size of its financial interest in its opening brief which is itself sufficient reason to deny its motion; in any event, in its response brief, it claims a smaller financial interest ($8.27 million) than the Combined Investor Group ($8.6 million).  *Id*. at 2-3.  Since the MWH Group is itself a group of investors, it cannot complain that another group, especially one with larger losses, is seeking lead.  Moreover, as Ms. Godkin also

---

[1]    Unless otherwise indicated, all docket references are to the first-filed *Sokolow* action, all emphasis is added, and internal citations are omitted.  Capitalized terms not otherwise defined herein shall have the same meaning as those found in the Joint Response Brief in Further Support of LJM Fund Investor Group's and Investment Advisor Group's Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Joint Response").  *See* ECF No. 97.

argues in her response brief, the MWH Group's losses are inflated as many of the assignments appear invalid, and, at a minimum, the defective assignments raise typicality and adequacy arguments that make the MWH Group unfit to serve as lead plaintiff in this case. *See* ECF No. 97 at 7-11. Thus, its motion should be denied.

Ms. Godkin's motion should likewise be denied because she has a substantially smaller financial interest, which is a tiny fraction of the loss of the Combined Investor Group and even a small fraction of the loss of its largest single investor, Mr. Wilson. Ms. Godkin's sole argument to overcome her much smaller financial interest is to claim that the Court should disallow the formation of any groups. But courts frequently appoint groups as lead plaintiff, and in fact, her attorneys sought and were appointed as lead counsel for the combined investor group that was formed after the initial motions were filed in *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *9 (N.D. Ill., Apr. 18, 2012) (St. Eve, J.) ("*Hospira*") (appointing Robbins Geller and Motley Rice as co-lead counsel for combined investor group over objection of competing movant). Moreover, Ms. Godkin's unfounded criticism of the process through which Tradition and SRS obtained client assignments should be rejected, as Tradition and SRS's client assignments were obtained in a very different manner than the process employed by her investment advisors.[2]

The Combined Investor Group has the largest collective loss of any movant and has demonstrated a strong commitment to prosecuting this case in an efficient and effective manner by establishing a "general working strategy" in order to ensure this leadership structure "will function smoothly and coordinate the litigation strategy and decision making in this litigation." *Hospira*,

---

[2] *See also* Reply Declaration of Michael C. Provine and Michael P. Riordan in Further Support of the Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Reply Decl."), attached as Exhibit A (explaining the manner in which Tradition and SRS informed each client of the lawsuit and gathered assignments).

2012 WL 1339678, at *8; *see also* ECF No. 97 at 4-7.  Accordingly, the Court and members of the

class can be assured that the Combined Investor Group will seek to obtain the best result for the class

and has retained highly experienced counsel to accomplish that goal.

## II.     ARGUMENT

### A.     The Combined Investor Group Is the Presumptive Lead Plaintiff and Will Fairly and Adequately Represent the Class

The Combined Investor Group has the largest financial interest in this litigation and has made

a *prima facie* showing that it meets the requirements of Rule 23.  Because no evidence can be

offered to rebut the presumption that the Combined Investor Group is the most adequate

representative for the class, it should be appointed Lead Plaintiff.  *See* 15 U.S.C. §77z-

1(a)(3)(B)(iii)(I)(bb); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the

presumption is triggered, the question *is not* whether another movant might do a better job of

protecting the interests of the class than the presumptive lead plaintiff; instead, the question is

whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]'

job.").

First, the MWH Group's purported loss of $8.2 million and Ms. Godkin's loss of $188,000 is

substantially less than the Combined Investor Group's $8.6 million loss.  Aside from its smaller

financial interest, the Court should deny the MWH Group's motion for several independent reasons.

*See* ECF No. 97 at 7-11.  Its untimely claimed losses are substantially overstated because they

include a number of assignments (and related losses) which are signed ***by*** the advisor for the ***benefit***

of the advisor and for which the MWH Group has not established standing.  *See* ECF No. 97 at 8-9.

These incorrect calculations, which now form the primary basis for the MWH Group's purported

"largest financial interest," undermine the entire foundation for the MWH Group's lead plaintiff

application.  *See, e.g., Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (NKF), 2007 WL 9228588, at

*3 (S.D.N.Y. July 31, 2007) (miscalculation of claimed losses, while small relative to total holdings, still "indicates a certain carelessness about detail that undermines the adequacy" of the lead plaintiff movant); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ. 8495 (RMB), 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (concluding incorrect loss calculations "undermine[] [movant's] adequacy as lead plaintiff").[3]

Ms. Godkin claims one of the smallest losses of any of the movants and therefore does not represent the largest financial interest. ECF No. 54 at 5. Her sole argument, that the single investor with the largest loss, rather than a group, should be appointed is contrary to the PSLRA which expressly allows for multiple investors to serve as Lead Plaintiff in federal securities class actions. *See* 15 U.S.C. §77z-1(a)(3)(B)(iii) (providing that the court shall appoint a "person or group of persons" to serve as Lead Plaintiff). It also ignores that this district has "permitted amended motions by groups that were combined after the 60 day deadline as long as each member of the amended group previously filed a timely motion for appointment of lead plaintiff." *Hospira,* 2012 WL 1339678, at *3. Moreover, Ms. Godkin's loss ($188,000) is far less than Mr. Wilson ($1.1 million), who is a member of, and supports, the Combined Investor Group.

Second, the appointment of the Combined Investor Group is appropriate under these circumstances because it most accurately reflects the composition of the investors seeking appointment as lead plaintiff here (individual investors and investment advisors) and therefore the class. The Combined Investor Group joins the largest, properly calculated, claimed loss by advisors (the Investment Advisor Group) and the largest loss by individuals (the LJM Fund Investor Group)

---

[3]     To the extent the MWH Group contends that certain ancillary "*Lax*" factors should determine financial interest (*see* ECF No. 93 at 3) over and above "losses", that argument is misplaced. *See In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.").

so any movant that claimed a smaller financial interest cannot legitimately challenge the joint motion for lack of diverse representation. Courts have considered such diversity within a leadership group a positive factor in appointing lead plaintiff. *See Hospira,* 2012 WL 1339678, at *8 (finding "[t]his diversity, along with the [post motion joint group's] largest financial interest in this litigation and the other factors discussed above, makes it the most capable of adequately representing the interests of the class members"); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 00 Civ. 152(JEI), 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs in view of the desirability of having both institutional investors and individual investors as lead plaintiffs "since each may bring a unique perspective to the litigation").

Finally, the Combined Investor Group has demonstrated that it has a working strategy that will allow it to work cohesively and make informed decisions to control the litigation. *See* ECF Nos. 97 at 5-6 and 97-1 at ¶¶14-15. The members of the Combined Investor Group are committed to zealously and efficiently prosecuting this case in the best interests of the class. Thus, they should be appointed lead plaintiff.

### B. The Competing Motions Should Be Denied and Their Challenges to the Combined Investor Group Rejected

Because the Combined Investor Group has met all the requirements to justify its appointment as lead plaintiff, the Court need not consider the competing motions of the MWH Group or Ms. Godkin. *See Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) ("[T]he inquiry can stop here, now that the Court has determined [which movant] has the largest financial interest and is otherwise typical and adequate."); *Vladimir v. Bioenvision, Inc.,* No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532, at *6 (S.D.N.Y. Dec. 21, 2007) ("Once the court 'identifies the plaintiff with the largest stake in the litigation, further inquiry must

- 5 -

focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.'"). Moreover, each of the competing movants is inadequate to represent the class.

### 1. The MWH Group Is Inadequate to Represent the Class

Even if the Court were to consider the competing motion of the MWH Group, and it need not, the submissions of the MWH Group raise substantial concerns regarding its typicality and adequacy, which Ms. Godkin challenges as well. ECF Nos. 95 at 3, 6-7 and 97 at 8-11.

First, as set forth in the Combined Investor Group's response brief, the MWH Group's failure to quantify its financial interest in its initial motion is sufficient ground to deny its application. *See* ECF No. 97 at 7-11. The MWH Group's "cho[ice] not to provide specificity regarding its loss amount . . . bespeaks a less than full commitment to transparency in providing the court with information that it ultimately would require to make its decision." *In re Atl. Power Corp. Sec. Litig.*, No. 13-10537-DPW, 2014 WL 12628589, at *1 n.1 (D. Mass. Mar. 31, 2014) (rejecting movant and noting that the movant's failure to provide losses suggests "that [the movant], or perhaps more accurately, its designated counsel, hoped to keep its options open while reconfiguring tactics for its approach to consideration of the selection of lead plaintiff and their counsel").

This less than full commitment to fully represent the class can also be seen in a comparison of the complaints filed by the MWH Group's counsel and the Combined Investor Group's counsel. The complaint filed by counsel for the MWH Group is only 10 pages long and consists of barely one page of substantive allegations. ECF No. 1 at 4-5. In contrast, the Combined Investor Group's co-lead counsel filed a 25 page complaint with nearly 15 pages of substantive allegations, which although still concise, reflects a more comprehensive and careful analysis, appropriate to the high stakes involved in this litigation. *See Nosewicz v. LJM Funds Mgmt., Ltd., et al.*, No. 1:18-cv-01589 (N.D. Ill.) Complaint at ¶¶26-60 (ECF No. 1).

Second, a significant portion of the assignments proffered with the MWH Group's initial motion are invalid because they ***were not*** signed by the assignor, raising questions of standing, typicality, and adequacy. Moreover, the use of facially invalid assignments further raises issues regarding the commitment to represent the best interests of the class under Rule 23. *See generally, Bhojwani*, 2007 WL 9228588, at *3 (miscalculation of claimed losses, while small relative to total holdings, still "indicates a certain carelessness about detail that undermines the adequacy" of the lead plaintiff movant); *Tesco*, 2015 WL 1345931, at *3 (same).

Contrary to the thorough and informed assignment-gathering process executed by Tradition and SRS, as articulated in the Reply Declaration and discussed below, the MWH Group offers little explanation for ***how*** or ***why*** the clients of each advisor executed their assignments. *See Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM), 2003 WL 194204, at *5 (S.D.N.Y. Jan. 28, 2003) (client solicitations are "contrary to the purpose of the PSLRA, under which Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff"). The MWH Group's assignments appear to broadly waive any claims that the financial advisor firms' clients (*i.e.*, the assignors) might have against the firms in connection with their LJM trades. This concern is echoed by Ms. Godkin, a customer of More For Less, one of the advisor members of the MWH Group, which caused Ms. Godkin to reject the assignment and file an independent lead plaintiff motion. *See* ECF No. 96. The assignments raise serious questions that could result in negative consequences for the putative class when defendants challenge them during discovery and class certification. *See* ECF Nos. 95 at 3, 6-7 and 97 at 8-11. Given the availability and adequacy of the Combined Investor Group, there is no reason to burden the class with these issues that are clearly limited to the MWH Group. For all the foregoing reasons, the Court should appoint the Combined

Investor Group as Lead Plaintiff, and approve its selection of Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP as Co-Lead Counsel.

### 2. Ms. Godkin's Arguments Against the Investment Advisor Group and the LJM Fund Investor Group Are Without Merit

#### a. Tradition and SRS Properly Secured Assignments

Ms. Godkin improperly challenges all assignments and all groups, when both have been found to be proper in appropriate circumstances. While Ms. Godkin raises legitimate concerns with the MWH Group's assignment aggregation process based on her personal experience with More For Less, no similar arguments can be raised regarding the assignments obtained by Tradition and SRS from their respective clients or Tradition's and SRS' ability to adequately and effectively oversee the class in this litigation.

Representatives from both Tradition and SRS held numerous verbal and electronic communications with their respective clients in the wake of the LJM collapse, in order to keep their clients informed about the various options to recover losses incurred as a result of defendants' misconduct. *See* Reply Decl. ¶5. After deciding to proceed as lead plaintiff, both Michael C. Provine and Michael P. Riordan, as managing members of Tradition and SRS, respectively, thoroughly explained the assignment process in the PSLRA class action context to individual clients. *See id.* ¶6. Significantly, as part of those discussions, the managing members advised each and every client to consult with their own advisors and counsel prior to signing and returning the assignment of claims in order to ensure that the interests of respective individual clients were aligned with their own understanding of the case. *See id.* Once the lead plaintiff filing date arrived, and the assignment gathering process came to an end, Tradition and SRS received close to full participation from clients eligible to participate in the LJM securities litigation. *See id.* ¶7. Thus, each and every assignment received by Tradition and SRS was the product of an open, thorough and informed

process with both Michael C. Provine and Michael P. Riordan serving as central liaisons for their respective firms. *See id.* ¶7.

Through the assignments, each individual investor assigned to Tradition or SRS "all rights, title, and interest in any and all claims, demands, and causes of action of any kind whatsoever arising from violations of the U.S. federal securities laws, other applicable statutes, and common law doctrines, as may be asserted against LJM and related defendants, in connection with the purchase of the securities of LJM." ECF No. 97-3. "[A]n assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (citing *Sprint Commc'ns Co. L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008)). Accordingly, when Tradition and SRS filed the lead plaintiff motion on April 10, 2018, they had—and still have—"legal title to . . . the claim[s]" in this Action. As such, there is no question that Tradition and SRS satisfy the "injury-in-fact" requirement for Article III standing. *W. R. Huff*, 549 F.3d at 105, 106.[4]

The assignment of claims in an appropriate manner, as was done by customers of Tradition and SRS, is designed to promote efficiency and reduce costs and has been widely accepted by courts in the securities and class action leadership context. *See, e.g.*, *BG Litig. Recovery I, LLC v. Barrick Gold Corp.*, 180 F. Supp. 3d 316, 330 (S.D.N.Y. 2016) (rejecting standing and other efficiency-related arguments brought against vehicle created to receive assignments and litigate on behalf of assignors); *CP Stone Fort Holdings, LLC v. John*, No. 16 C 4991, 2016 WL 5934096, at *3 (N.D.

---

[4]    Any attempt to challenge the timeliness of Tradition's or SRS' assignments must be rejected where, as here, both funds received the assignments prior to filing the lead plaintiff motion. *See Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-CV-1106, 2017 WL 5759361, at *6 (N.D. Ohio Nov. 28, 2017) (finding assignments timely executed where signed prior to filing lead plaintiff motion).

Ill. Oct. 11, 2016) (same); *see also Cordes & Co. Fin. Servs. v. A. G. Edwards & Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007) ("We see nothing about the perils of claim assignment in the context of class membership and class representation that is qualitatively different from similar dangers that inhere in permitting the pursuit of assigned legal claims generally, which, as we have noted, is allowed."). Even if the assignment presents certain discovery problems, and it should not, "courts are not helpless in the face of such problems. For example, a district court can, if appropriate, compel a party to collect and produce whatever discovery-related information is necessary." *Sprint Commc'ns*, 554 U.S. at 292. Moreover, the Combined Investor Group also consists of the LJM Fund Investor Group which consists of individual investors, not advisors with assigned claims, to ensure the class is adequately represented by other types of investors. Any concern regarding an "unwieldy" leadership structure is misplaced given the declarations submitted, as well as the Reply Declaration, which makes clear the group can work cohesively and that their interests are squarely aligned. *See* Reply Decl. ¶6. Consequently, the Court should reject Ms. Godkin's attempt to discredit the Tradition and SRS assignments.

**b.     The Combined Investor Group Is a Proper "Group"
Under the PSLRA**

The MWH Group did not raise any challenge to the adequacy and legitimacy of the LJM Fund Investor Group. *See* ECF No. 93 at 1-5. However, Ms. Godkin challenges the LJM Fund Investor Group, arguing that all groups are improper. She is wrong. The Joint Declaration submitted with the LJM Investor Group's initial motion explains why its members moved together, and how they intend to jointly serve as lead plaintiff to maximize the recovery for the class in this case, which makes it a clearly proper group under the PSLRA. Such an organic set of investors represents the "gold standard" under the PSLRA and justifies their appointment. *See West Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-6731, 2014 WL 1395059, at *8 (E.D. Pa.

April 10, 2014) (aggregating losses where "the individual members of the group decided to join together to litigate this action").

Moreover, given that it was natural for the largest advisor group to join the largest individual investor group and seek to prosecute the case cooperatively for the benefit of all types of class members, any challenge regarding the formation of the Combined Investor Group is without merit. *See Hospira,* 2012 WL 1339678, at *8. In fact, the same firm (Motley Rice) seeking to be lead counsel for Ms. Godkin, was appointed co-lead counsel for the combined investor group appointed as lead plaintiff in *Hospira*.

## III.    CONCLUSION

For all of the foregoing reasons, the Combined Investor Group's motion should be granted in its entirety.

DATED:  May 1, 2018

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)


                                    */s/ James E. Barz*
                                    JAMES E. BARZ

200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LABATON SUCHAROW LLP
CHRISTOPHER J. KELLER
ERIC J. BELFI
FRANCIS P. MCCONVILLE
140 Broadway
New York, NY  10005
Telephone: 212/907-0700
212/818-0477(fax)

*[Proposed] Lead Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Barz, hereby certify that on May 1, 2018, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


_/s/ James E. Barz_
JAMES E. BARZ