**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYSAFE LIMITED f/k/a FOLEY TRASIMENE ACQQUISITION CORP. II SECURITIES LITIGATION, | Master File No. 1:21-cv-10611-ER-KHP |

**CAMPBELL CAPITAL MANAGEMENT INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE KATHARINE H. PARKER'S OPINION AND ORDER DATED MAY 10, 2022 APPOINTING LEAD PLAINTIFFS AND APPROVING LEAD COUNSEL**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    VIANI AND PRICE CANNOT AGGREGATE THEIR FINANCIAL INTERESTS....... 2

     A.     Viani and Price Have Not Established that They Would Better Serve the Class Together Rather than Separately.............................................................................. 2

     B.     A Single Conference Call and a Boilerplate Joint Declaration Do Not Justify Aggregation Under *Varghese* .................................................................................. 3

     C.     Viani and Price Were Assembled by Their Counsel for the Purpose of Aggregating Their Financial Interests ......................................................................................... 4

     D.     The Cases Viani and Price Cite to Justify Their Aggregation Do Not Support Viani and Price and Most of Them Directly Support CCM ............................................ 5

III.   VIANI AND PRICE HAVE FAILED TO REBUT THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF............................................................................. 8

     A.     Viani and Price Have Failed to Prove CCM's Assignments May Be Revocable... 8

     B.     Viani and Price Have Failed to Prove CCM's Assignments Were Forged or Signed by Unauthorized Persons ...................................................................................... 9

IV.   CONCLUSION..................................................................................................... 10

## TABLE OF AUTHORITIES

<u>CASES</u>

*Cohen v. Luckin Coffee Inc.*,
  2020 WL 3127808 (S.D.N.Y. June 12, 2020) ........................................................................ 2

*Constance Sczesny Tr. v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................................................... 8

*Crass v. Yalla Grp. Ltd.*,
  2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021) .......................................................................... 6

*Cushman v. Fortress Biotech*, Inc.,
  2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021) ................................................................. 3, 4, 6

*Elstein v. Net1 UEPS Techs., Inc.*,
  2014 WL 3687277 (S.D.N.Y. July 23, 2014) .................................................................. 1, 2, 5

*Fries v. N. Oil & Gas, Inc.*,
  2017 WL 1880819 (S.D.N.Y. May 8, 2017) ................................................................. 1, 2, 3, 4

*Garnett v. RLX Tech. Inc.*,
  2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021) ........................................................................ 6

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................................... 7

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ....................................................................... 2

*Lavin v. Virgin Galactic Holdings, Inc.*,
  2021 WL 5409798 (E.D.N.Y. Sept. 17, 2021) ....................................................................... 7

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ....................................................................... 2

*Sokolow v. LJM Funds Mgmt., Ltd.*,
  2018 WL 3141814 (N.D. Ill. June 26, 2018) ................................................................. 8, 9, 10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 6

*Vladimir v. Bioenvision, Inc.*,
  2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ....................................................................... 8

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ................................................................................................ 9

<u>RULES</u>

FED. R. CIV. P. 72(a) ................................................................................................................ 1

CCM submits this reply memorandum of law in support of its objections (Dkt. No. 72, "CCM Obj.") to Magistrate Judge Katharine H. Parker's Order, and in response to Viani and Price's opposition to CCM's objections (Dkt. No. 73, "Viani/Price Opp.").[1]

## I.    INTRODUCTION

In their 18-page opposition brief, Viani and Price ignore the standard set forth by this Court because they cannot satisfy it. To properly aggregate their financial interests and leapfrog over CCM, the individual movant with the largest financial interest, Viani and Price must demonstrate (1) that they "in aggregate would better serve the class than if they were separate," and (2) that they were not "formed into a group as a mere construct cobbled together by their attorneys." *Fries v. N. Oil & Gas, Inc.*, 2017 WL 1880819, at *3 (S.D.N.Y. May 8, 2017); *see also Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *3 (S.D.N.Y. July 23, 2014) (disaggregating a group who "offered no reason why the Class would not be better served by a single plaintiff" and appeared to be "cobbled together" to "achiev[e] the lead plaintiff designation").

Viani and Price do not offer a reason why they would better serve the class together rather than individually. The closest they come is to claim that, together, they would provide the class with the "benefits of joint decision-making." However, courts do not regard this purported benefit as sufficient to aggregate. Moreover, there are significant downsides to joint decision-making here since Viani and Price have no dispute resolution mechanism nor history of resolving disputes with each other. As such, every litigation decision has the potential to result in a stalemate.

Viani and Price also fail to provide any plausible reason for their grouping other than to aggregate their financial interest, and they do not dispute that their group was formed at the prompting of their counsel. As such, they are exactly the type of group this Court, and other courts

---

[1] All capitalized terms herein are defined in CCM Obj.

in this District, routinely reject—a group cobbled together by its counsel to achieve the lead plaintiff designation.

Since Viani and Price cannot aggregate, CCM has the largest financial interest and is the presumptively most adequate plaintiff. Since the presumption has not been rebutted (as discussed herein), CCM should be appointed as lead plaintiff.

## II.    VIANI AND PRICE CANNOT AGGREGATE THEIR FINANCIAL INTERESTS

### A.    Viani and Price Have Not Established that They Would Better Serve the Class Together Rather than Separately

In order for Viani and Price to aggregate their financial interests "this court has required that [they] first demonstrate that appointment as a group would best serve the class." *Elstein*, 2014 WL 3687277, at *3; *see also Fries*, 2017 WL 1880819, at *3 (to aggregate financial interests, unrelated plaintiffs must provide "evidence" that they "in aggregate would better serve the class than if they were separate"). For example, in *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808 (S.D.N.Y. June 12, 2020), the court allowed aggregation because (among other reasons) "together, they would have standing to bring claims under both the Securities Act and the Securities Exchange Act." *Id.* at *6.

Here, Viani and price have not established that they would better serve the class together rather than if one of them were appointed as the sole lead plaintiff. In fact, the only purported benefit Viani and Price point to is that together they would "provide the class the benefits of joint decision-making." *See* Viani/Price Opp. at 8. As an initial matter, this purported benefit alone cannot justify aggregation because every single group can claim it. *See Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *8-*9 (S.D.N.Y. Mar. 13, 2018) (disaggregating a group that "submitted a Joint Declaration stating that they would 'exercise joint decision-making'"); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (same). Moreover,

Viani and Price fail to acknowledge the downsides of joint decision-making. For example, Viani and Price have no dispute resolution mechanism. As such, any litigation decision has the potential to result in a stalemate. This risk is compounded by the fact that Viani and Price just recently met through their counsel. They do not have a track record of successfully resolving disputes with each other. As such, Viani and Price have failed to provide evidence that they "in aggregate would better serve the class than if they were separate" and therefore cannot aggregate their financial interests. *Fries*, 2017 WL 1880819, at *3.

    **B.    A Single Conference Call and a Boilerplate Joint Declaration Do Not Justify Aggregation Under *Varghese***

Application of the *Varghese* factors further demonstrates that grouping Viani and Price would not best serve the class. *See Fries*, 2017 WL 1880819, at *2 (applying the *Varghese* factors to determine whether "grouping would best serve the class"). Viani and Price have no pre-litigation relationship. Their involvement in the case has been minimal—they happened to contact the same counsel in response to a press release about the case, spoke on a conference call, and then signed a boilerplate joint declaration one day before their motion was filed. They have no plan for cooperation—no dispute resolution mechanism. And they admit that the group was formed at the prompting of their counsel. As such, "there is no evidence upon which this Court can find that [Viani and Price] in aggregate would better serve the class than if they were separate." *Id.* at *3.

Viani and Price maintain, however, that their single conference call and boilerplate joint declaration are sufficient to satisfy *Varghese*. *See* Viani/Price Opp. at 10-13. They rely extensively on *Cushman v. Fortress Biotech*, Inc., 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021) to support their analysis. *See* Viani/Price Opp. at 10-13 ("The court's decision in [*Cushman v.*] *Fortress Biotech* upholding a magistrate judge's appointment of a group of unrelated investors is instructive."). First, *Cushman* ultimately supports CCM because the *Cushman* court allowed

3

aggregation only after finding that the group did not aggregate "to create an artificially large financial interest," because both group members "each individually allege[d] more significant losses than" the competing individual movant. *See* 2021 WL 1526172, at * 3. Here, CCM has a larger financial interest than either Viani or Price, and their aggregation "create[s] an artificially large financial interest." Second, with respect to application of the *Varghese* factors, *Cushman* is an extreme outlier, and in some instances turns the factors on their heads. For example, in contrast to *Varghese*, the *Cushman* court reasons that a group of unrelated investors "could be in a better position" to represent the class. *See Cushman*, 2021 WL 1526172, at *2. The *Cushman* court also rejected the claim that a group being "formed by its counsel . . . hinders the [group's] ability to adequately represent the putative class." *Id.* at *3. This is not in line with the overwhelming weight of authority in this District. *See* CCM Obj. at 7-11. As such, the Court should decline to follow *Cushman*'s lead with respect to the *Varghese* factors.

To buttress *Cushman*, Viani and Price reach for out-of-Circuit cases. *See, e.g.*, Viani/Price Opp. at 10, 11. 13 (citing *Molycorp* from the District of Colorado, and *Snap* and *KushCo* from the Central District of California). In contrast, CCM's analysis is supported by relevant authority in this District, including earlier decisions of this Court. *See* CCM Obj. at 7-11. As such, the weight of relevant authority, applying *Varghese*, strongly supports the conclusion that Viani and Price would not better serve the class "in aggregate" than "if they were separate." *See Fries*, 2017 WL 1880819, at *3.

### C.     Viani and Price Were Assembled by Their Counsel for the Purpose of Aggregating Their Financial Interests

"[C]ourts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if . . . the court . . . is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have

the greatest financial interest in the action." Order at 11 (collecting cases).

The record in this action strongly suggests Viani and Price were grouped only so their counsel could try to aggregate their financial interests. Viani and Price did not know each other before this litigation. Their counsel introduced them, convened a single conference call prior to their joint motion, and had them sign a boilerplate joint declaration one day before their joint motion was filed. On this basis, their counsel aggregated Viani and Price's financial interests to leapfrog over CCM.

Despite being given yet another opportunity to provide a reason for their grouping in their opposition other than to aggregate their financial interests, Viani and Price have failed to provide a compelling reason. The only thing that comes close is their claim that grouping would "provide the class the benefits of joint decision-making," discussed *supra*. However, this reason appears to be nothing more than a thin *post hoc* justification because "joint decision-making" by two individuals with no dispute resolution mechanism or history of cooperation is more likely to be a detriment to the class than a benefit.

Viani and Price were assembled by their counsel to do exactly what they have done here—aggregate their financial interests to leapfrog over a single movant with a larger financial interest. Thus, "this group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation" and thus may not aggregate their losses. *Elstein*, 2014 WL 3687277, at *5.

### D. The Cases Viani and Price Cite to Justify Their Aggregation Do Not Support Viani and Price and Most of Them Directly Support CCM

With respect to the central issue in this dispute—whether Viani and Price may aggregate their financial interests to leapfrog over CCM—Viani and Price claim that "courts routinely allow groups with no pre-litigation relationship to aggregate their losses." *See* Viani/Price Opp. at 7. In support of this assertion, they provide a string citation of six cases. *Id.* at 7-8. However, these cases

do not ultimately support Viani and Price, and most directly support CCM.

In three of the six cases, the court allowed aggregation only after finding that the grouping did not, unlike here, cause the group to leapfrog over another individual movant with a larger financial interest. *See Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021) (the group "was [not] formed to box out an outside candidate for lead plaintiff" since "Li and Xu would have been the first and second highest [loss] among all movants"); *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) ("the group was [not] formed to box out an outside candidate for lead plaintiff" because one group member "would have [the largest loss] among all movants"); *Cushman*, 2021 WL 1526172, at *2 (the group members "have larger financial interests in this litigation than does [the competing individual movant]"). Moreover, in *Crass* and *Cushman*, unlike here, the courts relied on the fact that the groups had a dispute resolution mechanism. *See Crass*, 2021 WL 5181008, at *7 ("Li, who suffered the largest loss, would be the deciding vote in a dispute" which is "consistent with the PSLRA's presumption that the movant with the largest financial interest will control the litigation"); *Cushman*, 2021 WL 1526172, at *2 (the group "was sufficiently cohesive" in part because the members "agreed to a conflict-resolution mechanism"). As such, these three cases support CCM, not Viani and Price.

In one of the six cases, the court ultimately rejected aggregation for reasons that are also present here. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (rejecting aggregation of a group that asserted it "is small and cohesive so that coordinated decision making should not present any difficulties" because, among other reasons, it did not "describe . . . why the group was formed" nor provide "information about how such aggregation would benefit the class").

The remaining two cases are so factually disanalogous to this case that they do not provide

6

any meaningful guidance. First, in *Lavin v. Virgin Galactic Holdings, Inc.*, 2021 WL 5409798 (E.D.N.Y. Sept. 17, 2021) four individual movants filed competing lead plaintiff motions. *See id.* at *1. The two with the smallest financial interests (approximately $47,000 and $10,000 respectively) filed notices of non-opposition to the two movants with the largest financial interests (approximately $355,000 and $130,000 respectively). *See id.* at *5-6 n.6. Thereafter, the two largest movants decided to team up and filed a "joint stipulation and proposed order to appoint co-lead plaintiffs and co-lead counsel." *Id.* at *1. As such, this is not a case where the group aggregated to leapfrog over another individual movant. Moreover, the two smaller competing movants did not oppose the appointment of the two-person group.

Second, in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009), the court was confronted with three lead plaintiff motions filed by three groups of institutional investors. *See id.* at 269. The two smaller groups challenged the aggregation of the larger "Public Pension Funds" group, which the court described as a "group . . . of large public pension funds in the United States and Europe" which are "the type of sophisticated institutional investors envisioned by Congress in the enactment of the PSLRA." *Id.* at 270. However, the court rejected the challenge because the Public Pension Funds "made plans for joint oversight," "have internal personnel to represent them [who] have met in person and on conference calls," and that "[s]uch demonstrated cooperation among . . . sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel." *Id.* Here, Viani and Price are retail investors that spoke on a single conference call convened by their counsel shortly before their motion was filed, and whose aggregation is challenged, not by another group, but by a single movant they are attempting to leapfrog. As such, the reasoning of *Bank of America* does not apply to Viani and Price.

7

Accordingly, Viani and Price's own authority counsels against allowing them to aggregate, and in favor of finding that CCM has the largest financial interest.

### III.    VIANI AND PRICE HAVE FAILED TO REBUT THE PRESUMPTION THAT CCM IS THE MOST ADEQUATE PLAINTIFF

Since Viani and Price cannot aggregate their financial interests, CCM has the largest financial interest. Moreover, CCM filed a timely motion and made the required preliminary showing that it satisfies the relevant requirements of Rule 23. As such, CCM is the presumptively most adequate plaintiff.

Viani and Price attempt to rebut the presumption by first arguing that the Defendants "can *potentially* argue" that CCM's assignments are unilaterally revocable. Viani/Price Opp. at 15 (emphasis in original). Second, Viani and Price argue that CCM provided no evidence that "the assignments were [not] forged or signed by unauthorized persons." *See Sokolow v. LJM Funds Mgmt., Ltd.*, 2018 WL 3141814, at *7 (N.D. Ill. June 26, 2018) (cited in Viani/Price Opp. at 16-17). Both attacks fail.

### A.    Viani and Price Have Failed to Prove CCM's Assignments May Be Revocable

As an initial matter, Viani and Price clarify in their opposition that they are *not alleging* that CCM's assignments are in fact revocable. *See* Viani/Price Opp. at 15 ("the question is not whether the assignments ultimately are or are not revocable"). Rather, Viani and Price claim only that the Defendants might "potentially argue" that they are. Speculation about what the Defendants might later argue without getting into the details of the supposed defense is insufficient to rebut the presumption because "proof" of the unique defense requires "specific support" and "evidence." *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same).

Moreover, as CCM has repeatedly pointed out, its assignments do not contain a provision

8

allowing for unilateral revocation by the assignor, which was the precise problem identified in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107-08 (2d Cir. 2008). Neither Viani and Price nor the Order has presented a legal theory (let alone a plausible legal theory) as to why the assignments are nevertheless still possibly revocable. Without such an argument or finding, there is no "proof" that CCM is subject to a unique defense.

**B.      Viani and Price Have Failed to Prove CCM's Assignments Were Forged or Signed by Unauthorized Persons**

For the first time at the lead plaintiff hearing Viani and Price cited *Sokolow v. LJM Funds Management, Ltd.*, 2018 WL 3141814 (N.D. Ill. June 26, 2018) to claim that CCM failed to provide sufficient evidence that its assignments are valid. *See* Transcript ("Tr.") (Dkt. No. 72-2) 16:24–18:13. Viani and Price now echo this late argument in their opposition to CCM's objections, and claim it is a second basis on which to find CCM is subject to a unique defense. *See* Viani/Price Opp. at 16-17.

However, Viani and Price's characterization of *LJM* is incorrect. In *LJM* a competing movant challenged the presumption that investment advisor assignees were the most adequate plaintiffs by claiming that there were "serious questions about the validity and propriety of some of the assignments." *See* 2018 WL 3141814, at *7. The challenger claimed that some of the assignments were "illegibly signed by an anonymous signatory, signed by the same signatory, and/or left a second signature line blank." *Id.* The court rejected the challenge because "[e]ach assignment . . . clearly identifies the entity assigning the claims," and there was an "affidavit representing that the investment advisors ha[d] received assignments from their clients." *Id.* The court concluded: "Based on the materials before the Court, the Court has no reason to conclude that the assignments were forged or signed by unauthorized persons." *Id.* The court then provided additional justification for its holding by noting that "[t]o the contrary, the [assignee group] has

9

explained in some detail how it secured assignments and recognized its potential discovery-related obligations in connection with those assignments." *Id.* In other words, the *LJM* court rejected an attack on an assignee because the challenger failed to establish that the assignments were forged or signed by unauthorized persons. *LJM* did not, however, set a general requirement that every assignee lead plaintiff movant submit a declaration mirroring the one in *LJM*.

Regardless, CCM submitted a declaration with its lead plaintiff motion regarding the assignments and its relationship to the assignors. *See* Dkt. No. 41-4. Moreover, when Viani and Price first raised their *LJM*-related argument at the lead plaintiff hearing, counsel for CCM provided additional information regarding how the assignments were obtained. *See* Tr. 18:20–19:3 ("[W]e did explain to the individuals who were signing the assignments [] the nature of [the] assignments . . . what their legal affect would be, and we also did advise that if they had questions, they were free to consult their own counsel, in addition to us or CCM, about the issue."). CCM's counsel also explained at the hearing that the persons that signed the assignments were identified "based on records that are maintained by CCM" which identify who has authority to act on behalf of the accounts at issue. Tr. 7:5–9. As such, like the challenger in *LJM*, Viani and Price have failed to demonstrate that CCM's assignments were forged or signed by unauthorized persons. Accordingly, Viani and Price have failed to rebut the presumption that CCM is the most adequate plaintiff.

## IV.   CONCLUSION

CCM's objections to Magistrate Judge Katharine H. Parker's Order should be sustained, CCM's Motion should be granted, CCM should be appointed as lead plaintiff, and CCM's selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved.

Respectfully submitted,

DATED: June 14, 2022                    **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Campbell
Capital Management Inc. and Proposed Lead
Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

11

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 14, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 14, 2022, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh