# EXHIBIT A

No *Shepard's* Signal™
As of: April 25, 2023 9:54 PM Z

# Pampena v. Musk

United States District Court for the Northern District of California

April 24, 2023, Decided; April 24, 2023, Filed

Case No. 22-cv-05937-CRB

**Reporter**
2023 U.S. Dist. LEXIS 71169 *

GIUSEPPE PAMPENA, Plaintiff, v. ELON MUSK, Defendant.

## Core Terms

lead plaintiff, Investor, appointment, lead counsel, financial interest, largest, shares, recoverable, adequacy, defenses, certification, class action, class member, calculation, argues, select

**Counsel:** [*1] For Giuseppe Pampena, individually and on behalf of all others similarly situated, Plaintiff: Francis A. Bottini, Jr., LEAD ATTORNEY, Bottini & Bottini, Inc., La Jolla, CA; Mark Cotton Molumphy, LEAD ATTORNEY, Cotchett, Pitre & McCarthy LLP, Burlingame, CA; Albert Y. Chang, Bottini and Bottini, Inc., La Jolla, CA; Joseph W. Cotchett, Cotchett Pitre & McCarthy LLP, Burlingame, CA; Julia Q. Peng, Cotchett, Pitre and McCarthy, LLP, Burlingame, CA; Tyson Carl Redenbarger, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA.

For Elon Musk, Defendant: Joseph Caldwell Sarles, Michael Timothy Lifrak, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA; Matthew Alexander Bergjans, Quinn Emanuel Urquhart and Sullivan, LLP, LOS ANGELES, CA.

For Mohammed Samara, Movant: Richard Martin Heimann, LEAD ATTORNEY, Lieff Cabraser Heimann & Bernstein, San Francisco, CA.

For The Twitter Investor Group, Movant: Francis A. Bottini, Jr., LEAD ATTORNEY, Bottini & Bottini, Inc., La Jolla, CA; Mark Cotton Molumphy, Cotchett, Pitre & McCarthy LLP, Burlingame, CA; Tyson Carl Redenbarger, Cotchett, Pitre & McCarthy, LLP, Burlingame, CA.

**Judges:** CHARLES R. BREYER, United States District Judge.

**Opinion by:** CHARLES R. BREYER

## Opinion

### ORDER APPOINTING [*2] LEAD PLAINTIFF AND LEAD COUNSEL

Before the Court are dueling motions to appoint lead plaintiff and lead counsel in this action under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Mohammed Samara ("Samara") moves for appointment as lead plaintiff and seeks appointment of Lieff, Cabraser, Heimann & Bernstein, LLP as lead counsel. See Samara Mot. (dkt. 6). Brian Belgrave, Steve Garrett, John Garrett, and Nancy Price (together, the "Twitter Investor Group" or "Group") also move for appointment as lead plaintiff and seek appointment of Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP as lead counsel. See Twitter Investor Group Mot. (dkt. 8). Finding this matter suitable for resolution without oral

2023 U.S. Dist. LEXIS 71169, *2

argument pursuant to Civil Local Rule 7-1(b), the Court GRANTS the Twitter Investor Group's motion, DENIES Samara's motion, and appoints Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP as lead counsel.

## I. BACKGROUND

Defendant Elon Musk ("Musk")—CEO of Tesla, Inc., and founder of SpaceX—is a "prolific user of Twitter" with over 90 million followers. Compl. (dkt. 1) ¶ 8, 11. In the class action complaint, Plaintiff Giuseppe Pampena alleges that after agreeing to purchase Twitter, [*3] Inc., Musk made "false statements," engaged in "market manipulation" to lower the company's valuation, and failed to file a timely Form 13G after his ownership of Twitter shares exceeded 5%. Id. ¶¶ 10, 18. Moreover, Musk's eventual Form 13G was "materially misleading" because it failed to disclose his intent to join the Twitter Board and his potential purchase of the company. Id. ¶ 21. After Tesla shares—which Musk used to finance his purchase of Twitter—"cratered by almost 30%," Musk made allegedly misleading statements to manipulate the market, including tweeting about the presence of fake accounts on Twitter. Id. ¶¶ 22-25. Plaintiff alleges that Musk's conduct "substantially harmed Twitter's shareholders by causing many Twitter stockholders to sell at depressed prices." Id. ¶ 26. When Musk later announced that he would buy Twitter at the original price, the company's stock price increased substantially. Id. ¶ 32. Plaintiff brings this action under Section 10(b) of the Exchange Act on behalf of a class "consisting of all those who sold the publicly traded securities of Twitter during the Class Period," which is between May 13, 2022 and October 4, 2022. Id. ¶ 1, 145, 154-63.

On December 12, 2022, Samara and the Twitter [*4] Investor Group filed competing motions to appoint lead plaintiff and lead counsel at issue in this order. See Samara Mot.; Twitter Investor Group Mot. Those motions are now fully briefed. See Twitter Investor Group Opp'n (dkt. 16); Samara Opp'n (dkt. 17); Samara Reply (dkt. 20); Twitter Investor Group Reply (dkt. 21).

## II. APPOINTMENT OF LEAD PLAINTIFF

### A. Legal Standard

Under the PSLRA, a court appoints the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The plaintiff most capable of adequately representing the interest of class members "is the person or group of persons that" (1) either filed the complaint or filed a timely lead plaintiff motion; (2) has the largest financial interest in the relief sought by the class, as determined by the court; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. Id. § 78u-4(a)(3)(B)(iii)(I). Rule 23 provides that a party may serve as a class representative if (1) its claims or defenses are typical of those of the class, and (2) it will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The Ninth Circuit established a three-step process for the appointment of a lead plaintiff under the PSLRA. See In re Cavanaugh, 306 F.3d 726, 729-31 (9th Cir. 2002); Sundaram v. Freshworks Inc., No. 22-cv-06750-CRB, 2023 WL 1819158 (N.D. Cal. Feb. 8, 2023). First, the court must determine whether the plaintiff in the first-filed action [*5] issued a notice publicizing the pendency of the action.[1] See

---

[1] The PSLRA provides that the plaintiff must publish notice alerting members of the purported class of the pendency of the action, the claims asserted, and the purported class period within 20 days after filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). Any member of the proposed class may file a

Cavanaugh, 306 F.3d at 729. Second, the court must compare the financial stakes of the various plaintiffs, determine which has the most to gain from the lawsuit, and determine whether that plaintiff satisfies Rule 23, particularly its typicality and adequacy requirements. Id. at 730. Third, the court must consider competing plaintiffs' attempts to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23. Id. This can be done using proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render the plaintiff incapable of adequately representing the class. Fed. R. Civ. P. 23(a); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); Sundaram, 2023 WL 1819158, at *4.

## B. Discussion

Both Samara and the Group timely moved for appointment as lead counsel in response to the PSLRA notice.[2] The Court first addresses the PSLRA's financial loss requirement, and then the Rule 23(a) requirements.

## 1. Financial Loss Requirement

Because the PSLRA does not specify how to calculate the "largest financial interest," courts determine which movant has the most to gain from the lawsuit through "accounting methods that are both rational and consistently applied." Cavanaugh, 306 F.3d at 730 n.4; see also Sundaram, 2023 WL 1819158, at *2.

The applicants propose [*6] competing

methods. Samara advocates for the "recoverable loss" method, where financial interest is calculated by "multiplying the number of sold shares by the difference between (a) the Class Period purchase price and the sales price, or (b) if purchased before the Class Period, $54.20 (the Twitter Buyout price) and the sales price." See Heimann Decl. (dkt. 6-1) Ex. C; Samara Mot. at 6. Using this method, Samara argues that he suffered the largest loss at $146,956.90. Id. Meanwhile, the Twitter Investor Group advocates for the "shares sold" method, where the financial interest is "simply . . . the total number of shares sold by the lead plaintiff applicants; the movant which sold the most shares has the largest financial interest." Twitter Investor Group Reply at 8. The Group argues that under the shares sold method, it suffered the largest loss because its members sold 28,389 shares during the class period, whereas Samara sold 7,035 shares. See Chang Decl. Ex. C; Twitter Investor Group Mot. at 10. In the end, the Court need not decide which method is more appropriate here, because under either method, the Group has the largest financial interest.

First, using the shares-sold method [*7] advocated by the Group, the Twitter Investor Group has the largest financial interest because it sold 28,389[3] shares while Samara sold 7,035 shares.[4] Heimann Decl. Ex. C; Chang Decl. Ex. C.

---

[2] It is undisputed that the plaintiff in this action published adequate notice on October 11, 2022. See Chang Decl. (dkt. 8-1) Ex. A. Both movants then timely filed their motions to serve as lead plaintiff within the required 60-day period. See 15 U.S.C. § 77z-1(a)(3)(A)-(B); Samara Mot.; Twitter Investor Group Mot.

motion to serve as lead plaintiff within 60 days of the notice's publication. Id. § 78u-4(a)(3)(A)(i)(II).

[3] Belgrave sold 15,000 shares, John Garrett/Price sold 3,389 shares, and Steve Garrett sold 10,000 shares. Chang Decl. Ex. C.

[4] Samara argues that Steve Garrett's shares sold should be limited to 7,010, which is the number reported in his PSLRA certification. Samara Opp'n at 10. Garrett subsequently submitted a supplemental certification showing sales of 10,000 shares. Supplemental Certification (dkt. 21-2). The initial report of 7,010 shares, therefore, appears to be a clerical error, but even if the Court used the number of shares reported in Garrett's initial PSLRA certification, the Group would still have sold 25,399 shares—far more than Samara.

Second, under the recoverable loss method advocated by Samara, the Twitter Investor Group still has the largest financial interest. Samara reports a recoverable loss of $146,956.90. Heimann Decl. Ex. C. He further states that Belgrave's recoverable loss is $97,640, and Steve Garrett's recoverable loss for the 7,010 shares reported in his initial PSLRA certification is $134,592. Samara Reply at 4. Even if the Court accepts Samara's calculations and arguments at face value, the recoverable losses for Belgrave and Steve Garrett alone are $232,232—more than Samara's recoverable loss of $146,956.90. Accordingly, the Twitter Investor Group has the largest financial interest even under Samara's proposed recoverable loss method.

Because under either proposed calculation the Twitter Investor Group has the largest financial interest, the Group is presumed to be the "most adequate" plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As discussed in the next section, this presumption "may be rebutted only upon proof by a member of the purported [*8] plaintiff class that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

**2. Rule 23(a) Requirements**

Rule 23(a) provides that a class action may proceed if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The typicality and adequacy

requirements of Rule 23 are the Court's focus in this context. Cavanaugh, 306 F.3d at 730. A presumptive lead plaintiff "need only make a prima facie showing of its typicality and adequacy." Id. at 730-31.

The test for adequacy is whether the presumptive lead plaintiff and its counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class. See Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003). The test for typicality "is whether other class members have the same or similar injury, whether the action is based on conduct that [*9] is not unique to the presumptive lead plaintiff, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Additionally, the presumptive lead plaintiff may be atypical if they are subject to "unique defenses which threaten to become the focus of the litigation." See id. (citation omitted).

The Twitter Investor Group meets both requirements. The Group alleges that it "sold Twitter shares at prices artificially depressed by Musk's materially false and misleading statements, and suffered damages as a consequence." Twitter Investor Group Mot. at 12. Its alleged injury is therefore like those of other prospective class members in this action. Moreover, there is no evidence that the Group would be subject to "unique defenses which threaten to become the focus of the litigation," see Hanon, 976 F.2d at 508, nor is there any evidence that its claims conflict with those of the rest of the class. And as discussed in the next section, the Group's selected counsel is qualified and experienced in prosecuting securities class actions. See infra Section III.

Samara makes three arguments challenging the presumptive adequacy of the Group. First, Samara contends that the Group is inadequate

because [*10] its reported losses included "miscalculations and discrepancies." Samara Opp'n at 6. But as discussed above, no calculation methodology is mandated by the Ninth Circuit or the PSLRA. The Group therefore has not miscalculated its losses but rather did not adjust Belgrave's losses in the same manner as Samara. Second, Samara argues that Steve Garrett's application should be denied because he failed to include all his shares in his initial PSLRA certification. Id. at 11. But "district courts have held that 'minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.'" In re Solar City Corp. Sec. Litig., No. 16-CV-04686-LHK, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) (collecting cases). "The failure to correct obvious or inconsequential clerical errors, like the ones at issue, simply is not the type of adequacy issue that would 'divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.'" Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) (quoting Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo. 1990)). Moreover, because Steve Garrett promptly fixed this seemingly clerical error by submitting a supplemental certification, his mistake is not grounds for finding the Group inadequate under Rule 23. See Supplemental Certification; Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 410-11 (D. Minn. 1998) (allowing presumptive most adequate plaintiff group to submit supplemental [*11] certifications to correct technical errors).

Finally, Samara argues that the Group is improper because it lacks a pre-litigation relationship, and it has "failed to explain whether and how they are able to function together as a cohesive lead plaintiff group." Samara Opp'n at 12. However, the Ninth Circuit held that "misgivings about how [a group] would work together" do not "cast 'genuine and serious doubt on [the] plaintiff's willingness or ability to perform the functions of lead plaintiff.'" In re Mersho, 6 F.4th 891, 901 (9th Cir. 2021) (quoting Cavanaugh, 306 F.3d at 733). In Mersho, the Ninth Circuit held that the district court erred by not giving "effect to the presumption" of lead plaintiff, and by basing its decision on its own misgivings "even though the only evidence it acknowledged— the Petitioners' joint declaration— contradict[ed] such conclusions." Id. Here, members of the Group submitted a joint declaration stating that they had initial discussions, understand their responsibilities as lead plaintiff, and "established protocols to communicate with counsel and with each other." Joint Declaration (dkt. 8-5) at 2. Because this declaration indicates that the members of the Group can work together effectively, and Samara does not provide any evidence [*12] that "cast[s] genuine and serious doubt on [the Group's] willingness or ability to perform the functions of lead plaintiff," Samara's argument does not merit a finding that the Group is inadequate under Rule 23. See Mersho, 6 F.4th at 900 (quoting Cavanaugh, 306 F.3d at 733).

Accordingly, the Court finds that the Twitter Investor Group has met the 23(a) requirements for appointment as lead plaintiff.

## III. APPOINTMENT OF LEAD COUNSEL

Under the PSLRA, the Court must also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). While the appointment of lead counsel is made subject to the approval of the court, the lead plaintiff gets to select lead counsel for the class. See Cavanaugh, 306 F.3d at 732 ("[T]he district court has no authority to select for the class what it considers to be the best possible

lawyer or the lawyer offering the best possible fee schedule. Indeed, the district court does not select class counsel at all."). The Group seeks appointment of Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP, firms experienced in class action securities litigation. See Chang Decl. Exs. E, F.

Samara argues that these firms are inadequate because they are "co-counsel [*13] representing a different putative class of Twitter investors in a parallel class action in this District against defendant Musk, Twitter, and related entities, based on the same alleged misconduct in this case." Samara Opp'n at 13; see Heresniak v. Musk, No. 22-cv-03074-CRB (N.D. Cal.). But "[i]f the Court accepted this position, then a plaintiff's attorney could never concurrently represent different plaintiffs in actions arising out of the same facts against the same defendants because such 'inherent conflicts' could always theoretically arise." Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp., No. CV148390DMGPLAX, 2019 WL 11693401, at *3 (C.D. Cal. May 23, 2019); see also Makaeff v. Trump Univ., LLC, 309 F.R.D. 631, 644 n.7 (S.D. Cal. 2015) (holding that class counsel did not have a conflict of interest where it represented plaintiffs in a related case against the same defendant). Moreover, Samara relies on a case where "[t]he Court's major concern about counsel involve[d] their role in a parallel securities fraud case" because there was a "possibility that assets and insurance of the defendants . . . [would] be insufficient to satisfy an alleged liability to the class" such that it would "influence [counsel's] litigation strategy." Sullivan v. Chase Inv. Servs. of Bos., Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978); see Samara Opp'n at 14. But, as the Group points out, Samara's argument is "without proof" that the parallel actions here would similarly [*14] conflict, or that Musk has insufficient assets to

satisfy liability to the classes in both cases.[5] Twitter Investor Group Reply at 19. Accordingly, there is no evidence that Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP have a conflict of interest that would support a finding of inadequacy.

Because the lead plaintiff—not the Court—gets to select lead counsel for the class, the Court appoints Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP as lead counsel in this action. See Cavanaugh, 306 F.3d at 732.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Twitter Investor Group's motion, DENIES Samara's motion, and appoints Bottini & Bottini, Inc. and Cotchett, Pitre & McCarthy, LLP as lead counsel in this action.

**IT IS SO ORDERED**.

Dated: April 24, 2023

/s/ Charles R. Breyer

CHARLES R. BREYER

United States District Judge

---

**End of Document**

---

[5] Musk is currently the second richest person in the world, with an estimated net worth of $175 billion. Real-Time Billionaires List, Forbes, https://www.forbes.com/real-time-billionaires/#11f648503d78 (last accessed April 21, 2023).