UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PAYSAFE LIMITED *f/k/a*
FOLEY TRASIMINE
ACQUISITION CORP. II
SECURITIES LITIGATION,

**OPINION & ORDER**

21-cv-10611 (ER) (KHP)

R<small>AMOS</small>, D.J.:

On February 8, 2022, seven movants sought to be appointed lead plaintiff and have their attorneys appointed as lead counsel in this putative securities class action. Five movants subsequently filed notices of non-opposition, and only two remained: the group of Robert J. Viani and Eric C. Price ("the Viani/Price Group") and Campbell Capital Management ("CCM"). *See* Docs. 19, 36. On May 10, 2022, Magistrate Judge Katharine H. Parker ("MJ Parker"), to whom this case was referred, appointed the Viani/Price Group as lead plaintiff and their attorneys, Kessler Topaz Meltzer & Check ("KT"), as lead counsel. Doc. 67 ("the Order"). CCM filed objections to the Order on May 24, 2022 (Doc. 72), which are now before the Court. For the reasons set forth below, the Court adopts the Order, and CCM's objections are DENIED.

**I.     BACKGROUND**

The Court assumes the parties' familiarity with the facts and summarizes the relevant background only to the extent relevant to the instant motion.

**A. The Underlying Securities Exchange Act Allegations**

Foley Trasimene Acquisition Corp. II ("FTAC") was a special purpose acquisition corporation formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or other similar business combination. Doc. 1 ¶ 22. On December 7, 2020, FTAC announced that it entered into a definitive agreement and plan of merger with Paysafe Group Holdings Limited ("Paysafe Group"). *Id.* ¶ 23. It issued a press release highlighting several aspects of Paysafe Group's

business and touted its growth opportunities. *Id.* ¶ 25. The merger was completed on March 30, 2021, and the newly combined company was Paysafe Limited ("Paysafe"), a Bermuda company providing end-to-end payment solutions for merchants and consumers, including a digital wallet that allows consumers to make digital payments for purposes such as e-commerce, online gambling, and gaming. *Id.* ¶¶ 15, 23–24; *see also* Doc. 67 at 2–3. Its common shares trade on the New York Stock Exchange. Doc. 1 ¶ 15.

On May 11, 2021, Paysafe issued a press release announcing its first quarter 2021 financial results, including a 5% increase in revenue and an 8% increase in total payment volume. *Id.* ¶ 26. The press release also reaffirmed Paysafe's 2021 yearly outlook. *Id.* Defendant Philip McHugh, Paysafe's CEO, stated that the company was "well positioned to deliver consistent double-digit growth." *Id.* And on August 16, 2021, Paysafe issued a press release announcing its second quarter 2021 financial results, including a 13% increase in revenue and a 41% increase in total payment volume. *Id.* ¶ 27. The company again reaffirmed its 2021 full year outlook. *Id.*

On November 11, 2021, before the market opened, Paysafe issued a press release of its third quarter 2021 results, which disclosed that Paysafe was revising its 2021 guidance due to gambling regulations in key European markets, performance challenges impacting its digital wallet business, and the modification of new customer agreements' scope and timing. *Id.* ¶ 29. Accordingly, Paysafe was revising its financial guidance downward for 2021. *Id.* As a result, Paysafe's share price fell more than 40%, an unusually heavy trading volume. *Id.* ¶ 30.

The instant action[1] is brought by a putative class of shareholders that purchased or acquired Paysafe or FTAC securities between December 7, 2020 and November 10, 2021 against Paysafe, certain of its executives and directors, and certain of FTAC's former executives and directors ("Defendants"). It alleges that Defendants made materially false

---

[1] The instant action is a consolidation of two related actions: *Wiley v. Paysafe Ltd.* (No. 21-cv-10611) and *O'Brien v. Paysafe Ltd.* (No. 22-cv-567). *See* Doc. 66 (Consolidation Order).

2

and/or misleading statements and failed to disclose material adverse facts about Paysafe's business, operations, and prospects. *Id.* ¶ 28. Specifically, the plaintiffs allege that Defendants failed to disclose to investors that: (1) Paysafe was being negatively impacted by European gambling regulations, (2) Paysafe was encountering performance challenges in parts of its business, (3) its new customer agreements were being modified, and (4) as a result of the foregoing, Defendants' positive statements about Paysafe's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id.*[2]

### B. Facts Relevant to the Appointment of Lead Plaintiff and Counsel

Viani is a New York resident and owns forty restaurant franchise locations; he has an associate's degree from Dutchess Community College and has invested in the stock market since 2005. Doc. 67 at 6. Price is a California resident who owns and manages rental properties and investments of a family trust; he has a bachelor's degree in finance from Pacific Union College and an MBA from Pepperdine University, and he has been investing in the stock market for 24 years. *Id.* Both Viani and Price invested in Paysafe and lost money: Viani lost approximately $2.54 million, and Price lost $1.27 million. *Id.* Both are represented by KT. As relevant here, Viana and Price attested in support of their motion to be appointed lead plaintiff that:

- "Prior to seeking appointment as [l]ead [p]laintiff, we convened a joint conference call to formalize our commitment to jointly prosecute this litigation and to discuss our duties as [l]ead [p]laintiff. During the joint conference call, we discussed our respective losses arising from defendants' misconduct; the claims against the various defendants; and the procedures and protocols we would follow in jointly prosecuting the case. We intend to make all decisions jointly, taking into consideration [KT]'s advice. We are confident in our ability to reach joint decisions regarding litigation matters and will use consensus decision making to maximize the recovery for the class." Doc. 22-3 ¶ 6.

---

[2] The *Wiley* complaint alleged that the November 11, 2021 was the corrective disclosure, but the *O'Brien* complaint also pled that Paysafe made a corrective disclosure on August 16, 2021 which began to reveal the truth of Paysafe's prospects. Doc. 67 at 4–5.

3

- "Through supervision of [KT], we will ensure that this action is prosecuted for the benefit of the class in an efficient and effective manner. In order to achieve this result, we plan on consulting with each other and with counsel regarding the prosecution of this lawsuit via telephone, email, and videoconference. We also understand that some of these meetings may need to be conducted without counsel. To this end, we each have exchanged contact information for one another, and are able to call each other with and without counsel as needed, including on an emergency basis if circumstances arise requiring such urgent communications." *Id.* ¶ 8.

Additionally, at oral argument concerning the motions on May 5, 2022, Viani and Price's counsel represented that they "affirmative[ly] contacted [KT] and asked [KT] to represent them and retained [KT] to represent them. They were fully aware of their options when they retained [KT] first." Doc. 70 at 13:8–11.

CCM is an investment advisory firm located in Miami, Florida, and it is represented by Los Angeles-based firm Glancy Prongay & Murray LLP ("GPM"). Doc. 67 at 5. Clay Campbell, CCM's president and chief investment officer, is a retired certified public accountant. *Id.* He personally invested in Paysafe and lost money, as did approximately 100 of CCM's clients, for an aggregate loss of approximately $2.9 million.[3] *Id.* CCM's clients all signed assignment agreements assigning to CCM all interest they may have arising from violations of federal securities laws in connection with their purchase or acquisition of Paysafe securities and appointing CCM as attorney-in-fact for purposes of exercising all powers relating to the causes of action asserted in this matter. *Id.* As assignee, CCM agreed to remit any proceeds received as a result of the assignment to the assignors (its clients). *Id.*

### C. The Order

On May 10, 2022, MJ Parker granted the Viani/Price Group's motion for appointment as lead plaintiff (and KT as lead counsel) and consequently denied CCM's motion to be appointed lead plaintiff (and to appoint GPM as lead counsel). Doc. 67.

---

[3] The individual losses, however, range from only a few thousand dollars to a maximum of approximately $215,000. Doc. 67 at 5–6.

MJ Parker held that the Viani/Price Group had the largest financial interest, as their combined loss was $3,819,459, while CCM's loss was approximately $2,902,048 via assignments from 101 individuals and entities. *Id.* at 9–10. In so doing, MJ Parker held that Viani and Price could be appointed as a group and their losses could be aggregated. *Id.* She noted that district courts have historically been divided over whether unrelated investors may be appointed lead plaintiffs as a group, but the majority of courts, including in this District, have permitted such grouping if it would best serve the class. *Id.* at 10 (collecting cases). This requires that a proposed group "proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Id.* Such evidence may include evidence of (1) the existence of a pre-litigation relationship between group members, (2) involvement of members in the litigation thus far, (3) members' plans for cooperation, (4) members' sophistication, and (5) whether members chose outside counsel rather than counsel choosing members. *Id.* at 11–12.

Applying that standard, MJ Parker held:

> In this case, Viani and Price did not have a relationship before this litigation. But, they submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions concerning this case that affect the putative class. Both individuals are business people familiar with investing and sophisticated investors. It is unclear to this Court exactly how Viani and Price each found their way to the KT firm, though the Court assumes they both saw notice of the litigation published by the KT firm and reached out to KT as a result.

*Id.* at 13.

MJ Parker additionally held that the Viani/Price Group satisfies the requirements of Rule 23 and is therefore the presumptive lead plaintiff, but CCM could be susceptible

5

to unique defenses that would render it a less adequate lead plaintiff. *Id.* at 15–16. In analyzing the Viani/Price Group's satisfaction of Rule 23, MJ Parker noted:

> [B]oth [Viani and Price] submitted a Joint Declaration where they noted that they fully understand the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents, and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation. Based on the memoranda and declaration submitted by movants, the Court is persuaded that Viani and Price have made a preliminary showing that they will adequately protect the interests of the class. Additionally, Viani and Price are committed to ensuring that this litigation is prosecuted in an efficient and effective manner. Both movants have participated in a joint conference call to discuss the claims against Defendants and their plans to jointly prosecute this litigation, and have arranged to communicate with each other as needed, both with and without counsel, and plan to use consensus decision making to maximize the recovery for the class.

*Id.* (internal citation omitted) Moreover, "CCM ha[d] not come forward with evidence to suggest that Viani and Price could not work together in an effective manner or to otherwise rebut the presumption that they should be appointed lead [p]laintiffs." *Id.* at 16. In comparison, as to CCM, MJ Parker held:

> CCM's standing could potentially be challenged if Defendants question the validity of the approximately 100 assignments of the claim. It also appears that the assignments may be revocable, meaning that CCM's financial interest could diminish during the course of the litigation. Further, discovery on the validity of the assignments and CCM's standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter.

*Id.* at 16–17. Accordingly, "[o]n balance, [MJ Parker found] that Viani and Price should be appointed lead [p]laintiff." *Id.* at 17.

CCM filed objections to the Order on May 24, 2022. Doc. 72. It argues that MJ Parker erred in (1) allowing Viani and Price to be appointed as a group because they lacked a sufficient plan for cooperation and was merely created by counsel for purposes

6

of being lead plaintiff and (2) holding that CCM could be subject to unique defenses because the risk of Defendants raising such arguments was too speculative. *Id*.

## II. LEGAL STANDARD

When a party files an objection to a magistrate judge's order on a non-dispositive mater, the district judge reviewing the order must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "This is a highly deferential standard, and '[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden.'" *N. Jersey Media Grp., Inc. v. Fox News Network, LLC*, No. 14-cv-7630 (ER), 2015 U.S. Dist. LEXIS 158288, at *5 (S.D.N.Y. Nov. 23, 2015) (alteration in original) (citations omitted). An order is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Palmer v. Reader's Digest Ass'n*, No. 84-cv-8397 (CSH), 1995 WL 686737, at *1 (S.D.N.Y. Nov. 20, 1995) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Khaldei v. Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013). And it is contrary to law when "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Khaldei*, 961 F. Supp. 2d at 575. Further, "[g]iven that Rule 72(a) limits a district court's consideration of a magistrate's rulings to whether the decision was clearly erroneous based on the evidence and information before her," the Court will not consider new arguments or factual evidence raised for the first time as objections to the magistrate judge's decision. *N. Jersey Media Grp,* 2015 U.S. Dist. LEXIS 158288, at *6 n.2 (citation omitted); *see also id.* at *5 (collecting cases).

The Private Securities Litigation Reform Act ("PSLRA") governs motions for the appointment of lead plaintiffs in putative class actions brought under federal securities laws. *See, e.g., Strougo v. Mallinckrodt Pub. Ltd. Co.*, No. 19-cv-7030 (ER), 2020 WL 3469056, at *2 (S.D.N.Y. June 25, 2020). The PSLRA instructs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines

to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute sets forth a rebuttable presumption "that the most adequate plaintiff . . . is the person or group of persons" that (1) either timely filed a complaint or motion, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption is "rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

### III. DISCUSSION

CCM raises two primary objections: that MJ Parker erred in determining that (1) Viani and Price's losses could be aggregated, and (2) CCM was subject to unique defenses. The Court will address each objection in turn.

#### A. MJ Parker Did Not Commit Clear Error in Holding that the Viani/Price Group May Aggregate Its Losses

CCM concedes that the Order accurately recounted the legal standard in this District for when group members may aggregate their losses. Doc. 72 at 10–11. Courts recognize that there can be benefits to having a group serve as lead plaintiff, including pooling of knowledge, experience, and resources. *Elstein v. Net 1 UEPS Techs., Inc.*, No. 13-cv-9100 (ER), 2014 U.S. Dist. LEXIS 100574, at *16–18 (S.D.N.Y. July 23, 2014) (collecting cases). A group of plaintiffs may be appointed as lead plaintiff if the members will act collectively and separately from their lawyers. *Id*. at *9–10 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). In evaluating whether members will so act, courts consider evidence of (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its

members; and (5) whether the members chose outside counsel, and not vice versa. *Varghese*, 589 F. Supp. 2d at 392. These factors are meant to determine whether "a grouping would best serve the class." *Id.* A group with no pre-litigation history "may be acceptable . . . so long as the group is relatively small and therefore presumptively cohesive." *Freudenberg v. E*Trade Financial Corp.*, Nos. 07-cv-8538 (RWS), 07-cv-8808 (RWS), 07-cv-9651 (RWS), 07-cv-10400 (RWS), 07-cv10540 (RWS), 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008); *see also Cohen v. Luckin Coffee Inc.*, No. 20-cv-1293 (LJL), 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (stating that the absence of group members' pre-litigation relationship is "not disqualifying"). Groups without a pre-litigation history may be required to present a more compelling showing as to their fitness for the position, however. *Elstein*, 2014 U.S. Dist. LEXIS 100574, at *11–14 (collecting cases).

MJ Parker held that the *Varghese* factors weigh in favor of aggregating Viani and Price's losses as a group (Doc. 67 at 13), but CCM argues that a proper application of *Varghese* would produce the opposite result (Doc. 72 at 11–15). Specifically, CCM argues that the Order never explicitly stated that Viani and Price would better serve the class in aggregate than if they were separate, and "every *Varghese* factor, other than possibly the fourth factor (the sophistication of the group members), weigh against" aggregation. Doc. 72 at 11, 14. CCM particularly emphasizes that Viani and Price have no plan in place for cooperation or dispute resolution, and accuses that counsel approached Viani and Price (rather than the other way around) to be grouped solely for the purposes of aggregation. *Id.* at 12–14. The Viani/Price Group respond, however, that, although CCM is correct that Viani and Price lacked a pre-litigation relationship, it is wrong on the remainder of its arguments, as they do have sufficient plans for cooperation, and they were the ones who approached counsel. Doc. 73 at 11–14.

CCM has not met its "heavy burden" to overturn MJ Parker's decision. *See N. Jersey Media Grp., Inc.* 2015 U.S. Dist. LEXIS 158288, at *5. Although the first

9

*Varghese* factor does not weigh in favor of the Viani/Price Group, as they undisputedly lacked a pre-litigation relationship, this is "not disqualifying." *Cohen*, 2020 WL 3127808, at *5. And the remaining four either support the group's appointment or are neutral. CCM concedes the fourth factor (sophistication). Doc. 72 at 14. As to the second (involvement to date) and fifth factors (whether the members or counsel initiated the relationship), although this litigation is still in its incipiency, Viani and Price have both been involved in it since before even its inception, as they each independently approached KT for representation in connection with the suit. Doc. 70 at 13:8–11; *see also Cushman v. Fortress Biotech, Inc.*, No. 20-cv-5767(KAM) (RLM), 2021 WL 1526172, at *3 (E.D.N.Y. Apr. 19, 2021) (rejecting Rule 72 objector's argument that discussion with counsel, a conference call, and a joint declaration are insufficient involvement because "[i]t is not clear, however, what else [the objector] expects [the members] should have done," given that the case had just been filed less than five months ago and had not yet proceeded to discovery). And courts appear to be split as to whether representations like those here are sufficient to assure adequate plans for cooperation. *Compare Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011) (considering them "conclusory assurances" insufficient to satisfy the court); *In re CMED Sec. Litig.*, No. 11-cv-9297 (KBF), 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (similar); *and Jakobsen v. Aphria, Inc.*, No. 18-cv-11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (collecting cases), *with Crass v. Yalla Grp. Ltd.*, No. 21-cv-6854 (PAE), 2021 WL 5181008, at *6 (S.D.N.Y. Nov. 8, 2021) (holding that even less detailed allegations were sufficient to constitute plans for cooperation); *Garnett v. RLX Tech. Inc.*, No. 21-cv-5125 (PAE), 2021 WL 3913541, at *5 (S.D.N.Y. Aug. 31, 2021) (similar); *Cushman*, 2021 WL 1526172, at *3 (similar); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 119–20 (S.D.N.Y. 2010) (similar). Thus, the third factor is neutral here. Based on the foregoing, the Court does not have the "definite and firm conviction that a mistake has been committed," *Palmer*, 1995 WL 686737, at *1,

10

nor did MJ Parker misapply the relevant law, *Khaldei*, 961 F. Supp. 2d at 575. Accordingly, MJ Parker did not commit clear error in permitting Viani and Price to aggregate their losses and finding that the class would be better served by grouping them.

### B. MJ Parker Did Not Commit Clear Error in Holding that CCM Could Be Subject to Unique Defenses

MJ Parker also held that, agreeing with the Viani/Price Group's arguments, "CCM's standing could potentially be challenged if Defendants question the validity of the approximately 100 assignments of the claim." Doc. 67 at 16. She expressed concern that the assignments "may be revocable, meaning that CCM's financial interest could diminish during the course of the litigation," and she noted that "discovery on the validity of the assignments and CCM's standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter." *Id.* at 16–17.

CCM argues that MJ Parker erred in so holding because she merely "speculated" that CCM was subject to unique defenses, and the risks she identified were too hypothetical and "conclusory" because no definitive proof was presented that called into question the legal validity of CCM's assignments. Doc. 72 at 17–19. CCM also argues that the assignments are not revocable, and "discovery regarding CCM's assignments will not become a distraction because, to prove CCM lacks standing, Defendants would have to prove that every single assignment is invalid, which is an impossible task, not worth pursuing." *Id.*

But "[t]he proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead it is enough that it presents a colorable risk of inadequacy." *Batter v. Hecla Mining Co.*, No. 19-cv-05719 (ALC), 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) (citation omitted). Accordingly, where "there is at least a potential" that a plaintiff will be subject to unique defenses, disqualification is appropriate. *Id.* (citation omitted); *see also Schaffer v. Horizon Pharma Plc*, No. 16-cv-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (collecting cases in

11

which courts declined to appoint a lead plaintiff "based on *potential* risks" that it would be "subject to" unique defenses, regardless whether the defense would succeed (emphasis added)); *Clynes v. Hebron Tech. Co. (In re Hebron Tech. Co. Sec. Litig.)*, Nos. 20-cv-4420 (PAE), 20-cv-4746 (PAE), 2020 U.S. Dist. LEXIS 169480, at *17 (S.D.N.Y. Sep. 16, 2020) (collecting additional cases and noting that this approach "protects members of the putative class, because even ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions" (internal quotation marks and citation omitted)).

CCM's arguments, that "Viani and Price have failed to prove" that CCM's assignments subject it to a unique defense, are therefore beside the point. *See* Doc. 75 at 12–13. At this stage, no such proof is required, and it is more than sufficient that MJ Parker found that CCM's standing could be challenged without definitively holding that such challenges would be successful. *See In re Hebron Tech. Co. Sec. Litig.*, 2020 U.S. Dist. LEXIS 169480, at *17; *Batter*, 2020 WL 1444934, at *7; *Schaffer*, 2016 WL 3566238, at *3. CCM's supposition that the defenses are "not worth pursuing" does not change this result. *See* Doc. 72 at 19. This is particularly so given the assignments themselves are silent as to revocability, and MJ Parker has already expressed doubt about their validity, increasing the likelihood Defendants would at least attempt to raise such defenses. *Id.* at 18 n.4; *see also* Doc. 41-2 (Assignments).

Accordingly, CCM has not met its "heavy burden" to establish that MJ Parker committed a clear error. *See N. Jersey Media Grp., Inc.* 2015 U.S. Dist. LEXIS 158288, at *5; *see also Khaldei*, 961 F. Supp. 2d at 575; *Palmer*, 1995 WL 686737, at *1. CCM's objections are denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court adopts the Order, and CCM's objections are DENIED. Pursuant to MJ Parker's May 17, 2022 order (Doc. 69), the deadline to file an

amended complaint is May 16, 2024. Motions to dismiss will be due on the following briefing schedule: the opening brief will be due July 15, 2024; the opposition will be due September 13, 2024; and the reply will be due October 28, 2024.

It is SO ORDERED.

Dated:  April 16, 2024
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.